UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
ALAN TAVERAS,

                            Plaintiff,                      FIRST AMENDED COMPLAINT
                                                           FOR INJUNCTIVE AND
             -against-                                     DECLARATORY RELIEF

NEW YORK CITY, New York,
DERMOT SHEA, in his official capacity as
Police Commissioner, and all successors
therein, JONATHAN DAVID, in his official              Case No.: 20 Civ. 1200 (KPF)
capacity as Director, NYPD License Division,
and  ASIF IQBAL, in his official capacity as
Executive Director, License Division Rifle/
Shotgun Section,
                            Defendants.
 -----------------------------------------------------x

        Plaintiff, ALAN TAVERAS, by and through his attorneys, states as his First

Amended Complaint for declaratory and injunctive relief against the defendants as follows:

## NATURE OF THE ACTION

        1.      This is an action for declaratory and injunctive relief to (i) declare defendants'

denial of the plaintiff's application to possess a rifle and/or shotgun unconstitutional and in

violation of his preexisting, fundamental rights as protected by the Second and Fourteenth

Amendments; (ii) declare 38 RCNY 3-03(f), 38 RCNY 3-03(g), and New York City

Administrative Code ("NYC") 10-303(a)(2), NYC 10-303(a)(6), NYC 10-303(a)(7), NYC 10-

303(a)(9) and NYC 10-303(g), collectively and individually, facially unconstitutional,

burdensome, and in violation of fundamental rights protected by the Second and Fourteenth

Amendments; (iii) declare 38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC

10-303(a)(6), NYC 10-303(a)(7), NYC 10-303(a)(9), and NYC 10-303(g), individually and

collectively, facially unconstitutional and as applied to the plaintiff;  (iv) declare 38 RCNY 3-

1

03(f), 38 RCNY 3-303(g), and NYC 10-303(a)(2), NYC 10-303(a)(6), NYC 10-303(a)(7), NYC 10-303(a)(9), and NYC 10-303(g) individually and collectively, invalid, null, and void as preempted by New York State Penal Law; and (v) declare 10-303(g) unconstitutional, null, and void allowing and/or requiring the suspension or revocation of a Rifle/Shotgun Permit "upon evidence of any other disqualification set forth in subdivision (a)" to the extent that the provisions of 38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(a)(6), NYC 10-303(a)(7), and NYC 10-303(a)(9) provide any basis for such suspension or revocation.

2.      This action further seeks to (i) enjoin the defendants, their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction, from enforcing and implementing 38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g); (ii) enjoin the defendants, their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction, from enforcing and implementing Penal Law §265.01(1), §265.01-b, §265.02(5)(i), §265.03(2), §265.04(2), §265.15(6) against law-abiding individuals, having no enumerated state or federal statutory prohibitors to firearm possession who have been denied a Rifle/Shotgun Permit for their residence under the provisions of 38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g) who also possess rifles and/or shotguns inside of their residence for self-defense without a Rifle/Shotgun Permit.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, §1343, §2201, §2202 and 42 U.S.C. §1983 and §1988.

4.      Venue lies in this Court pursuant to 28 U.S.C. §1391.

2

## PARTIES

5.      Plaintiff, Alan Taveras, is a natural person, a citizen of the United States and of the State of New York, and a resident of Bronx County, New York.

6.      Defendant New York City, New York is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

7.      Defendant Dermot Shea ("Commissioner Shea"), who is sued herein in his official capacity only, is the Police Commissioner of the New York Police Department ("NYPD"). In that position, Commissioner Shea has personal authority and control over the creation and implementation of the policies and procedures for the registration of rifles and shotguns, as well as handguns, for the five (5) boroughs comprising New York City: the counties of Bronx, New York, Richmond, Kings, and Queens (the "City" or "New York City").

8.      Commissioner Shea is a policy maker with respect to the customs, policies, and procedures promulgated by and through the NYPD Rifle/Shotgun Division and the NYPD Appeals Unit related to the issuance of Rifle/Shotgun Permits in New York City. Commissioner Shea has no state statutory authority to create or implement any requirement that the residents of New York City obtain a permit to possess rifles and/or shotguns.

9.      At all times relevant to the facts pleaded herein, James O'Neill ("Commissioner O'Neill") referenced throughout the below allegations of fact, held the position of NYPD Police Commissioner and is Commissioner Shea's predecessor.

10.     Defendant Jonathan David ("Mr. David"), who is sued herein in his official capacity only, is the Director of the Appeals Unit of the NYPD Rifle/Shotgun Division, as designated by Commissioner O'Neill.

11.     Defendant Asif Iqbal ("Captain Iqbal"), who is sued herein in his official capacity only, is the Executive Director of the NYPD Rifle/Shotgun Division as designated by

3

Commissioner O'Neill and/or Jonathan David. Captain Iqbal is the individual authorized to approve or deny applications for a Rifle/Shotgun Permit in the first instance.

12.     At all times relevant herein, Commissioner O'Neill authorized Captain Iqbal to approve and/or issue Rifle/Shotgun Permits in the first instance.

13.     At all times relevant herein, Commissioner O'Neill authorized Captain Iqbal to disapprove applications for Rifle/Shotgun Permits in the first instance.

14.     In the event that Captain Iqbal disapproves an application for a Rifle/Shotgun Permit, the applicant may file an internal appeal with the NYPD Appeals Unit within 30 days of receiving the Notice of Disapproval.

15.     Mr. David is the Director of the NYPD License Division Appeals Unit.

16.     At all times relevant herein, Commissioner O'Neill authorized Mr. David to consider and make final determinations on internal appeals of disapprovals applications for a Rifle/Shotgun Permit.

17.     The NYPD Police Commissioner and his agents and employees, including the named defendants, are responsible for enforcing and implementing the provisions of 38 RCNY 3-303 (f), 38 RCNY 3-303(g), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g).

18.     The NYPD Police Commissioner and his agents and employees, including the named defendants, are responsible for enforcing and implementing Penal Law §265.01(1), §265.01-b, §265.02(5)(i), §265.03(2), §265.04(2), §265.15(6) against New York City residents, including law-abiding individuals, having no enumerated statutory prohibitors to firearm possession, who possess rifles and/or shotguns inside of their residence for self-defense, with or without a Rifle/Shotgun Permit.

