UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ALAN TAVERAS,

                             Plaintiff,                         Case No.: 20 Civ. 01200 (KPF)

              -against-

NEW YORK CITY, New York,
JAMES O'NEILL, in his official capacity as
Police Commissioner, and all successors therein,
JONATHAN DAVID, in his official capacity
as Director, NYPD License Division, and
MICHAEL BARRETO, in his official capacity
as Commanding Officer of the License Division,

                             Defendants.
-----------------------------------------------------------x


# PLAINTIFF'S MEMORANDUM OF LAW
# IN OPPOSITION TO MOTION TO DISMISS
# THE FIRST AMENDED COMPLAINT


**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiff, Alan Taveras*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**(914) 367-0090**

# TABLE OF CONTENTS

Page(s)

Table of Authorities ............................................................................................... i

PRELIMINARY STATEMENT ............................................................................1

LEGAL ARGUMENT .......................................................................................... 1

Standard of Review for Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) .............................1

POINT I
NEW YORK CITY'S LICENSING OF RIFLES AND SHOTGUNS
CONSTITUTES A TOTAL BAN OF SECOND AMENDMENT RIGHTS................................ 2

      A. New York Handgun Licensing Scheme ...................................................... 3

      B. Rifles and shotguns are entitled to Constitutional protections .......................5

POINT II
THE SUPREME COURT SPECIFICALLY REJECTED
"INTEREST BALANCING" FOR SECOND AMENDMENT VIOLATIONS ...........................7

      A. The "interest balancing" analysis was rejected by the Supreme Court
         in *Heller* ..................................................................................... 7

      B. "Interest balancing" yields results that are "entirely inconsistent with *Heller*" ...........11

POINT III
PLAINTIFF HAS PLED A PLAUSIBLE SECOND AMENDMENT VIOLATION .................12

      A. The Second Amendment Restricts the Government's Conduct .............................12

      B. Plaintiff has an absolute right to possess "common weapons" in his home ...........13

      C. Plaintiff has no *sui generis* disqualifiers to firearm possession .............................13

      D. An 'arrest' is an accusation, probative of nothing .................................................15

      E. The 'time and place restrictions' are irrelevant to the case at bar ...........................16

POINT IV
THE SECOND AMENDMENT PROTECTS ALL
"COMMON WEAPONS" EQUALLY  ....................................................................... 17

POINT V
THE CITY'S RIFLE/SHOTGUN LICENSING SCHEME IS
PREEMPTED BY NEW YORK STATE LAW......................................................... 19

POINT VI
PLAINTIFF HAS STANDING TO CHALLENGE THE OFFENDING STATUTES  ............. 23

CONCLUSION.......................................................................................................... 23

# TABLE OF AUTHORITIES

Cases                                                                                     Page(s)

*Abekassis v N.Y. City*,
  No. 19 Civ. 8004 (PAE), 2020 U.S. Dist. LEXIS 141353 [S.D.N.Y. Aug. 7, 2020] ............ 14

*Anderson v Mogavero*,
  498 NYS2d 201, 116 AD2d 885 [3d Dept 1986] .................... 5

*Ashcroft v Iqbal*,
  556 US 662, 129 S Ct 1937, 173 L Ed 2d 868 [2009] .......... 2

*Avitabile v Beach*,
  368 F Supp 3d 404 [N.D.N.Y. 2019] .................... 18

*Boss v Kelly*,
  306 F Appx 649 [2d Cir 2009] .................... 3

*Caetano v Massachusetts*,
  136 S Ct 1027 [2016] .................... 17, 18

*District of Columbia v Heller*,
  554 US 570, 128 S Ct 2783 [2008] ................. *passim*

*Dougal v County of Suffolk*,
  102 AD2d 531 [2d Dept 1984] .................... 19

*Drake v Filko*,
  724 F3d 426 [3d Cir 2013] .................... 9-10

*Duncan v Becerra*,
  265 F Supp 3d 1106 [S.D. Cal. 2017] .................... 11

*Duncan v Becerra*,
  742 F Appx 218 [9th Cir 2018] .................... 11

*Eddy v Kirk*,
  195 AD2d 1009 [4th Dept 1993] .................... 4-5

*Erickson v Pardus*,
  551 US 89, 127 S Ct 2197, 167 L Ed 2d 1081 [2007] .......... 2

*Fromson v Nelson*,
  577 NYS2d 417, 178 AD2d 479 [2d Dept 1991] .................... 5

*Gould v Morgan,*
  907 F3d 659 [1st Cir 2018] ................................................................ 9, 10, 11

*Grimm v New York,*
  56 Misc 2d 525 [N.Y. Sup. Ct. 1968] ................................................. 22

*Henry v Cty. of Nassau,*
  No. 17-CV-06545 (DRH)(AKT), 2020 U.S. Dist. LEXIS 43371 (E.D.N.Y., Mar. 12, 2020,
  No. 17-CV-06545 (DRH)(AKT)) [E.D.N.Y. Mar. 12, 2020] ........................................... 3-4

*Kachalsky v County of Westchester,*
  701 F3d 81 [2d Cir 2012] ................................................................... 9

*Koch v Christie's Intl. plc,*
  699 F3d 141 [2d Cir 2012] ................................................................. 2

*Kuck v Danaher,*
  600 F3d 159 [2d Cir 2010] ................................................................. 4

*Matter of Chwick v Mulvey,*
  81 AD3d 161 [2d Dept 2010] .......................................................... 19, 21

*McDonald v Chicago,*
  561 US 742, 130 S. Ct. 3020 [2010] ....................................................3, 13, 12, 17

*Michelson v United States,*
  335 US 469, 69 S Ct 213, 93 L Ed 168 [1948] ...................................... 16

*Mishtaku v City of N.Y.,*
  No. 14-CV-839 (VSB), 2015 U.S. Dist. LEXIS 193797 [S.D.N.Y. May 4, 2015] ............... 14

*Mishtaku v Espada,*
  669 F Appx 35 [2d Cir 2016] ............................................................... 8

*N.Y. State Rifle & Pistol Assn. v City of N.Y. ,*
  883 F3d 45 [2d Cir 2018] ................................................................... 9

*N.Y. State Rifle & Pistol Assn. v Cuomo ,*
  804 F3d 242 [2d Cir 2015] ................................................................. 8

*NRA of Am. v Bur. of Alcohol,*
  700 F3d 185 [5th Cir 2012] ............................................................... 10