## STATEMENT OF FACTS

*Alan Taveras– Application for Rifle/Shotgun Permit*

19.     Alan Taveras is 30 years of age. At all times relevant to this matter, Mr. Taveras was, and continues to be, a resident of the borough of Bronx, New York.

20.     Residents of the five boroughs of New York City may not lawfully possess any firearm, including rifles and shotguns, in their residence for self-defense without being issued a permit by the New York City Police Department.

21.     All residents of New York City, including those without any statutory prohibition to the purchase, possession, and/or use of firearms, must seek and obtain the permission of the NYPD/defendants to possess rifles and/or shotguns in their residence for self-defense.

22.     As a resident of one of the five boroughs of New York City, Mr. Taveras may not lawfully possess a rifle or shotgun in his residence for self-protection without being issued a rifle/shotgun permit by the NYPD via the individually named defendants.

23.     Mr. Taveras submitted an application to the NYPD Rifle/Shotgun Division for a permit to possess a rifle and/or shotgun in his residence for self-protection.

24.     On or about April 11, 2018 as part of the application process, Mr. Taveras provided to Investigator Young of the Rifle/Shotgun Division a notarized statement addressing an alleged incident on November 11, 2011 involving a 'domestic' complaint.

25.     Mr. Taveras' statement indicated that he was unaware that a formal report had been filed by Denise Torres until the Rifle/Shotgun investigator informed him.

26.     Mr. Taveras' written statement indicated that in November 2011 he was contacted by the NYPD Detective who advised that Denise Torres attempted to make a complaint alleging that Mr. Taveras threatened her in some way. The Detective indicated that Ms. Torres was very

intoxicated when he spoke with her, that he did not believe her, and that he was not going to pursue her complaint any further.

27.      Mr. Taveras' statement further indicated that the November 2011 complaint made by Denise Torres was false, as was the complaint she made in May 2011, that he has had no contact with Ms. Torres for many years, and that since 2011 he has had no issues with law enforcement other than minor traffic violations.

28.      Mr. Taveras was not arrested or charged with any offense related to the November 2011 complaint by Ms. Torres.

29.      Mr. Taveras has no domestic violence related convictions.

**Notice of Disapproval – April 2018**

30.      On April 18, 2018, Captain Iqbal disapproved Mr. Taveras' application for a Rifle/Shotgun Permit by written Notice of Disapproval.

31.      The Notice of Disapproval indicated the grounds for disapproval as Mr. Taveras' "arrest history, summons history and violent domestic violence history and Order of Protection history."

32.      The Notice of Disapproval further provided, "You have shown poor moral judgment and an unwillingness to abide by the law. The above circumstances reflect negatively upon your moral character and cast grave doubt upon your fitness to possess a firearm."

**Appeal to Jonathan David, Director NYPD License Division**

33.      An applicant for a Rifle/Shotgun Permit may file an internal appeal of a Notice of Disapproval within 30 days of the date of the notice.

34.      Mr. Taveras timely filed an internal appeal of Captain Iqbal's Notice of Disapproval with the NYPD Appeals Unit.

35.     In accordance with the NYPD Appeals Unit requirements, Mr. Taveras' internal appeal included a written statement that was Notarized and Verified by Mr. Taveras under the penalty of perjury.

36.     On or about November 28, 2018, Mr. David, rendered a decision denying Mr. Taveras' appeal, which affirmed the disapproval of Mr. Taveras' application.

37.     Mr. David affirmed the disapproval of Mr. Taveras' Rifle/Shotgun application under 10-303(a)(2) and 10-303(a)(9) of the New York City Administrative Code.

38.     Mr. David's disapproval (the "Disapproval") provided, "Pursuant to §§10-303(a)(2) and (9) of the New York City Administrative Code, an application for a Rifle/Shotgun Permit may be denied when an applicant is not of good moral character, and/or when good cause exists for the denial of the permit. Title 38 of the Rules of The City of New York (RCNY), §3-03, provides a list of what shall be considered in assessing moral character and whether good cause exists for a denial."

39.     The Disapproval further provided, "As delineated in 38 RCNY §§3-03 (t) and (g), an applicant can be denied a Rifle/Shotgun permit if he/she was a subject of an order of protection and there is a history of one or more incidents of domestic violence. Here, Mr. Taveras was named as a perpetrator in two separate domestic incidents, one of which led to an arrest. On May 22, 2011, his ex-girlfriend stated she had a verbal dispute with Mr. Taveras which led to physical violence. She said that he punched her in the left eye causing swelling and bruising. The victim was treated at the hospital for her injuries. As a result of this domestic dispute, a complaint report was generated. Mr. Taveras was arrested on August 11, 2011 for Assault 3rd Degree- With Intent to Cause Physical Injury and Harassment as a result of this incident. A full order of protection was issued against Mr. Taveras which stated that he was to

7

stay away from the victim and her home, school, business and place of employment and not be within 100 yards of the victim. Mr. Taveras was to refrain from any communication with the victim, including mail, telephone or email.  Finally, he was ordered to surrender all firearms. The order of protection expired in February 2012. **Ultimately, the charges against Mr. Taveras were dropped against him.**"  (emphasis added).

40.     The Disapproval further provided, "Just three months after the order of protection was issued, Mr. Taveras was again named as a perpetrator in a domestic incident.  On November 12, 2011, the same ex-girlfriend stated that Mr. Taveras threatened her on the phone stating he was going to 'pull her out of a nightclub by her hair if she did not leave.' Further, he stated that if she called the police, he would hurt her and her family. He was in direct violation of the active Order of Protection. A complaint report was also generated in regards to this incident."

41.     The Disapproval further provided, "Although time has elapsed and the arrest charges were dismissed, the serious nature of these incidents raise safety concerns for yourself and others. Therefore, these domestic incidents and order of protection are grounds for denial of Mr. Taveras' application for a rifle/shotgun permit."

42.     A complainant's desire to 'drop charges' against a suspect does not preclude the prosecution of such charges by the District Attorney's Office.

43.     Had evidence existed to continue the prosecution against Mr. Taveras for assault, through witnesses and/or medical records, the prosecution could have proceeded in the complainant's absence. It did not. The charge against Mr. Taveras was dismissed.

44.     The Order of Protection issued from Ms. Torres' May 2011 allegations had been vacated long before Mr. Taveras applied for a Rifle/Shotgun license.