*NY State Rifle & Pistol Assn. v Cuomo ,*
  804 F3d 242 [2d Cir 2015] ............................................................... 17

*Old Republic Ins. Co. v Hansa World Cargo Serv., Inc.*,
170 FRD 361 [S.D.N.Y. 1997] ........................................................ 2

*Panzella v Sposato*,
863 F3d 210 [2d Cir 2017] .......................................................... 5

*Papaioannou v Kelly*,
788 NYS2d 378 [1st Dept 2005] ................................................... 3

*People v Morrison*,
195 NY 116 [1909] .................................................................... 15

*Perros v County of Nassau*,
238 F Supp 3d 395 [E.D.N.Y. 2017] .............................................. 4

*Phelps v Bosco*,
No. 1:13-CV-1510 (GTS/CFH), 2017 U.S. Dist. LEXIS 13684 (NDNY, Feb. 1, 2017, No.
1:13-CV-1510 (GTS/CFH)) [N.D.N.Y. Feb. 1, 2017] ......................... 21

*Powell v Tompkins*,
783 F3d 332 [1st Cir 2015] ........................................................ 10

*Rogers v Grewal*,
140 S Ct 1865, 207 L Ed 2d 1059, No. 18-824., 2020 U.S. LEXIS 3248 [June 15, 2020]
............................................................................................ *passim*

*Sibley v Watches*,
No. Case # 19-CV-6517-FPG, 2020 U.S. Dist. LEXIS 88143 (WDNY, May 18, 2020, No.
19-CV-6517-FPG) [W.D.N.Y. May 18, 2020] ................................... 3

*Spinelli v City of N.Y.*,
579 F3d 160 [2d Cir 2009] .......................................................... 4

*Stephen v Hanley*,
No. 03-CV-6226(KAM)(LB), 2009 U.S. Dist. LEXIS 43334, 2009 WL 1471180 .............. 15

*Toussaint v City of N.Y.*,
No. 17-CV-5576 (NGG) (VMS), 2018 U.S. Dist. LEXIS 152985 [E.D.N.Y. Sept. 6, 2018]
............................................................................................4,14

*Town of Castle Rock v Gonzales*,
545 US 748, 125 S Ct 2796 [2005] ............................................. 5, 6

*United States v Chovan*,
735 F3d 1127 [9th Cir 2013] ...................................................... 11

*Weinstein v Krumpter*,
    386 F Supp 3d 220 [E.D.N.Y. 2019] ........................................................... 4, 5, 6

*Whole Woman's Health v Hellerstedt*,
    579 US ___, ___, 136 S Ct 2292, 195 L Ed 2d 665 [2016]  .................................... 9

Statutes

28 USC § 922 .................................................................................... 20
38 RCNY 3 .................................................................................. *passim*
NYC Administrative Code Title 10, Chapter 3 .................................. *passim*
NY Corrections Law § 701 .................................................................. 14
NY Criminal Procedure Law § 160.50 .................................................. 14
NY Criminal Procedure Law § 530 ...................................................... 20
NY Family Court Act § 842-a .............................................................. 20
NY Mental Hygiene Law § 7.09 ...................................................... 14, 21
NY Penal Law § 265.00 ................................................................ 16, 20
NY Penal Law § 265.01 ......................................................... 1, 3, 18, 20
NY Penal Law § 400.00 ................................................................ *passim*
Penal Law § 10 ................................................................................... 6
Penal Law § 10 (a) .............................................................................. 6
Penal Law § 1890 ............................................................................. 13

Rules

Federal Rules of Civil Procedure Rule 12 (b)(6) ............................... 1, 2, 24
Federal Rules of Civil Procedure 608 ................................................... 16

Other

Rostron, *Justice Breyer's Triumph in the Third Battle Over the Second Amendment*,
    80 Geo. Wash. L. Rev. 703 (2012) ................................................... 11
United States Constitution Amendment XIV  .......................................... 2

## PRELIMINARY STATEMENT

Plaintiff, Alan Taveras ("Plaintiff"), submits the within memorandum of law in opposition to the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff commenced this action for declaratory and injunctive relief arising from the defendants' denial of his application for a license to possess a rifle or shotgun in his home, located within the five boroughs of New York City. The First Amended complaint seeks to strike as unconstitutional, and enjoin the defendants from enforcing and implementing, the licensing scheme created by the New York City Council for the lawful possession of rifles and shotguns, to wit, 38 RCNY 3 and New York Administrative Code Title 10, Chapter 3, and to strike and enjoin Defendants' enforcement of, criminal statutes, penalties, and fines for the unlicensed possession of rifles and shotguns, and corresponding ammunition by non-prohibited persons within the five boroughs of New York City.

Defendants move to dismiss the First Amended Complaint on the grounds that Plaintiff:

(i)  lacks standing to challenge NYC Admin. Code § 10-303(a)(6) and (7), and Penal Law § 265.01(1), 265.01(b), and 265.15 (6); and

(ii) failed to plead a plausible Second Amendment claim, facially and as applied to him; and

(iii) failed to plead a plausible Fourteenth Amendment Due Process claim; and the defendants further request that

(iv) this Court decline to exercise supplemental jurisdiction over Plaintiff's state law preemption claim but argues in the alternative that the challenged statutes are not preempted by New York State law.

As set forth below, the First Amended Complaint states a plausible claim upon which relief can be granted, warranting the denial of the defendants' motion in its entirety, except where expressly consented to.[1]

## LEGAL ARGUMENT

### Standard of Review for Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

When ruling on a defendants' motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

In adjudicating a Rule 12(b)(6) motion, a district court must look only to the four corners of the complaint to evaluate the legal viability of the claims stated therein. See, Fed. R. Civ. P. 12(b)(6); *Old Republic Ins. Co. v Hansa World Cargo Serv., Inc.*, 170 FRD 361, 384 (SDNY 1997).

## POINT I
## NEW YORK CITY'S LICENSING OF RIFLES AND SHOTGUNS CONSTITUTES A TOTAL BAN OF SECOND AMENDMENT RIGHTS

New York City's licensing of rifles and shotguns constitutes a complete ban of the preexisting rights protected by the Second Amendment. To understand how this is so, a brief history of New York State's handgun licensing scheme is required.

---

[1] Plaintiff voluntarily withdraws his claim for a violation of due process under the Fourteenth Amendment to the United States Constitution.