45.     Mr. Taveras has no domestic violence related convictions.

46.     Mr. Taveras has no state or federal statutory prohibitions to the possession of firearms.

47.     When Mr. Taveras applied for a Rifle/Shotgun Permit, he was not "the subject of an Order of Protection".

48.     Ms. Torres' May 2011 and November 2011 allegations against Mr. Taveras remain unadjudicated and unproven.

49.     Unadjudicated and unproven, Ms. Torres' allegations lack probative value in the assessment of Mr. Taveras' moral character.

50.     Unadjudicated and unproven, Ms. Torres' allegations do not provide 'good cause' to deprive Mr. Taveras of the right to possess long guns in his home for self-protection.

51.     Unadjudicated and unproven, Ms. Torres' allegations do not constitute an event or condition warranting termination of Mr. Taveras' preexisting rights, as protected by the Second Amendment.

52.     Mr. Taveras' application for a Rifle/Shotgun Permit was denied because of the defendants' enforcement and implementation of 38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g).

53.     Mr. Taveras intends to exercise his Second Amendment right to possess a firearm in his home for self-protection notwithstanding New York City's unconstitutional regulations, the defendants' enforcement and implementation of such regulations, and the absence of a Rifle/Shotgun Permit.

54.     Mr. Taveras' exercise of his Second Amendment right to firearm possession will subject him to criminal prosecution, including incarceration and fines.

55.     If Mr. Taveras is convicted of unlawful possession of a firearm, such conviction will prohibit his lawful possession of a firearm in the future, as it will constitute either a felony or "serious offense".

56.     Mr. Taveras should not be forced to choose between exercising his fundamental and pre-existing right to possess firearms in his home for self-defense and being subjected to criminal prosecution.

## STATEMENT OF LAW

### The Second Amendment

57.     The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

58.     The Second Amendment does not *bestow* any rights to the individual to possess and carry weapons to protect himself; it *prohibits the government* from infringing upon the God-given fundamental right of the individual to keep and bear arms for self-defense in the event of a violent confrontation. See, *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S.  (2016).

59.     "Individual self-defense is the central component of the Second Amendment right." *McDonald v City of Chicago*, 561 US at 767, citing, *District of Columbia v. Heller*, 554 U.S. 570, 599 (internal quotations omitted). The Second Amendment protects the core right of the individual to self-protection. *District of Columbia v. Heller*, 554 US at 595-599, 628.

60.     The Second Amendment is "deeply rooted in this Nation's history and tradition" and fundamental to our scheme of ordered liberty". *McDonald v City of Chicago*, 561 US 742, 768 (2010).

61.     The right to possess firearms in one's home for self-protection is a basic human right protected from governmental interference by the codification of the Second Amendment. *District of Columbia v. Heller*, 554 US 570, 635 (2008).

62.     Second Amendment guarantees are at their zenith within the home. *Kachalsky v County of Westchester*, 701 F3d 81, 89 (2d Cir 2012) citing, *Heller*, 554 U.S. at 628-29.

63.     The Second Amendment's protections are fully applicable to the states through the Fourteenth Amendment. *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026, 3042, 177 L. Ed. 2d 894 (2010).

### *Regulation of Firearms in New York State*

64.     Penal Law § 400.00, *et seq.* is the preemptive statutory scheme for the licensing and possession of firearms throughout the State of New York.  Penal Law §400, *et seq.* preempts any and all local laws, codes, and regulations relating to firearm possession and licensing. The comprehensive and detailed regulatory language and scheme of §400.00 demonstrates the legislature's intent to preempt the field of firearm regulation in the state. See, *Matter of Chwick v Mulvey*, 81 AD3d 161, 163 (2d Dept 2010) (holding that §400 preempted Nassau County's local ordinance criminalizing the possession of certain types of handguns because, where as here the state "legislature demonstrate[s] its intent to preempt the field, all local ordinances are preempted regardless of whether they actually conflict with the state law").

65.     Penal Law § 400.00 is applicable and in full-force-and-effect in all cities and towns throughout the State of New York, including New York City.

66.     New York's Secure Ammunition and Firearms Enforcement Act (the "SAFE Act"), is the Legislature's most recent overarching regulation of firearms possession in the State.

67.     The SAFE Act enhanced various sections of the New York State Penal Law, Criminal Procedure Law, Mental Hygiene Law, and Family Court Act.

Possession of Pistols and Revolvers (Handguns)

68.     A pistol license is required for individuals to legally possess a handgun in the State of New York.

69.     The make, model, and serial number of each handgun a licensee possesses, or intends to possess, in New York State must be registered with the New York State Police.

70.     The make, model, and serial number of each handgun a licensee possesses in this State is listed on the back of the individual's pistol license.

71.     A registry of all handguns legally possessed in New York State is maintained by the New York State Police (the "Handgun Database").

Possession of Long Guns (Rifles and Shotguns)

72.     Penal Law §400.00 *et seq.* contains no license requirement to possess, own, and/or carry rifles and shotguns.

73.     No license is required to possess rifles or shotguns in the State of New York.

74.     After the passage of the SAFE Act in 2013, the only long guns that were required to be registered were "assault weapons". The SAFE Act required individuals who possessed rifles that constituted "assault weapons" to register such rifles with the New York State Police on or before April 15, 2014. Individuals who were ineligible under federal or state law to possess firearms in the first instance were precluded from registering their assault weapons (as such persons were prohibited from possessing *any* firearm). See, Penal Law § 400.00(16)(a), § 265(g)(v).

75.     With the exception of 'assault weapons', long guns (rifles and shotguns) are not required to be registered or licensed in New York State.

76.     When creating the firearms licensing statutes, including statutes specifically defining the legal parameters of long gun possession, the NYS Legislature specifically did not require the licensing of rifles and shotguns.

77.     Penal Law § 400.00(16)(a) and § 265.00(g)(v) bear out the Legislature's specific intention *not* to require the licensing of rifles and shotguns. By requiring the registration of 'assault weapons' and excluding the licensing of shotguns and rifles that do not constitute 'assault weapons', the NYS Legislature definitively rejected the idea that long guns should be licensed anywhere in the State of New York.

78.     The NYS Legislature rejected any requirement that individuals not otherwise statutorily prohibited from firearm possession demonstrate their eligibility to possess and own long guns.