2

A. <u>New York Handgun Licensing Scheme</u>

New York State's handgun licensing statutes are built on the proverbial house of cards. This is so because the foundation for such laws and regulations was laid decades prior to the Supreme Court decision in *McDonald v. Chicago*, 561 U.S. 742, 130 S. Ct. 3020 (2010) (holding that the protections of the Second Amendment are fully applicable to state government), and at a time when New York State Legislature and courts believed [erroneously] that the restrictions of the Second Amendment did not apply to state government.

New York state and federal courts have historically held that a license to possess a handgun is only a "privilege", not a "right" protected by the Second Amendment. In 2009, the Second Circuit, in *Boss v Kelly*, 306 F App'x 649, 651 (2d Cir 2009) confirmed New York's misguided and unconstitutional view of handgun possession: "Under New York law, 'it is well settled that the possession of a handgun license is a privilege, not a right, which is subject to the broad discretion of the New York City Police Commissioner.'") quoting, *Papaioannou v Kelly*, 788 N.Y.S.2d at 378) (1st Dep't 2009). By extension, handgun possession is also considered a "privilege" and not a "right" protected by the Second Amendment; without a handgun license, such possession is a crime. *Sibley v Watches*, 2020 US Dist LEXIS 88143, at *9 (WDNY May 18, 2020, No. 19-CV-6517-FPG) (N.Y. Penal Law §§ 265.01(1) and 265.20(a)(3) criminalizes possession of an unlicensed handgun).

Even after *McDonald* was decided, New York federal and state courts continued on as if nothing changed – maintaining the second-class status of handgun ownership as a "privilege", not a right worthy of Second Amendment protections.[2] See, *Henry v County of Nassau*, 2020 US

---

[2] This is so notwithstanding the Supreme Court's declaration and acknowledgement that "the American people have considered the handgun to be the quintessential self-defense weapon. There are many reasons that a citizen may prefer a handgun for home defense: It is easier to store in a location that is readily accessible in an emergency; it

Dist LEXIS 43371, at *25 (E.D.N.Y. Mar. 12, 2020, No. 17-CV-06545 (DRH)(AKT))

("numerous courts in this Circuit have previously found that there is no constitutional right to a

handgun license in New York State.") citing, *Weinstein v Krumpter*, 386 F Supp 3d 220, 232

(E.D.N.Y. 2019); *Toussaint v. City of New York*, No. 17-CV-5576, 2018 U.S. Dist. LEXIS

152985, 2018 WL 4288637, at *7 (E.D.N.Y. Sept. 7, 2018) (dismissing case because the plaintiff

"cannot show that he has a protected liberty or property interest in a 'possible future [handgun]

license' " (quoting *Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009))); *Perros v.*

*Cty. of Nassau*, 238 F. Supp. 3d 395, 401 (E.D.N.Y. 2017) ("Under New York law, it is well-

settled that the possession of a handgun license is a privilege, not a right." (internal citations

omitted)); c.f., *Kuck v. Danaher*, 600 F.3d 159, 165 (2d Cir. 2010) (suggesting that, while a

Connecticut plaintiff has a liberty interest in a firearm permit, a New York plaintiff may not have

one because New York licensing officers have broader discretion in issuing firearm licenses).

    The eligibility factors for the issuance of a handgun license enumerated in § 400.00 (1)

are subjective and are not limited to *per se* statutory prohibitors (felony conviction, involuntary

commitment, dishonorable discharge, etc.). Section 400.00 (1) *requires* the denial of a handgun

license application any time a licensing officer feels the applicant does not possess "good moral

character" or for any other reason the licensing officer opines constitutes "good cause" to deny

the application. Every applicant for a handgun license is at the mercy of the handgun licensing

officer.

    Our state court precedent interprets § 400.00 as empowering licensing officers with

"broad discretion" to grant, deny, or revoke a pistol license. *Eddy v Kirk*, 195 A.D.2d 1009, 1010

---

cannot easily be redirected or wrestled away by an attacker; it is easier to use for those without the upper-body
strength to lift and aim a long gun; it can be pointed at a burglar with one hand while the other hand dials the police.
*Heller*, 554 U.S. at 629.

(4th Dep't 1993) ("A licensing officer has broad discretion in determining whether to grant, deny or revoke a pistol license.") citing, *Matter of Fromson v Nelson*, 577 N.Y.S.2d 417, 178 A.D.2d 479 (2d Dep't 1991); *Matter of Anderson v Mogavero*, 498 N.Y.S.2d 201, 116 A.D.2d 885 (3d Dep't 1986).

B.  Rifles and shotguns are entitled to Constitutional protections

Rifles and shotguns, however, are viewed by the federal and state courts view as falling within the protections of the U.S. Constitution. See, *Panzella v Sposato*, 863 F3d 210, 218 (2d Cir 2017).

For example, the courts recognize a longarms owner's "protected property interest" and the fact that the seizure of rifles and shotguns are afforded Fourteenth Amendment due process protections, while handguns can be taken away 'at will' due to the suspension/ revocation power of a licensing officer. *Panzella*, 863 F3d at 218.

The federal and state courts view rifles and shotguns differently because rifles and shotguns are not licensed by the State of New York. See, *Panzella*, supra.

C.  The City's licensing scheme reduces rifles/shotgun possession to "privilege" status

New York City's licensing of rifles and shotguns reduces the lawful possession of rifles and shotguns to a mere "privilege" and not a "right" protected by the Second Amendment because the ability to lawfully possess a rifle or shotgun in New York City can be "granted or taken away" by the government. C.f., *Weinstein v Krumpter*, 386 F Supp 3d at 234-235 ("there is no protectible interest in a New York State-issued handgun license, which is subject to the broad discretion of the licensing official.") citing, *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 125 S. Ct. 2796 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion.")

The New York City licensing scheme for rifles and shotguns mimics the language of Penal Law § 400.00. See, 38 RCNY 3; NYC Admin. Code Title 10, Chapter 3 ("Firearms"), Section 303. The grounds for denying a rifle/shotgun license are not limited to *per se* statutory prohibitors (felony conviction, involuntary commitment, dishonorable discharge, etc.). Like New York State's handgun licensing scheme, the City's rifle/shotgun licensing scheme contains the same subjective "good moral character" and "good cause" language to deny, suspend, or revoke a rifle/shotgun license.[3] See, NYC Admin. Code § 10-303; 38 RCNY § 3-03.