79.     The NYS Legislature has only enacted specific statutes that forbid the possession of long gun in certain limited circumstances. For example, possession of a rifle or shotgun by an individual who has been convicted of a felony or "serious offense".

80.     The enactment of New York State's firearm licensing statute [§400.00, et seq] bears out the Legislature's intention that only handguns were required to be licensed, not long guns.

***Possession of Handguns and Long Guns in New York City***

81.     The five (5) boroughs of New York City are subject to the provisions of Penal Law §400.00, *et seq.*

82.     A pistol license that is issued by a Licensing Officer outside of New York City is valid only outside of New York City. Penal Law §400.00(6).

83.     Where a pistol license is issued outside of New York City, the licensee must apply for and obtain a special permit from the NYPD Police Commissioner endorsing the license to lawfully possess and/or carry a handgun inside of the five (5) boroughs of New York City. Penal Law §400.00(6).

84.     Applications for a license to possess or carry a handgun (pistol/revolver) are required to be made to the licensing officer in the city or county where the applicant resides, is principally employed, or has his or her principal place of business as a merchant or storekeeper. Penal Law §400.00(3)(a).

85.     Residents of the 5 boroughs of New York City are required to apply to the NYPD License Division to obtain a license to possess handguns. Penal Law §400.00, *et seq.*

86.     New York City Code, but not the Penal Law, requires residents of the 5 boroughs of New York City to obtain a permit from the NYPD License Division to lawfully possess rifles and shotguns.

87.     An individual in possession of a handgun in New York City without a license will be subject to prosecution, including incarceration. Penal Law §400.00 *et seq.*, §265.00, *et seq.*

88.     NYC Administrative Code §10-310 criminalizes the possession of rifles and shotguns without a Rifle/Shotgun Permit.

89.     Possession of a rifle or shotgun in New York City without a license is a criminal offense subjecting the offender to incarceration. NYC Administrative Code 10-310.

90.     NYC Administrative Code 10-310 criminalizes possession of rifles and shotguns, even in one's own private residence.

91.     It is unlawful to possess a rifle or shotgun without a certificate of registration. NYC 10-304.

92.     Possession of a rifle or shotgun without a certificate of registration is a crime subject to penalties including incarceration. NYC 10-304; NYC 10-310.

93.      A certificate of registration cannot be obtained without a Rifle/Shotgun Permit.

94.     Possession of rifle or shotgun ammunition in New York City without a Rifle/Shotgun Permit is a criminal offense subject to penalties including incarceration. NYC 10-306; NYC 10-310.

### Rules of the City of New York, 38 RCNY 3-03

95.     38 RCNY 3-03, entitled, 'Grounds for Denial of Permit, provides in part,

"In addition to other bases for disqualification pursuant to federal, state, and local law and this chapter, an application for a rifle/shotgun permit may be denied where it is determined that an applicant lacks good moral character or that other good cause exists for denial, pursuant to § 10-303 of the Administrative Code of the City of New York. Such a determination shall be made based upon consideration of the following factors:

(f) The applicant is the subject of an order of protection or a temporary order of protection;

(g) The applicant has a history of one or more incidents of domestic violence."

### New York City Administrative Code 10-303

96.     NYC Administrative Code 10-303, entitled 'Permits for possession and purchase of rifles and shotguns', provides,

"It shall be unlawful to dispose of any rifle or shotgun to any person unless said person is the holder of a permit for possession and purchase of rifles and shotguns; it shall be unlawful for any person to have in his or her possession any rifle or shotgun unless said person is the holder of a permit for the possession and purchase of rifles and shotguns. The disposition of a rifle or shotgun, by any licensed dealer in rifles and shotguns, to any person presenting

15

a valid rifle and shotgun permit issued to such person, shall be conclusive proof of the legality of such disposition by the dealer."

(a) "No person shall be denied a permit to purchase and possess a rifle or shotgun unless the applicant:

   (1)  is under the age of twenty-one; or

   (2)  is not of good moral character; or

   (3)  has been convicted anywhere of a felony; of a serious offense as defined in §265.00 (17) of the New York State Penal Law; of a misdemeanor crime of domestic violence as defined in 18 U.S.C. § 921(a); of a misdemeanor crime of assault as defined in the penal law where the applicant was convicted of such assault within the ten years preceding the submission of the application; or of any three misdemeanors as defined in local, state or federal law, however nothing in this paragraph shall preclude the denial of a permit to an applicant with fewer than three misdemeanor convictions; or

   (4)  has not stated whether he or she has ever suffered any mental illness or been confined to any hospital or institution, public or private, for mental illness; or

   (5)  is not now free from any mental disorders, defects or diseases that would impair the ability safely to possess or use a rifle or shotgun; or

   (6)  has been the subject of a suspension or ineligibility order issue pursuant to §530.14 of the New York State Criminal Procedure Law or §842-a of the New York State Family Court Act; or

   (7)  who is subject to a court order that (a) was issued after a hearing of which such person received actual notice, and at which such person had the opportunity to participate; (b) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (c)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; (d)   For purposes of this section only, "intimate partner" means, with respect to a person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabited with the person; or

   (8)  has been convicted of violating section 10-303.1 of this chapter; or

   (9)  unless good cause exists for the denial of the permit."

## 38 RCNY 3-03 and NYC 10-303 SUBSTANTIALLY BURDEN
## THE SECOND AMENDMENT

97.     Heightened scrutiny is triggered by restrictions that, like the complete prohibition

on handguns struck down in *Heller*, operate as a substantial burden on the ability of law-abiding

citizens to possess and use a firearm for self-defense or for other lawful purposes. *NY State Rifle*

*& Pistol Assn. v City of NY*, 883 F3d 45, 56 (2d Cir 2018) citing, *United States v Decastro*, 682

F3d 160, 166 (2d Cir 2012).

98.     Core Second Amendment rights, like the right to possess firearms in the home for

self-defense, are not subject to 'interest balancing'. *District of Columbia v Heller*, 554 US at 634

("We know of no other enumerated constitutional right whose core protection has been subjected

to a freestanding 'interest-balancing' approach. The very enumeration of the right takes out of

the hands of government--even the Third Branch of Government--the power to decide on a case-

by-case basis whether the right is really worth insisting upon.").