New York City's <u>handgun</u> licensing statutory scheme also mimics the eligibility language of § 400.00, as well as the City's rifle/shotgun licensing eligibility requirements. See, 38 RCNY § 5-10.

Thus, New York City's licensing of rifles and shotguns reduces the possession of ***any and all firearms – handguns, rifles, and shotguns*** – to a mere "privilege" falling outside of the scope of the Second Amendment protections.[4]

By reducing the lawful possession of handguns, rifles, and shotguns to a mere "benefit…[that] government officials may grant or deny [ ] in their discretion", New York City has *de facto* banned and extinguished ***any right*** to keep and bear arms in the five boroughs. See, *Weinstein v Krumpter*, 386 F Supp 3d at 234-235 (E.D.N.Y. 2019) citing, *Town of Castle Rock v. Gonzales*, 545 U.S. at 756.

---

[3] Section 10-303 also allows the suspension and/or revocation of a rifle/shotgun license for reasons far outside of a *per se* prohibiting event or condition. Section 10-303 (g) provides, "A permit may be revoked or suspended at any time upon evidence of any other disqualification set forth in subdivision a of this section, which includes any event that the License Division determines not to evidence "good moral character" and any time the NYPD License Division feels "good cause" to revoke the license. See, § 10-303 (a).

[4] To be clear, Plaintiff specifically contests the view historically taken by New York State and the Second Circuit - that the possession of a handgun is a 'privilege'. Unfortunately, and for now, that is the current state of the law.

6

Having extinguished the **right** of an individual with no *per se* prohibitors to lawfully possess rifles and shotguns, New York City's licensing scheme must be declared unconstitutional.

## POINT II
## THE SUPREME COURT SPECIFICALLY REJECTED
## "INTEREST BALANCING" FOR SECOND AMENDMENT VIOLATIONS

Having demonstrated there is no Second Amendment **right** to possess firearms **of any kind** [handguns, rifles, and/or shotguns] in New York City, only a government-issued privilege to possess them, there is no level of scrutiny under which the City's licensing of rifles and shotguns can survive. As such, the New York City statutory licensing scheme for rifles and shotguns constitutes a *per se* violation of the Second Amendment and must be stricken.

Even assuming, *arguendo*, that the Court proceeds with some level of analysis, the majority opinion in *District of Columbia v Heller*, 554 US 570, 128 S Ct 2783  [2008] specifically rejected the "interest balancing" analysis urged by Defendants.

A.  The "interest balancing" analysis was rejected by the Supreme Court in *Heller*

Defendants would have this Court apply an "interest balancing" analysis to Plaintiff's right to possess a rifle/shotgun.

The Supreme Court in *Heller* **specifically rejected** the "interest balancing" analysis of the Second Amendment, which was unsuccessfully advocated by Justice Breyer. *Heller*, 554 U.S. at 689 (Breyer, J., dissenting).

"Like the First [Amendment, the Second Amendment] is the very *product* of an interest balancing by the people--which Justice Breyer would now conduct for them anew." *Heller*, 554 U.S. at 635 (emphasis supplied).

"Justice Breyer arrives at his interest-balanced answer: Because handgun violence is a problem, because the law is limited to an urban area, and because there were somewhat similar restrictions in the founding period (a false proposition that we have already discussed), the interest-balancing inquiry results in the constitutionality of the handgun ban. QED."

To which the majority responded:

> "We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach. The very enumeration of the right takes out of the hands of government--even the Third Branch of Government--the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad."

*Heller*, 554 U.S. at 634-635.

Yet, the Second Circuit has exclusively applied "interest balancing" tests ever since the *Heller* decision. See, *Mishtaku v Espada*, 669 F App'x 35, 35-36 (2d Cir 2016) (declaring "[w]e apply intermediate scrutiny to laws implicating the Second Amendment.") citing, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 260-61 (2d Cir. 2015).

In June 2020, Supreme Court Justice Thomas [in the majority in *Heller*], joined by Justice Kavanaugh, took the opportunity to express his disdain with the manner in which the circuit courts, including the Second Circuit, have interpreted the Supreme Court's decision in *Heller*. See, *Rogers v. Grewal*, 140 S. Ct. 1865, 1868, 207 L. Ed. 2d 1059, 1062, 2020 U.S. LEXIS 3248, *7, 28 Fla. L. Weekly Fed. S 340 (U.S. June 15, 2020) (Thomas, J., dissenting).[5]

Identifying the Second Circuit and others, Justice Thomas instructed that the test used by the courts of appeals to determine the appropriate level of scrutiny to be applied to Second

---

[5] In *Rogers v. Grewal*, the Supreme Court denied cert. on an appeal related to the concealed carriage of firearms. Justice Thomas wrote a dissenting opinion, joined by Justice Kavanaugh, to address the failure of some circuit courts to adhere to the framework provided in the extensive historical analysis and holding in *Heller.*

Amendment challenges "appears to be entirely made up. The Second Amendment provides no hierarchy of core and peripheral rights. And the Constitution does not prescribe tiers of scrutiny." *Rogers v. Grewal*, 140 S. Ct. at 1867 citing, *Whole Woman's Health v. Hellerstedt*, 579 U. S. ___, ___, 136 S. Ct. 2292, 195 L. Ed. 2d 665, 706 (2016) (Thomas, J., dissenting); see also *Heller II*, supra, at 1283, 399 U.S. App. D.C. 314 (Kavanaugh, J., dissenting) (listing constitutional rights that are not subject to means-ends scrutiny).

"[W]e explicitly rejected the invitation to evaluate Second Amendment challenges under an 'interest-balancing inquiry, with the interests protected by the Second Amendment on one side and the governmental public-safety concerns on the other' as put forth by Justice Breyer in his dissenting opinion. But the application of the test adopted by the courts of appeals has devolved into just that." *Rogers v. Grewal*, 140 S. Ct. at 1867 citing, *Heller*, 554 U.S. at 689.

"[A]s I have noted before, many courts have resisted our decisions in *Heller* and *McDonald*." *Rogers v. Grewal*, 140 S. Ct. at 1867.