99.     "A constitutional guarantee subject to future judges' assessments of its usefulness

is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were

understood to have when the people adopted them, whether or not future legislatures or (yes)

even future judges think that scope too broad. We would not apply an 'interest-balancing'

approach to the prohibition of a peaceful neo-Nazi march through Skokie. See *National Socialist*

*Party of America v. Skokie*, 432 U.S. 43, 97 S. Ct. 2205, 53 L. Ed. 2d 96 (1977) (per curiam).

The First Amendment contains the freedom-of-speech guarantee that the people ratified, which

included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression

of extremely unpopular and wrong headed views. The Second Amendment is no different. Like

the First, it is the very product of an interest balancing by the people--which Justice Breyer

would now conduct for them anew. And whatever else it leaves to future evaluation, it surely

17

elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v Heller*, 554 US 570, 634-635 (2008).

100.     "Individual self-defense is *the* central component of the Second Amendment right." *McDonald v City of Chicago*, 561 US at 767, citing, *District of Columbia v. Heller*, 554 U.S. 570, 599 (emphasis added) (internal quotations omitted). The Second Amendment protects the core right of the individual to self-protection. *District of Columbia v. Heller*, 554 US at 595-599, 628; see also, *United States v Laurent*, 861 F Supp 2d 71, 100 (EDNY 2011) citing, *United States v. Barton*, 633 F.3d 168, 170-71 (3d Cir. 2011) ("At the 'core' of the Second Amendment is the right of law-abiding, responsible citizens to use arms in defense of hearth and home."); *Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011) ("there now exists a clearly-defined fundamental right to possess firearms for self-defense within the home").

101.     The denial of an application for a Rifle/Shotgun Permit implicates an enumerated and cognizable Constitutional right falling within the scope of Second Amendment protections. See, *District of Columbia v Heller*, 554 US 570 (2008).

102.     Strict scrutiny is warranted where the government burdens a fundamental, core right to self-defense in the home by a law-abiding citizen. *Kachalsky v Cacace*, 817 F Supp 2d 235, 268 (SDNY 2011) (internal citations omitted) (applying intermediate scrutiny to §400 concealed carry provisions, while the court concomitantly noted that Penal Law §400.00(2) *requires* pistol permits to be issued to eligible individuals for home possession - "shall be issued to . . . have and possess in his dwelling by a householder".).

103.     The courts in this state have, thus far, regarded a pistol license as a mere privilege and not a pre-existing 'right'. See, *Parker v Nastasi*, 97 AD2d 547, 548 (2d Dept 1983); *Caruso v Ward*, 160 AD2d 540 (1st Dept 1990), lv denied 76 NY2d 706; *Sewell v New York*, 182 AD2d

18

469, 472 (1st Dept 1992) (possession of a handgun license is a privilege rather than a right); *Kaplan v Bratton*, 249 AD2d 199 (1st Dept 1998) (the issuance of a pistol license is not a right, but a privilege).

104.    If possession of a handgun for self-defense inside of one's home is considered a 'privilege', then possession of a rifle or shotgun in one's home for self-defense is a fundamental and core Second Amendment right and subject to strict scrutiny.

105.    Laws that prohibit the right to possess a rifle and/or a shotgun on grounds other than *per se* state and/or federal statutory prohibitions, which the Legislature and Congress have deemed serious enough to strip one of a fundamental human right, are unconstitutional and violate the Second Amendment.

***Fourteenth Amendment Violation (Procedural Due Process)***

106.    State and federal statutes enumerate specific events and conditions that prohibit the possession of firearms in the first instance, i.e., individuals who have been dishonorably discharged from the military, convicted of a felony or serious offense, convicted of misdemeanor acts of domestic violence, are a fugitive from justice, an unlawful user of or addicted to any controlled substance, are the subject of a Court Order of Protection, and/or have been adjudicated as a mental defective or committed to a mental institution. See, Penal Law § 400.00(1), 18 USC 922(g).

107.    In *District of Columbia v. Heller*, 554 US 570, 627 n.26 (2008), the Supreme Court recognized that "laws prohibiting the exercise of the right to bear arms by felons and the mentally ill are 'presumptively lawful'".

108.    The common denominator of each of the enumerated prohibitors to firearm possession considered by the Congress and/or NYS Legislature, and thereafter codified in 81

19

USC 922(g) and Penal Law § 400.00(1), is that they involve legal circumstances that encompass some form of legal process – due process and/or legal adjudication proving the facts giving rise to the legal infirmity to firearm possession.

109.    For example, a *conviction* of a felony or serious offense is the result of a plea of guilty or a trial on the merits of the charge; an *adjudication* as a mental defective results from a formal court process; a dishonorable discharge from the military occurs after a court-martial proceeding; having a guardian *appointed* by the court as a result of a formal hearing; being subject to a court's Order of Protection (which, though issuable *ex parte* can be immediately challenged under the Family Court Act and/or Criminal Procedure Law depending on the jurisdiction of the issuing court).

110.    None of the enumerated state and federal statutory prohibitors to firearm possession is based on a mere accusation without any subsequent formal legal process adjudicating the underlying statutory infirmity.

111.    Each of the prohibitors enumerated by the NYS Legislature [and the United States Congress] are a result of (1) a formal adjudication process relating to (2) events serious enough to rise to the level of warranting the elimination of an individual's pre-existing right protected by the United States Constitution from governmental infringement.

112.    Neither state nor federal law prohibits, or contemplates the prohibition of, firearm possession by an individual based on an arrest, unadjudicated charges, dismissed charges, petty summonses, or traffic infractions.

113.    Neither state nor federal law prohibits, or contemplates the prohibition of, long gun possession by an individual who was ***previously*** and/or ***is no longer*** the subject of an Order of Protection.

114.    State and federal law prohibits the possession of firearms by an individual while they are subject to an Order of Protection, as the Order of Protection follows and accompanies a family court and/or criminal proceeding and/or an adjudication of such criminal charges and/or family court offense.

115.    Once an Order of Protection is expired, vacated, or withdrawn, the conditions of the Order of Protection, including the prohibition on firearm possession, cease to exist.

116.    The defendants' adherence to, and enforcement of, 38 RCNY 3-03 and NYC 10-303 poses a substantial and significant burden on Mr. Taveras' right to possess firearms in his residence for self-defense, a core right protected by the Second Amendment.