Justice Thomas specifically identified "*Kachalsky v. County of Westchester*, 701 F. 3d 81, 100 (2d Cir 2012) (deferring to the legislature's conclusion that "public safety . . . outweighs the need to have a handgun for an unexpected confrontation") and *New York State Rifle & Pistol Assn., Inc. v. New York*, 883 F.3d 45, 64 (2d Cir 2018) (stating that a "review of state and local gun control" involves a "balancing of the individual's constitutional right to keep and bear arms against the states' obligation to 'prevent armed mayhem'" (quoting *Kachalsky*, supra, at 96)), vacated and remanded, ante, p. ___; *Gould v. Morgan*, 907 F. 3d 659, 676 (1ˢᵗ Cir 2018) (stating that "courts must defer to a legislature's choices among reasonable alternatives" when the legislature has "take[n] account of the heightened needs of some individuals to carry firearms for self-defense and balance[d] those needs against the demands of public safety"); *Drake v. Filko*,

724 F. 3d 426, 440 (3d Cir 2013) ("refus[ing] . . . to intrude upon the sound judgment and

discretion of the State of New Jersey" that only "those citizens who can demonstrate a

'justifiable need' to do so" may carry handguns outside the home)." *Rogers v. Grewal*, 140 S. Ct.

at FN 1.

"Instead of following the guidance provided in *Heller*[6], these courts minimized that

decision's framework. They then 'filled' the self-created 'analytical vacuum' with a "two-step

inquiry" that incorporates tiers of scrutiny on a sliding scale." *Rogers v. Grewal*, 140 S. Ct. at

1867 citing, *Gould v. Morgan*, 907 F. 3d 659, 667 (CA1 2018) (concluding that our decisions

"did not provide much clarity as to how Second Amendment claims should be analyzed in future

cases"), *National Rifle Assn. of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and

Explosives*, 700 F. 3d 185, 194 (CA5 2012); *Powell v. Tompkins*, 783 F. 3d 332, 347, n. 9 (CA1

2015) (compiling Circuit opinions adopting some form of the sliding-scale framework).

"Under this test, courts first ask whether the challenged law burdens conduct protected by

the Second Amendment. If so, courts proceed to the second step—determining the appropriate

level of scrutiny. To do so, courts generally consider "how close the law comes to the core of the

Second Amendment right" and "the severity of the law's burden on the right. Depending on their

analysis of those two factors, courts then apply what purports to be either intermediate or strict

scrutiny—at least recognizing that *Heller* barred the application of rational basis review." *Rogers*

---

[6] "Although our decision in *Heller* did not provide a precise standard for evaluating all Second Amendment claims, it did provide a general framework to guide lower courts. In Heller, we recognized that the Second Amendment codified a pre-existing right. This right was enshrined with the scope it was understood to have when the people adopted it. To determine that scope, we analyzed the original meaning of the Second Amendment's text as well as the historical understanding of the right. We noted that limitations on the right may be supported by "historical tradition," but we declined to "undertake an exhaustive historical analysis of the full scope of the Second Amendment. Instead, we indicated that courts could conduct historical analyses for restrictions in the future as challenges arose. *Rogers v. Grewal*, 140 S. Ct. at 1866 (internal citations and quotes omitted).

*v. Grewal*, 140 S. Ct. at 1867, citing, *United States v. Chovan*, 735 F. 3d 1127, 1136-1138 (CA9 2013); *Gould*, supra, at 670-671.

"[T]here is nothing in our Second Amendment precedents that supports the application of what has been described as "a tripartite binary test with a sliding scale and a reasonable fit." *Rogers v. Grewal*, 140 S. Ct. at 1867 citing, *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1117 (SD Cal. 2017), aff 'd, 742 Fed. Appx. 218 (CA9 2018).

    B.  <u>"Interest balancing" yields results that are "entirely inconsistent with *Heller*"</u>

"Even accepting this test on its terms, its application has yielded analyses that are entirely inconsistent with *Heller*. There, we cautioned that "[a] constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all," stating that our constitutional rights must be protected "whether or not future legislatures or (yes) even future judges think that scope too broad." *Rogers v. Grewal*, 140 S. Ct. at 1867, citing, *Heller*, 554 U.S. at 634-635.

"[We] explicitly rejected the invitation to evaluate Second Amendment challenges under an "interest-balancing inquiry, with the interests protected by the Second Amendment on one side and the governmental public-safety concerns on the other." *Id.* citing, *Heller.*, 554 U.S. at 689 (Breyer, J., dissenting). "But the application of the test adopted by the courts of appeals has devolved into just that. In fact, at least one scholar has contended that this interest-balancing approach has ultimately carried the day, as the lower courts systematically ignore the Court's actual holding in *Heller*. See Rostron, Justice Breyer's Triumph in the Third Battle Over the Second Amendment, 80 Geo. Wash. L. Rev. 703 (2012). With what other constitutional right would this Court allow such blatant defiance of its precedent?" *Rogers v. Grewal*, 140 S. Ct. at 1867.

The "public interest balancing" and "sliding scale" test asserted by Defendants undermines the Supreme Court's holding in *Heller* and is an affront to the preexisting rights protected by the Second Amendment, which "shall not be infringed."

**POINT III**
**PLAINTIFF HAS PLED A PLAUSIBLE SECOND AMENDMENT VIOLATION**

In addition to the above, which demonstrates New York City's *de facto* ban on any rights protected by the Second Amendment, federal and historical jurisprudence bears out a viable Second Amendment cause of action.

A.  The Second Amendment Restricts the Government's Conduct

The Second Amendment does not *give* any rights; it *prohibits the government* from even the minimal imposition upon the preexisting right – declaring, it "shall not be infringed". See, *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. (2016).

"The right to bear arms has always been the distinctive privilege of free men. Aside from any necessity of self-protection to the person, it represents among all nations power coupled with the exercise of a certain jurisdiction…[I]t was not necessary that the right to bear arms should be granted in the Constitution, for it had always existed." *District of Columbia v Heller*, 554 US at 619, citing, J. Ordronaux, Constitutional Legislation in the United States 241-242 (1891).

Plaintiff's right to possess and carry weapons is a preexisting right – not a privilege granted by the government. Individuals do not forfeit this preexisting right by the commission of *any* transgression.

As with all rights codified in the Bill of Rights, the right to keep and bear arms is not reserved for the 'perfect'.

B.  Plaintiff has an absolute right to possess "common weapons" in his home

The Second Amendment is fully applicable to the states by way of the Fourteenth

Amendment. *McDonald v. Chicago*, 561 U.S. 742 (2010). This "fundamental righ[t]" is

"necessary to our system of ordered liberty." *McDonald v. Chicago*, 561 U. S. 742, 778, 130 S.

Ct. 3020, 177 L. Ed. 2d 894 (2010).