117.    The defendants' adherence to, and enforcement of, 38 RCNY 3-03 and NYC 10-303 violates Mr. Taveras' Fourteenth Amendment rights because it strips Mr. Taveras of a fundamental human right based on unproven and unadjudicated allegations.

118.    The defendants' adherence to, and enforcement of, 38 RCNY 3-03 and NYC 10-303 violates Mr. Taveras' Fourteenth Amendment rights because it strips Mr. Taveras of a fundamental human right based on vacated and/or expired Orders of Protection.

119.    The denial of Mr. Taveras' application for a Rifle/Shotgun Permit is an absolute prohibition on his right ability to possess firearms in his residence for self-defense.

120.    As a resident of New York City, Mr. Taveras cannot legally possess any firearm in his residence without a license issued by the defendants.

121.    Even if Mr. Taveras were to apply to NYPD for a handgun license, the language of 38 RCNY 5-10 (handgun licensing) mimics the language of 38 RCNY 3-03.

122.    Even if Mr. Taveras were to apply to NYPD for a handgun license, a handgun license in this state is considered a mere 'privilege' to be taken away whenever a licensing officer so decides.

123.    Had the NYS Legislature intended an arrest in and of itself, and/or a criminal charge that has been dismissed or reduced to a non-criminal violation, sufficient to render an individual ineligible to possess rifles and/or shotguns it would have enacted such a statute, which it did not.

124.    The NYS Legislature confined *per se* ineligibility to possess handguns, rifles, or shotguns to convictions of a felony and/or a serious offense. See, Penal Law §265.01.

125.    No federal or state law prohibits the possession of handguns, rifles, and/or shotguns based on an arrest, traffic infractions, or petty summonses.

126.    No federal or state law prohibits the possession of handguns, rifles, and/or shotguns where an individual was ***previously*** the subject of an Order of Protection.

127.    The statutory prohibition to firearms possession of an individual who is the subject of an Order of Protection terminates upon the expiration of the Order of Protection.

128.    Mr. Taveras has no criminal convictions and no state or federal statutory prohibitors to firearm possession.

129.    No event or condition related to Mr. Taveras warrants stripping him of his pre-existing fundamental right to possess a firearm in his home for self-defense, which falls squarely within the protections of the Second Amendment. See, *District of Columbia v. Heller,* supra.

130.    Preventing an individual from lawfully exercising his/her right to possess a firearm for self-defense in the home based on an unproven allegations unlawfully and

22

substantially burdens core pre-existing rights falling within the scope of Second Amendment

protections.

131.    The defendants' enforcement and implementation of 38 RCNY 3-03(f), 38 RCNY

3-303(g), and NYC 10-303(a)(2), NYC 10-303(a)(6), NYC 10-303(a)(7), NYC 10-303(a)(9),

and NYC 10-303(g) violates and substantially burdens Mr. Taveras' fundamental right to self-

protection in his home.


**38 RCNY 3-03(f), 38 RCNY 3-303(g), and NYC 10-303(a)(2), NYC 10-303(a)(6), NYC 10-303(a)(7), NYC 10-303(a)(9) and NYC 10-303(g) Are Preempted by Penal Law §400.00, *et seq*.**

132.    "A local law regulating the same subject matter [as a state law] is deemed

inconsistent with the State's transcendent interest, whether or not the terms of the local law

actually conflict with a State-wide statute." *Matter of Chwick v Mulvey*, 81 AD3d 161, 169 (2d

Dept 2010) citing, *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d at 377; *Matter of

Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d at 401; *DJL Rest. Corp. v City of

New York*, 96 NY2d at 95; *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d at 97-98; *Dougal v

County of Suffolk*, 102 AD2d at 532-533; *Matter of Ames v Smoot*, 98 AD2d at 218-219). "Such

[local] laws, were they permitted to operate in a field preempted by State law, would tend to

inhibit the operation of the State's general law and thereby thwart the operation of the State's

overriding policy concerns." *Id.* citing, *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d at 97;

*Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d at 377.

133.    Penal Law §400.00, *et seq.* is the exclusive statutory mechanism for the licensing

of firearms in New York State. *Matter of O'Connor v Scarpino*, 83 NY2d 919, 920, 615 NYS2d

305 (1994).

134.    Penal Law §400.00, *et seq.* requires only that handguns and assault rifles be licensed/registered.

135.    By limiting the registration/licensing requirements to handguns and assault rifles, the NYS Legislature specifically intended to exclude the licensing/registration of rifles and shotguns.

136.    The only authority granted to the licensing authority in the City of New York, the police commissioner, is set forth in §400.00(6), which authorizes the police commissioner to endorse a pistol license that was issued by a licensing officer outside of New York City.

137.    The NYPD police commissioner is a licensing officer under §400.00, *et* seq with the same limited scope of authority granted to all other licensing officers in New York State.

138.    The defendants are subject to all provisions of §400.00, *et seq.* with regard to their implementation of procedures for the licensing of firearms for the residents of New York City.

139.    Indeed, §400.00, *et seq.* evinces an intent to set forth a uniform system of licensing; it is the "exclusive statutory mechanism" for such licensing. As such, no locality may supplant that licensing requirement, since doing so would undermine the uniformity of the system. *Matter of Chwick v Mulvey*, supra.

140.    If a local ordinance imposed additional requirements for lawful firearms possession, and if each county enacted additional restrictions, the uniformity of the scheme would be destroyed. The state statute, by its detailed nature, left no room for local ordinances to operate. Thus, when the Legislature demonstrated its intent to preempt the field, all local ordinances were preempted, regardless of whether they actually conflicted with the state law. *Matter of Chwick v Mulvey*, 81 AD3d at 163.

141.    The New York SAFE Act [2013] reconfirmed the State's interest in preempting the field of firearm regulation in New York State.

142.    38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g) interrupt this uniformity by imposing additional requirements for lawful possession of rifles and shotguns beyond the State's requirements by creating additional burdens over and above those intended by the Legislature. See, e.g., *Matter of Chwick v Mulvey*, 81 AD3d at 171-172.