 "The right of the citizens to keep and bear arms has justly been considered, as the

palladium of the liberties of a republic; since it offers a strong moral check against the usurpation

and arbitrary  power of rulers; and will generally, even if these are successful in the first

instance, enable the people to resist and triumph over them." *McDonald v City of Chicago*, 561

U.S. at 769-770 quoting, Hon. Joseph Story, Book III, Commentaries on the Constitution of the

United States § 1890, p. 746 (1833).

The possession of weapons in "common use" by an individual who is neither a felon nor

insane is a preexisting right protected by the Second Amendment, which "shall not be infringed."

*Heller*, 554 U.S. 570.

C.  Plaintiff has no *sui generis* disqualifiers to firearm possession

Plaintiff has no *per se* prohibitors to gun possession. (First Amended Complaint at ¶¶ 46-

51).

The Bill of Rights does not distinguish between "classes" of individuals who are

'entitled' enough to enjoy their protections. The various tiers of scrutiny created by the Second

Circuit have been enthusiastically rejected by Justice Thomas, as "made up" and contrary to the

framework created by and holding of *Heller*. See, *Rogers v. Grewal*, 140 S. Ct. at 1867.

The *sui generis* category of people recognized by the Supreme Court as prohibited from possessing guns are "felons" and the "insane".[7] See, *Heller*, 554 U.S. at 626-627. Indeed, the majority opinion interpreted the government's phrase "otherwise disqualified" in the context of issuing a handgun license to mean that the applicant "is not a felon and is not insane." *Heller*, 554 U.S. at 631.

Defendants assert "[w]here the challenged restriction 'merely restrict[s] access to handguns for the subset of individuals who lack the characteristics for safe possession of a handgun", they do not substantially burden a core Second Amendment right and therefore, intermediate scrutiny is applied."  [Def. MOL at p. 11], citing, *Mishtaku v City of New York*, 2015 U.S. Dist. LEXIS 193797, at *10 (S.D.N.Y. May 4, 2015), see also, Def. MOL at p. 9, citing, *Toussaint v City of New York*, 2018 U.S. Dist. LEXIS 152985, *13 (E.D.N.Y. Sept. 6, 2018).[8] See also, *Abekassis v New York City*, 2020 U.S. Dist. LEXIS 141353 (S.D.N.Y. August 7, 2020).

As discussed *supra*, the Second Amendment is not subject to an "interest balancing" analysis nor does it provide a hierarchy of core and peripheral rights, or classes of individuals entitled to its protections.

---

[7] It should also be noted that people who have been convicted of a felony or involuntarily committed to a psychiatric facility can have their firearm rights restored by the issuance of a Certificate of Relief from Civil Disabilities. See, NY Corrections Law § 701; Mental Hygiene Law § 7.09 (j). Whereas, short of time travel, there is no mechanism for being "un-arrested", "uncharged", or unaccused" in New York State. Even the termination of a criminal charge "in favor of the accused" under N.Y. Criminal Procedure Law § 160.50, which is supposed restore the accused to the same position he enjoyed prior to the charge/arrest, as if the charge was dismissed and sealed, as if the accused had been found not guilty after a trial, may still be accessed and considered by "any state or local officer or agency with responsibility for the issuance of licenses to possess guns, when the accused has made application for such a license…" CPL § 160.50 (1)(d)(iii).

[8] Imagine restricting the [unenumerated] 'right' [found nowhere in the U.S. Constitution] to an abortion to only "those women who the government deems worthy", or limiting First Amendment protections to those who have not previously spoken out against the government.

14

The government's distorted view, advanced by the lower courts, that the Bill of Rights applies in varying degrees to different classes of individuals is the very reason the Second Amendment was incorporated into the Constitution – to protect the individual from government disarmament. This 'separate and unequal' approach to the Second Amendment is the epitome of arbitrariness and guarantees an outcome directly opposite of that protected by the U.S. Constitution.

Simply being arrested, accused, or charged with a crime or a violation, or having been formerly the subject of an order of protection, are not events are encompassed within the *sui generis* prohibitors contemplated by the Supreme Court in *Heller* nor do they rise to the level of an event or condition warranting the termination of a fundamental civil right.

The "moral character" and "good cause" language of the City's rifle/shotgun licensing scheme further bear out the absence of any ***right*** to keep and bear arms in New York City.

D.  An 'arrest' is an accusation, probative of nothing

As set forth in Richardson on Evidence at § 506: "A witness cannot be asked whether he had been arrested or indicted, for an arrest or indictment is a mere accusation of guilt." *People v Morrison*, 195 N.Y. 116, 117 (1909) ("An indictment is a mere accusation and raises no presumption of guilt. It is purely hearsay, for it is the conclusion or opinion of a body of men based on *ex parte* evidence. The rule applies to criminal actions as well as civil, and to all witnesses whether parties or not."); see also *Stephen v. Hanley*, No. 03-CV-6226(KAM)(LB), 2009 U.S. Dist. LEXIS 43334, 2009 WL 1471180, at *8 (E.D.N.Y. May 21, 2009) ("The court finds that these unproven charges and prior arrests are inadmissible for impeachment purposes. [Federal] Rule [of Evidence] 609—which allows the admission of convictions, . . . is inapplicable because, none of the unproven charges resulted in convictions. Similarly,

defendants' reliance on Rule 608, which allows the admission of "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness," is unavailing. None of the unproven charges or prior arrests bear on [defendant's] character for truthfulness and, thus, are also inadmissible pursuant to Rule 608) (citing *Michelson v. United States*, 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948) ("Arrest without more does not . . . impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness.").

Plaintiff does not fall into the *sui generis* events and conditions that forfeit one's preexisting right to keep and bear arms. Plaintiff has no disqualifiers to the possession or purchase of guns under either New York State or federal law. (First Amended Complaint at ¶¶ 45-51). Plaintiff has never been convicted of a crime, including crimes that rise to the level of constituting a *per se* prohibitor to gun possession – felonies and serious offenses [§ 265.00 (17)] - nor was he subject to any order of protection when he applied for the rifle/shotgun license. See, 38 RCNY §3-03 (a), (f), (g); NYC Administrative Code § 10-303 (2), (6), (9).

Defendants' continued enforcement of the offending statutes violates Plaintiff's preexisting rights, guaranteed free from government infringement by the Second Amendment.