143.    Penal Law §400.00 restricts the realms in which local laws may operate and is very comprehensive. For instance, Penal Law §400.00 governs, among other things, the eligibility for a firearms license, the types of available firearms licenses, the application process for obtaining   a firearms license, the investigation process for each firearms license application, the filing of approved applications, the validity of issued firearms licenses, the form of each firearms license, and how firearms licenses must be exhibited and displayed (see Penal Law § 400.00 [1]-[8]). In sum, Penal Law §400.00 leaves no room for local ordinances to operate. Instead, the State statutes give localities detailed instructions concerning the procedures to be employed in licensing firearms. *Matter of Chwick v Mulvey*, 81 AD3d at 171-172 citing, *Dougal v County of Suffolk*, 102 AD2d at 533.

144.    Where the State has preempted the field, a local law regulating the same subject matter is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute. *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d at 377. When the Legislature has demonstrated its intent to preempt the field, all local ordinances are preempted, regardless of whether they actually conflict with the state law. *Matter of Chwick v Mulvey*, 81 AD3d at 171-172 citing, *Jancyn Mfg. Corp. v County*

*of Suffolk*, 71 NY2d at 97; *People v De Jesus*, 54 NY2d at 468-470; *Matter of Ames v Smoot*, 98 AD2d at 217-219).

145.    38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g) interrupt the uniformity of the statute by imposing additional requirements for lawful possession of a valid firearms license beyond the State's requirements. See, *Matter of Chwick v Mulvey*, 81 AD3d at 171.

146.    38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g) unlawfully apply the standards for handgun licensing – a mere 'privilege' according to the courts of New York State - to the possession of rifles and shotguns.

147.    38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g) contain factors that the defendants determine to be 'other good cause' to deny an application for a handgun license.

148.    Firearm possession is a birthright terminable only upon specific enumerated events and/or conditions.  The factors contained in 38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g) unlawfully and unconstitutionally authorize judgment by government employees of whether an applicant has 'moral character' to exercise a preexisting fundamental civil right, to wit, the possession of long guns.

149.    38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g) *de facto* unlawfully create additional classes of *per se* ineligibility to possess long guns, outside of the state and federal prohibitions on firearm possession.

150.    The defendants' enforcement and implementation of 38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g) are preempted by §400.00, *et seq.* and should be declared a nullity.

***Article 78 Does Not Provide a Viable Recourse for Mr. Taveras***

151.    The standard in an Article 78 proceeding is whether the [government's] decision was "arbitrary and capricious". See, *O'Brien v. Keegan*, 87 N.Y.2d 436, 439-40, 663 N.E.2d 316, 639 N.Y.S.2d 1004 (1996)(citing N.Y. Penal Law § 400.00) (A licensing officer's decision will not be disturbed unless it is arbitrary and capricious).

152.    An Article 78 proceeding is not a viable option for Mr. Taveras to seek recourse for violations of his pre-existing right to self-defense in his home, as protected by the second Amendment.

153.    The limited scope of an Article 78 proceeding – a wholly inapposite legal standard - precludes and prevents a court from considering whether the government's actions violate a pre-existing, fundamental right protected by the United States Constitution.

**INJUNCTIVE RELIEF ALLEGATIONS**

154.    Mr. Taveras is being continuously injured, in fact, by (1) 38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g); (2) the defendants' enforcement of 38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g); and (3) the defendants' determination that his past circumstances constitute "other good cause" and/or "lack of moral character" sufficient to warrant denial of his application for a Rifle/Shotgun permit, each of which interfere with Mr. Taveras' preexisting right to possess firearms in his home for self-defense as protected by the Second Amendment.

155.    Mr. Taveras is suffering irreparable harm by the deprivation of a core Second Amendment right and will continue to suffer such harm without the requested relief.

156.    Mr. Taveras is suffering irreparable harm by the deprivation of his basic human rights as protected by the Fourteenth Amendment and will continue to suffer such harm without the requested relief.

157.    Mr. Taveras is suffering irreparable harm by having to choose between exercising his Second Amendment rights and being subject to criminal prosecution.

158.    Mr. Taveras should not have to risk criminal prosecution in order to exercise his core fundamental right to possess arms for self-defense at home.

159.    The defendants deny the allegations stated herein.

## COUNT I
## 38 RCNY 3-303 (f) AND (g) SUBSTANTIALLY BURDEN A
## CORE SECOND AMENDMENT RIGHT

160.    Repeats and realleges paragraphs "1" through and including "159" as if set forth in their entirety herein.

161.    38 RCNY 3-303 (f) and (g) individually and collectively substantially burden a core pre-existing right protected by the Second Amendment, to wit, the right to possess rifles and shotguns in the home for self-defense.

162.    38 RCNY 3-303 (f) and (g) individually and collectively should be enjoined and stricken as unconstitutional on their face, and as applied to the plaintiff, as they violate constitutional rights protected by the Second Amendment, 42 U.S.C. §1983.

163.    The defendants' implementation and enforcement of 38 RCNY 3-303 (f) and (g) collectively and individually substantially burdens a core pre-existing right protected by the

Second Amendment, to wit, the right to possess firearms for self-defense in the home generally and as applied to the plaintiff.

## COUNT II
## NEW YORK CITY ADMINISTRATIVE CODES
## 10-303(a)(2), 10-303(6), 10-303(7), 10-303(9), AND 10-303(g)
## SUBSTANTIALLY BURDEN A CORE SECOND AMENDMENT RIGHT

164.    Repeats and realleges paragraphs "1" through and including "163" as if set forth in their entirety herein.

165.    NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g) individually and collectively substantially burden a core pre-existing right protected by the Second Amendment, to wit, the right to possess rifles and shotguns in the home for self-defense.

166.    NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g) individually and collectively should be enjoined and stricken as unconstitutional on their face, and as applied to the plaintiff, as they violate constitutional rights protected by the Second Amendment, 42 U.S.C. §1983.

167.    The defendants' implementation and enforcement of NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g) collectively and individually substantially burden a core pre-existing right protected by the Second Amendment, to wit, the right to possess firearms for self-defense in the home generally and as applied to the plaintiff.

## COUNT III
## 38 RCNY 3-303 (f) AND (g) VIOLATE THE
## FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS

168.    Repeats and realleges paragraphs "1" through and including "167" as if set forth in their entirety herein.

169.     38 RCNY 3-303 (f) and (g) individually and collectively violate the pre-existing right to procedural due process protected by the Fourteenth Amendment.