E.  The 'time and place restrictions' are irrelevant to the case at bar

All too often certain words and phrases are "cherry-picked" from the *Heller* decision to create some adulterated twisted standard of who the government deems is 'entitled' to possess and/or carry firearms.

One oft-used phrase is, "Like most rights, the right secured by the Second Amendment is not unlimited… [and] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." " [Def. MOL at p. 9] citing, *Heller*, 554 US at 626.

The "Second Amendment protects those weapons in common use by citizens for lawful purposes like self-defense." *NY State Rifle & Pistol Assn. v Cuomo*, 804 F3d 242, 253 (2d Cir 2015) citing, *Heller*, 554 U.S. at 624).

Handguns, rifles, and shotguns are in "common use" and the possession of each type of weapon falls within the scope of the Second Amendment protections.

Second, Plaintiff is not seeking to keep or carry "any weapon". He is seeking to keep and bear rifles and shotguns, both of which are weapons "in common use" for lawful purposes.

Third, Plaintiff is also not seeking to keep a rifle and/or shotgun "in any manner or for any purpose." Plaintiff is seeking to possess rifles and shotguns for all lawful purposes, which encompasses self-protection, hunting, target shooting – whatever lawful purposes exist.

The Second Amendment does not require a government-approved reason before a non-prohibited person may enjoy its protections.

## POINT IV
## THE SECOND AMENDMENT PROTECTS ALL "COMMON WEAPONS" EQUALLY

"It is settled that the Second Amendment protects an individual right to keep and bear arms that applies against both the Federal Government and the States. *Caetano v Massachusetts*, ___US___ , ___, 136 S Ct 1027, 1028 (2016) citing, *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008); *McDonald v. Chicago*, 561 U.S. 742, 130 S. Ct. 3020 (2010). "That right vindicates the 'basic right' of 'individual self-defense.' *Caetano*, at 1028. (internal cite omitted).

The Second Amendment protects "class[es] of arms commonly used for lawful purposes." *Caetano*, 136 S Ct at 1031 citing, *Heller*, at 627 (contrasting "'dangerous and unusual weapons'" that may be banned with protected "weapons . . . 'in common use at the time'"). "*Heller* defined the "Arms" covered by the Second Amendment to include 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.' *Caetano*, 136 S Ct at 1031 (internal cite omitted) (holding that stun guns are common weapons and protected by the Second Amendment); see also, *Avitabile v Beach*, 368 F Supp 3d 404, 421 (NDNY 2019) (striking New York Penal Law § 265.01, and enjoining law enforcement from enforcing § 265.01 as applied to "electronic dart guns" and "electronic stun guns" as violative of the Second Amendment).

Longarms (rifles/shotguns) and handguns are all "common weapons" and protected by the Second Amendment. Nothing in the Second Amendment constructs a delineation for treating common weapons differently from one another, nor does the Second Amendment allow an individual's choice of "common weapon" be dictated by the government.

Every case cited by Defendants, which include *Kachalsky*, *Mishtaku v City of New York*, and *Henry v. Cty. of Nassau*, involve handgun licensing under Penal Law § 400.00. New York State does not require the licensing or registration of rifles and shotguns. Had the New York State Legislature intended to require individuals to obtain a license to possess rifles and shotguns, it would have enacted such a statute, which it did not. See, Point V below.

By applying the same subjective standards the possession of rifles/shotguns that are applied to handguns under Penal Law § 400.00 (1), Defendants prove Plaintiff's argument – that New York City's licensing scheme for rifles and shotguns is a *de facto* ban on the ***rights*** protected by the Second Amendment.

**POINT V**
**THE CITY'S RIFLE/SHOTGUN LICENSING SCHEME IS**
**PREEMPTED BY NEW YORK STATE LAW**

New York State's detailed and comprehensive firearms regulatory scheme leaves no room for local governments to act, nor does it delegate any authority to local governments in the field of firearms regulation. *Matter of Chwick v Mulvey*, 81 A.D.3d 161, 172 (2d Dep't 2010).

"Penal Law § 400.00 restricts the realms in which local laws may operate and is very comprehensive. For instance, Penal Law § 400.00 governs, among other things, the eligibility for a firearms license, the types of available firearms licenses, the application process for obtaining a firearms license, the investigation process for each firearms license application, the filing of approved applications, the validity of issued firearms licenses, the form of each firearms license, and how firearms licenses must be exhibited and displayed (see Penal Law § 400.00 (1)-(8). In sum, Penal Law § 400.00 leaves no room for local ordinances to operate. Instead, the State statutes give localities detailed instructions concerning the procedures to be employed in licensing firearms." *Matter of Chwick v Mulvey*, 81 A.D.3d at 172 citing, *Dougal v County of Suffolk*, 102 A.D.2d 531, 533 (2d Dep't 1984).

With the passage of the SAFE Act in 2013, three years after the Appellate Division's decision in *Chwick*, the Legislature reaffirmed its intention to preempt the field of regulating handguns, rifles, and shotguns (collectively "firearms") with the vast expansion of regulations designed to ensure continuity across the state.

Through the New York SAFE Act, the State's Legislature implemented far-reaching and overarching regulation of all firearms [handguns, rifles, and shotguns] extending through at least six (6) independent bodies of New York law: (i) New York Penal Law; (ii) Criminal Procedure

Law; (iii) Family Court Act; (iv) Mental Hygiene Law; (v) Correction Law; and (vi) CPLR. See, Bill Jacket for New York SAFE Act attached hereto as Exhibit 1.

The overarching goal of the SAFE Act was to enact regulations to create consistency throughout the state for the regulation of all firearms – handguns, rifles, and shotguns. [Ex. 1] Had the Legislature intended to require a license to lawfully possess rifles and shotguns and corresponding ammunition, such licensing requirements and accompanying criminal statutes would have been enacted. The Legislature did not so require. The SAFE Act did, however, implement laws criminalizing and banning certain *types* of rifles, defined as "assault rifles" by the presence of various features. By banning the possession of only certain *types* of rifles, and leaving shotguns, rifles with non-assault features, and ammunition untouched by the SAFE Act, the Legislature rejected any licensing requirement for longarms in the state.

The Legislature has determined that the only unlawful possession of shotguns and rifles is such possession by individuals who have *per se* statutory prohibitors to firearm possession in the first instance: (i) felony conviction; (ii) serious offense conviction, and (iii) "certified not suitable" by reasons if being "judicially adjudicated incompetent" or "confined" to a "hospital or institution for mental illness" "pursuant to judicial authority." See, Penal Law § 265.01 (4); § 265.01 (6); § 265.00 (16).