170.     As such, 38 RCNY 3-303 (f) and (g) individually and collectively should be enjoined and stricken as unconstitutional on their face, and as applied to the plaintiff, as they violate constitutional rights protected by the Fourteenth Amendment, 42 U.S.C. §1983.

171.     The defendants' implementation and enforcement of 38 RCNY 3-303 (f) and (g) collectively and individually violates the Fourteenth Amendment right to procedural due process, generally and as applied to the plaintiff.

**COUNT IV**
**NEW YORK CITY ADMINISTRATIVE CODES 10-303(a)(2), 10-303(6), 10-303(7), 10-303(9), AND 10-303(g) VIOLATE THE PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS**

172.     Repeats and realleges paragraphs "1" through and including "171" as if set forth in their entirety herein.

173.     NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g) individually and collectively violate the pre-existing right to procedural due process protected by the Fourteenth Amendment.

174.     NYC 10-303(a)(2), 10-303(6), 10-303(7), 10-303(9), and 10-303(g) individually and collectively should be enjoined and stricken as unconstitutional on their face, and as applied to the plaintiff, as they violate constitutional rights protected by the Fourteenth Amendment, 42 U.S.C. §1983.

175.     The defendants' implementation and enforcement of NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g) collectively and individually violates the Fourteenth Amendment right to procedural due process generally and as applied to the plaintiff.

**COUNT V**
**THE DEFENDANTS' ENFORCEMENT OF PENAL LAWS §265.01(1), §265.01-b,**
**§265.02(5)(i), §265.03(2), §265.04(2), §265.15(6) SUBSTANTIALLY**
**BURDENS A CORE SECOND AMENDMENT RIGHT**

176.    Repeats and realleges paragraphs "1" through and including "175" as if set forth in their entirety herein.

177.    The defendants' enforcement and implementation of criminal penalties under Penal Laws §265.01(1), §265.01-b, §265.02(5)(i), §265.03(2), §265.04(2), §265.15(6) violate the plaintiff's civil rights, as protected by the Second Amendment, by forcing him to choose between exercising a core fundamental right to possess arms for self-defense in his home and being subject to criminal prosecution.

178.    Penal Laws §265.01(1), §265.01-b, §265.02(5)(i), §265.03(2), §265.04(2), §265.15(6) should be enjoined and stricken as unconstitutional as applied to the plaintiff and other law-abiding individuals with no enumerated prohibitors to firearm possession who possess rifles and shotguns in their home for self-defense but have been denied a Rifle/Shotgun permit by the NYPD License Division based on 38 RCNY §3-303 (f), 38 RCNY §3-303 (g), NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and/or NYC 10-303(g) collectively and/or individually, as law-abiding individuals should not have to choose between exercising a core right protected by the Second Amendment and being subject to criminal prosecution.

179.    The defendants' implementation and enforcement of criminal penalties under Penal Laws §265.01(1), §265.01-b, §265.02(5)(i), §265.03(2), §265.04(2), and/or §265.15(6) constitutes a continuous violation of core fundamental human rights protected by the Second Amendment, to wit, the pre-existing right to possess firearms for self-defense in the home, generally and as applied to the plaintiff.

## COUNT VI
## 38 RCNY 3-03(F), 38 RCNY 3-03(G), NYC 10-303(A)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), AND NYC 10-303(g) ARE PREEMPTED BY PENAL LAW §400.00

180.   Repeats and realleges paragraphs "1" through and including "179" as if set forth in their entirety herein.

181.   Penal Law §400.00, *et seq,* is the exclusive statutory mechanism for such firearm licensing and preempts local laws.

182.   The licensing of rifles and shotguns pursuant to, *inter alia,* 38 RCNY 3-303 (f), 38 RCNY 3-303 (g), NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and/or NYC 10-303(g) collectively and/or individually, are pre-empted by Penal Law §400.00, *et seq.* and should be declared a nullity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against the defendants as follows:

- An Order preliminarily and permanently enjoining the defendants, their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction, from enforcing and implementing 38 RCNY 3-303 (f), 38 RCNY 3-303 (g), NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and/or NYC 10-303(g) collectively and individually;

- An Order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons acting in concert with Defendants who receive actual notice of the injunction, from enforcing Penal Law §265.01(1), §265.01-b, §265.02(5)(i), §265.03(2), §265.04(2), §265.15(6) against law-abiding individuals with no enumerated prohibitors to firearm possession under state or

32

federal law rifles and/or shotguns in their residence for self-defense but have been denied a Rifle/Shotgun Permit by the NYPD License Division based on 38 RCNY 3-303 (f), 38 RCNY 3-303 (g), NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and/or NYC 10-303(g) collectively and/or individually;

- A declaration that 38 RCNY 3-303 (f), 38 RCNY 3-303 (g), NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and/or NYC 10-303(g) individually and collectively are unconstitutional on their face, and as applied to the plaintiff, as they each unduly burden and violate fundamental pre-existing rights protected by the Second Amendment to the United States Constitution;

- A declaration that 38 RCNY 3-303 (f), 38 RCNY 3-303 (g), NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and/or NYC 10-303(g) are nullities and preempted by NYS Penal Law §400.00, *et seq.*;

- A declaration that New York Penal Codes Penal Law §265.01(1), §265.01-b, §265.02(5)(i), §265.03(2), §265.04(2), and §265.15(6) are unenforceable against eligible, law-abiding individuals who have no enumerated state or federal statutory prohibitors to firearm possession, possess rifles and/or shotguns in their residence but have been denied a Rifle/Shotgun Permit by the NYPD License Division under the provisions of 38 RCNY 3-303 (f), 38 RCNY 3-303 (g), NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and/or NYC 10-303(g) collectively and/or individually;

- Reasonable statutory attorney's fees, costs, and disbursements, under 42 U.S.C. §1988 and any other applicable law;

- Damages in at least a nominal amount; and

- Grant such further and alternative relief as the Court deems just and proper.

Respectfully submitted,


Dated: April 2, 2020
      Scarsdale, New York                          THE BELLANTONI LAW FIRM, PLLC
                                             *Attorneys for Plaintiff*

                                           _____/s/_____
                                           Amy L. Bellantoni (AB3061)
                                           2 Overhill Road, Suite 400
                                           Scarsdale, New York 10583
                                           abell@bellantoni-law.com
                                           (914) 367-0090 (t)
                                           (888) 763-9761 (f)