Remaining prohibitors to gun possession in the first instance are enumerated in  28 U.S.C. § 922 (g), which include formal adjudication of a mental illness, being subject to an existing order of protection. See, Family Court Act § 842-a, Criminal Procedure Law § 530.

The enactment of § 400.00 (11) ensures that individuals who are reported as being suspected of being a danger to themselves or others are reported to the National Instant Criminal

Background Check System[9] ("NICS"). The NICS system is required to be used by federal firearms licensees ("FFL") i.e., gun shop owners and retailers to determine whether a person is legally prohibited from buying or owning a firearm.[10]

Defendants' position that *Chwick* is inapposite to the facts at bar is misplaced. [Def. MOL at p. 23]. *Chwick* did involve a Nassau County handgun regulation, however, their read of the holding is too narrow. The preemption analysis conducted by the Appellate Division, combined with the overarching augmentation of the State's regulation of all firearms [handguns, rifles, shotguns] across numerous provisions of state law through the New York SAFE Act solidifies the Legislature's intent to preempt the field of gun regulation throughout the State.[11]

Continuing with the rejected "interest balancing" approach, Defendants' argue that Plaintiff's preemption argument fails because New York City is more "densely populated" than other areas of New York State. [Def. MOL at p. 24]. While its overall population is greater than other cities in the State, the density of the various boroughs of New York City is comparable, if not less dense, than areas of other major cities in New York, including Yonkers, Rochester, and Syracuse.

Regardless, the rights protected by the Second Amendment belong to the *individual*. *Heller*, 554 U.S. 592 ("Putting all of the textual elements of the operative clause of the Second

---

[9] The NICS Improvement Amendments Act of 2007, which requires OMH to transmit to the federal NICS database information identifying individuals who have been involuntarily committed to a hospital in New York State. *Phelps v Bosco*, 2017 US Dist LEXIS 13684, at *28 (NDNY Feb. 1, 2017, No. 1:13-CV-1510 (GTS/CFH)); Mental Hygiene Law § 7.09 (j).

[10] Operated by the FBI, NICS was developed with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and state and local law enforcement agencies. https://www.fbi.gov/services/cjis/nics/about-nics

[11] Lest any argument be made that the SAFE Act's silence on the issue of New York's licensing of handguns and rifles/shotguns, such an argument may support "conflict preemption", but it does not save Defendants on the issue of "field preemption", which was held to have been intended by the New York State Legislature. See, *Chwick*, 81 A.D.3d at 168-173 (under the doctrine of field preemption, a local law regulating the same subject matter as a State law is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute.) (internal quotes and cites omitted).

Amendment together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation.")

One does not forfeit the natural born right to self-protection simply because s/he lives, works, or travels to, a more densely populated city. Indeed, the more heavily populated the City, the higher the crime rates are and the stronger the individual's need to exercise the preexisting right to self-protection.

Defendants also confuse 'uniformity' of application of the gun laws throughout the State with 'uniformity' in the result reached by allowing the implementation of § 400.00 by licensing officers on a local level. [Def. MOL at p. 24]. The statutory authority bestowed to the licensing officers in this state under § 400.00 is limited to that enunciated in the statute.

Nothing in § 400.00, or any other New York State law, authorizes the New York City Council to create *any* laws, rules, or regulations – including 38 RCNY 3 and NYC Administrative Code Title 10, Chapter 3.[12]

In sum, there is no provision of New York's overarching firearms [handguns, rifles, shotguns] regulatory scheme that bestows authority to any local government to enter into the field of firearms regulation [handguns, shotguns, and rifles], 38 RCNY 3 and NYC Administrative Code 10, Chapter 3 relating to the regulation of rifles and shotguns are preempted, null and void.

---

[12] Defendants' reliance on the 1968 decision of *Grimm v New York*, 56 Misc 2d 525, 525 [Sup Ct, Queens County 1968] where a local trial court held the City's licensing of rifles and shotguns to be 'constitutional' and not preempted by state law is overwhelmingly belied by the plethora of federal and state caselaw and accompanying arguments provided *supra*, including the Appellate Division's holding in *Chwick* and the *Grimm* court's bold inaccuracy, "As plaintiffs concede, it has been held that the Second Amendment is not a limitation upon the States." *Id.* at 529.

## POINT VI
## PLAINTIFF HAS STANDING TO CHALLENGE THE OFFENDING STATUTES

As discussed herein and alleged in the First Amended Complaint, Plaintiff has standing to challenge all offending statutes generally because the licensing of rifles and shotguns is a violation of the Second Amendment. Plaintiff also risks being subjected to criminal penalties because he intends to possess rifles and/or shotguns and such ammunition in the absence of a rifle/shotgun license issued by Defendants, who have refused to issue such license to Plaintiff, which will subject him to criminal penalties, including fines and incarceration. (First Amended Complaint at ¶¶ 53-56).

Moreover, Plaintiff has standing to challenge the offending statutes because his application for a rifle/shotgun license was denied because he has been arrested in the past, was previously the subject of an order of protection, and was not of "good moral character (First Amended Complaint at ¶¶  38-41.

## CONCLUSION

Based on the foregoing, Plaintiff has stated a viable cause of action for a violation of his Second Amendment rights, warranting a judgment and order declaring 38 RCNY 3 and NYC Administrative Code 10, Chapter 3 relating to the regulation of rifles and shotguns (i) be stricken as unconstitutional; (ii) is preempted by State Law; (iii) and permanently enjoining the New York City Police Department from enforcing criminal laws and regulations against Petitioner and other individuals who are not convicted felons, adjudicated as insane, and/or have any other *per se* prohibitor to gun possession who are in possession of a rifle and/or shotgun within the five (5) boroughs of New York City.

WHEREFORE, it is respectfully requested that Defendants' motion pursuant to Federal

Rule of Civil Procedure 12 (b)(6) be denied in its entirety, except where expressly consented to.

Dated: August 24, 2020
      Scarsdale, New York

                     THE BELLANTONI LAW FIRM, PLLC
                     *Attorneys for Plaintiff, Alan Taveras*

By:      _____/s_____
              Amy L. Bellantoni (AB3061)
              2 Overhill Road, Suite 400
              Scarsdale, New York 10583
              (914) 367-0090 (t)
              (888) 763-9761 (f)
              abell@bellantoni-law.com

24