20 CV 01200 (KPF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALAN TAVERAS,

                              Plaintiff,

-against-

NEW YORK CITY, New York, DERMOT SHEA, in his official capacity as Police Commissioner, and all successors therein, JONATHAN DAVID, in his official capacity as Director, NYPD License Division, and ASIF IQBAL, in his official capacity as Executive Director, License Division Rifle/Shotgun Section,

                              Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMIIS THE AMENDED COMPLAINT**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
   *Attorney for Defendants*
   *100 Church Street*
   *New York, N.Y. 10007*

   *Of Counsel:  Kerri A. Devine*
   *Tel: (212) 356-2214*
   *Cell: (646) 629-3118*
   *Matter No.: 2020-015617*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

POINT I

    THE CHALLENGED PROVISIONS DO NOT TOTALLY BAN THE POSSESSION OF RIFLES AND SHOT GUNS. ..................................... 1

POINT II

    THE CHALLENGED PROVISIONS ARE CONSTITUTIONAL PURSUANT TO THE APPLICABLE TWO-PART TEST ........................................................................................ 4

POINT III

    THE CHALLENGED PROVISIONS ARE NOT PREEMPTED BY STATE LAW ....................................................................................... 8

POINT IV

    PLAINTFF LACKS STANDING TO CHALLENGE ADMIN. CODE §§ 10-303(A)(6), (7) AND (G) AND PENAL LAW §§ 265.01(1), 265.01(B), 265.02(5)(I), 265.03(2), 265.04(2) AND/OR 265.15(6) ............................................................... 10

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                                **Pages**

Abekassis v. City of New York,
    2020 U.S. Dist. LEXIS 141353 (S.D.N.Y. August 7, 2020) ...................................................... 2

Berman v. City,
    25 N.Y.3d 684 (2015) ............................................................................................................ 9

Binderup v. AG of US,
    836 F.3d 336 (3d Cir. 2016) .................................................................................................. 6

Ezell v. City of Chi.,
    651 F.3d 684 (7th Cir. 2011) ................................................................................................ 4

Heller v. Dist. of Columbia,
    670 F.3d 1244, 399 U.S. App. D.C. 314 (D.C. Cir. 2011) .............................................. 1, 4, 5

Jackson v. City & County of San Francisco,
    746 F.3d 953 (9th Cir. 2014) ................................................................................................ 4

Libertarian Party v. Cuomo,
    2020 U.S. App. LEXIS 25323 (2d Cir. August 11, 2020) ............................................... 1, 2, 5

Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco,
    Firearms, & Explosives,
    700 F.3d 185 (5th Cir. 2012) ................................................................................................ 4

New York State Ass'n for Affordable Hous. v. Council of the City of N.Y.,
    141 A.D. 3d 208(1st Dep't 2016) ......................................................................................... 9

New York State Club Assn. v. City of New York,
    69 NY2d 211 (1987) ............................................................................................................ 9

N.Y. State Rifle & Pistol Ass'n v. Cuomo,
    804 F.3d 242 (2d Cir. 2015) ......................................................................................... 1, 5, 6

Patrolmen's Benevolent Assn. of the City of N.Y., Inc. v. City of New York,
    142 A.D.3d 53 (1st Dep't 2016) ........................................................................................... 9

Peruta v. Cnty. of San Diego,
    742 F.3d 1144 (9th Cir. (2014) ............................................................................................. 4

Rogers v. Grewal,
    140 S. Ct. 1865 (2020) ......................................................................................................... 5

**Cases**                                                                                                                          **Pages**

Torcivia v. Suffolk County,
    409 F. Supp. 3d 19 (E.D.N.Y. 2019) ...............................................................................4

Tyler v. Hillsdale Cnty. Sheriff's Dep't,
    775 F.3d 308 (6th Cir.2014) ..............................................................................................4

U.S. v. Jimenez
    895 F.3d 228 (2d Cir. 2018)...........................................................................................1, 5

United States v. Chovan,
    735 F.3d 1127 (9th Cir. 2013) ..........................................................................................4

United States v. Greeno,
    679 F.3d 510 (6th Cir. 2012) ............................................................................................4

United States v. Marzzarella,
    614 F.3d 85 (3d Cir. 2010)................................................................................................4

United States v. Reese,
    627 F.3d 792 (10th Cir. 2010) ..........................................................................................4

Woollard v. Gallagher,
    712 F.3d 865 (4th Cir. 2013) ............................................................................................4

**Statutes**

38 RCNY § 3-03 ...................................................................................................................2, 6

38 RCNY § 5-10 ............................................................................................................2, 3, 6, 7

38 RCNY § 5-10(a)....................................................................................................................7

38 RCNY § 5-10(h) ...................................................................................................................7

38 RCNY § 5-10(l) ....................................................................................................................7

38 RCNY § 5-10(n) ...................................................................................................................7

Admin. Code § 10-301(2)..........................................................................................................6

Admin. Code § 10-301(9)..........................................................................................................6

Admin. Code § 10-303 (2) .........................................................................................................2

Admin. Code § 10-303 (9) .........................................................................................................2

| **Statutes** | **Pages** |
|---|---|

Admin. Code § 10-303(A)(6) ...............................................................................................10

Admin. Code § 10-303(A)(7) ...............................................................................................10

Admin. Code § 10-303(g) .....................................................................................................10

N.Y.S. Penal Law § 265.01(1) ..............................................................................................10

N.Y.S. Penal Law § 265.01(B) .............................................................................................10

N.Y.S. Penal Law § 265.02(5)(I) ..........................................................................................10

N.Y.S. Penal Law § 265.03(2) ..............................................................................................10

N.Y.S. Penal Law § 265.04(2) ..............................................................................................10

N.Y.S. Penal Law § 265.15(6) ..............................................................................................10

N.Y.S. Penal Law § 400.00 (1) ...............................................................................................7

N.Y.S. Penal Law § 400.00(1)(b) ...........................................................................................6

N.Y.S. Penal Law § 400.00(1)(n) ...........................................................................................6

## POINT I

### THE CHALLENGED PROVISIONS DO NOT TOTALLY BAN THE POSSESSION OF RIFLES AND SHOTGUNS.

Plaintiff incorrectly claims that because some state and district courts, in mostly pre-Heller decisions, referred to gun licenses as a privilege, rather than a right, the entire New York licensing scheme for firearms as well as the New York City licensing requirements for rifles and shotguns, violate the Second Amendment. See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the First Amended Complaint ("Opp.") (Dkt. No. 22) at pp. 3-5; Amended Complaint (Dkt. No. 13) at ¶103. Semantics aside, the Second Circuit has correctly recognized the Second Amendment for what it provides –a limited right. "[T]he Supreme Court in *Heller* did not purport to find that the Second Amendment right to bear arms was unlimited; rather, it noted that certain longstanding restrictions on the right are 'presumptively lawful,' and that its list of examples 'd[id] not purport to be exhaustive," Libertarian Party v. Cuomo, 2020 U.S. App. LEXIS 25323 at *40 (2d Cir. 2020), quoting Heller, 554 U.S. at 626-27 & n. 26. "The individual right that *Heller* found in the Second Amendment 'protects only 'the sorts of weapons' that are (1) 'in common use' and (2) 'typically possessed by law-abiding citizens for lawful purposes.'" U.S. v. Jimenez 895 F.3d 228, 233 (2d Cir. 2018), citing N.Y. State Rifle & Pistol Ass'n v. Cuomo, 804 F.3d 242, 254-55 (2d Cir. 2015) (quoting *Heller*, 554 U.S. at 627, 625). Thus, possession of a firearm is only a right granted to law-abiding, responsible citizens.

The New York City licensing scheme with respect to rifles and shotguns merely sets forth some of the restrictions of that limited right; contrary to plaintiff's assertions, it is far from a total ban. In Heller, the Court was presented with a law that "totally" banned the possession of handguns in the home. As the Court noted, "[f]ew laws in the history of our Nation have come close to the severe restriction of the District's handgun ban." Heller at 629. The challenged

provisions are clearly not among those rare total bans. Rather, the challenged provisions seek to limit rifle and shotgun possession to those who hold a right to possess them in their home, i.e., "law-abiding, responsible citizens."

As the determination as to who is law-abiding and responsible cannot be based on an applicant simply checking a box on a form, the challenged provisions provide criteria to enable the License Division to determine who is law-abiding and responsible and require applicants to show good moral character and that no good cause exists for denying them a license. See Admin. Code §§ 10-303 (2) and (9). The Second Circuit has recently held that these precise conditions with respect to firearms licensing are not an "onerous" burden on core Second Amendment rights, and consequently, do not create a total ban. Libertarian Party, 2020 U.S. App. LEXIS 25323 at *41 ("New York's at-home license regime, while affecting the core Second Amendment right, imposes nowhere near the burden that was at issue in *Heller*.")

Furthermore, 38 RCNY § 5-10 provides factors to consider when determining whether an applicant for a firearms license is of good moral character or whether there is good cause to deny the license. These factors are the same as those set forth in 38 RCNY § 3-03 which guide the License Division in determining whether an applicant for a rifle/shotgun license is of good moral character or whether there is good cause to deny the license. (Opp. at p. 6). The Southern District recently held that 38 RCNY § 5-10 does not amount to a total firearms ban. In Abekassis v. City of New York, 2020 U.S. Dist. LEXIS 141353 (S.D.N.Y. August 7, 2020), the Court held that 38 RCNY § 5-10 does "not implicate the population as a whole," but is "explicitly aimed at filtering out those citizens who, as revealed by the application of the [38 RCNY] § 5-10 factors, are not law-abiding or responsible." Id at *21-22. As the factors set forth

in 38 RCNY § 5-10 do not present a total ban, nor do those set forth in 38 RCNY § 3-03, challenged herein.

Additionally, the fact that "the ability to possess a rifle or shotgun in New York City can be 'granted or taken away' by the government" (Opp. at p. 5) is in no way determinative of whether the City's licensing scheme runs afoul of the Second Amendment. Heller and McDonald clearly contemplated gun control regulations which would necessarily involve the government making determinations as to who can possess guns. As Justice Alito stated in McDonald:

> We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id., at 626-627, 128 S. Ct. 2783, 171 L. Ed. 2d at 678. We repeat those assurances here. Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms.

561 U.S. at 786.

Moreover, consistent with the Supreme Court's contemplation of gun regulations, the fact that the licensing scheme with respect to rifles and shotguns affords the License Division some discretion, does not render it a total ban, or anything close to such. While it is true that the License Division does have some discretion when issuing rifle/shotgun licenses, that discretion is not unfettered. It is cabined by the factors set forth in the challenged provisions. As the Court recently recognized in Abekassis:

> So analyzing § 5-10, the burden it imposes on the core Second Amendment right is less than substantial. That is because § 5-10 is a licensing scheme. It is not an outright prohibition on possession of a class of weapons. And § 5-10 does not reflexively obligate the denial of a license; the presence of no one § 5-10 factor, or combination of factors, mandates the denial of a license. Instead, the scheme reposes discretion—initially in the License Division

3

>and thereafter in the reviewing Appeals Unit—in assessing holistically what the relevant factors indicate about the applicant's moral character and whether they supply good cause to deny the license.

2020 U.S. Dist. LEXIS 141353 at 25-26, citing Torcivia v. Suffolk County, 409 F. Supp. 3d 19, 38 (E.D.N.Y. 2019) ("The fact that the pistol licensing provisions are discretionary, and not mandatory, only strengthens the Court's conclusion. By permitting a licensing official to make a case-by-case, individualized determination as to an individual's fitness to hold a license, these provisions permit the government to more narrowly prescribe the circumstances under which an individual's Second Amendment rights may be burdened.").

Accordingly, the challenged provisions do not present a total ban on rifles and shotguns or extinguish the limited right to possess guns recognized in Heller.

## POINT II

### THE CHALLENGED PROVISIONS ARE CONSTITUTIONAL PURSUANT TO THE APPLICABLE TWO-PART TEST

As the challenged provisions do not totally ban the possession of rifles and shotguns in the home, they are appropriate for review under the well-established two-step analysis applicable to firearms possession. In a bit of departure from his position in the Amended Complaint, plaintiff now argues that he disagrees with the binding precedent setting forth the applicable analysis for challenges to restrictions on gun possession reiterated just last month by the Second Circuit. (Opp. at pp. 7-12.) That precedent, adopted by the majority of other circuits as well,[1] provides

---

[1] See Tyler v. Hillsdale Cnty. Sheriff's Dep't, 775 F.3d 308 (6th Cir.2014); Jackson v. City & County of San Francisco, 746 F.3d 953, 960-61 (9th Cir. 2014); Peruta v. Cnty. of San Diego, 742 F.3d 1144, 1150 (9th Cir. (2014); United States v. Chovan, 735 F.3d 1127, 1136 (9th Cir. 2013); Woollard v. Gallagher, 712 F.3d 865, 874-75 (4th Cir. 2013); Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives, 700 F.3d 185, 194-95 (5th Cir. 2012); United States v. Greeno, 679 F.3d 510, 518 (6th Cir. 2012); Heller v. Dist. of Columbia, 670 F.3d 1244, 1252, 399 U.S. App. D.C. 314 (D.C. Cir. 2011); Ezell v. City of Chi., 651 F.3d

4

that when restrictions with respect to gun possession are challenged, a two-step analysis is employed which requires the Court to first consider whether the challenged restriction burdens the Second Amendment right and if it does, to then determine the applicable level or scrutiny. See Libertarian Party, 2020 U.S. App. LEXIS 25323 citing New York State Rifle & Pistol Ass'n v. Cuomo, 804 F.3d at 254; see also Jimenez, 895 F.3d at 232-3.  While plaintiff previously argued that strict scrutiny should apply to his Second Amendment claim, he now appears to suggest jettisoning the well-established two-step approach for addressing Second Amendment claims, based on the dissent in Rogers v. Grewal, 140 S. Ct. 1865 (2020)(J. Thomas, dissenting). (Opp. at pp. 7-12).  Not only is the two-step analysis tethered to plaintiff's Second Amendment challenge through binding precedent, but, as set forth below, it comports with Heller.

In applying the two-step approach, assuming *arguendo*, that the challenged rifle/shotgun provisions impinge on conduct protected by the Second Amendment, the Court then must determine the applicable level of scrutiny. Plaintiff, again relying on the dissent in Rogers v. Grewal, incorrectly asserts that Heller "rejected the 'interest balancing' analysis urged by Defendants." Opp. at 7.  The approached urged by defendants and supported by binding precedent, however, is not the application of the "freestanding interest balancing" approach rejected by Heller, but the application of intermediate scrutiny. See Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint (Dkt. No. 21) at pp. 11-13. Indeed Heller, in specifically rejecting a "freestanding 'interest-balancing' approach," distinguished such an analysis from the "traditionally expressed levels [of scrutiny] (strict scrutiny, intermediate scrutiny, rational basis)…." Heller at 634.  Moreover, of those "traditionally expressed levels" of scrutiny, the Supreme Court only specifically rejected rational

---

684, 702-03, 704-09 (7th Cir. 2011); United States v. Reese, 627 F.3d 792, 800-01 (10th Cir. 2010); United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010).

basis, leaving the door open for the application of strict and intermediate scrutiny.  See N.Y. State Rifle & Pistol Ass'n v. Cuomo, 804 F.3d 242, 253 (2d Cir. 2015) (The [Heller] Court did imply that such challenges are subject to one of "the standards of scrutiny that we have applied to enumerated constitutional rights," quoting Heller at 628);  see also Binderup v. AG of US, 836 F.3d 336, 344 (3d Cir. 2016) ("But neither the Supreme Court nor any court of appeals has held that laws burdening Second Amendment rights evade constitutional scrutiny.")  Accordingly, the application of intermediate scrutiny comports with the decision in Heller.

The Second Circuit and Southern District have both recently held that provisions similar to the ones challenged herein, but applicable to firearms rather than rifles and shotguns, some even identical, are subject to and satisfy intermediate scrutiny. In Libertarian Party, the Court held that the requirements that applicants for firearms licenses show good moral character and that no good cause exists for denying them a license only modestly impact law-abiding, responsible citizens. Id. at 42.  Accordingly, it held that the provisions challenged therein are subject to intermediate scrutiny and that they indeed, satisfy it. Id. at 42-45.  Those identical requirements, but with respect to the licensing of rifles and shotguns, are challenged herein and are likewise amenable to intermediate scrutiny and satisfy it. See Penal Law §§ 400.00(1)(b), (n) and Admin. Code §§ 10-301(2), (9).

In Abekassis, plaintiff challenged RCNY provisions which set forth factors to be considered when determining whether an applicant for a firearms license is of good moral character or whether there is good cause for denying the applications.  Those RCNY provisions mimic the RCNY provisions that set forth the factors to be considered when determining whether an applicant for a rifle/shotgun license is of good moral character or whether there is good cause for denying the applications.  See 38 RCNY §§ 3-03, 5-10.  Plaintiff in Abekassis, however,

challenged different factors than the ones challenged herein. Specifically, plaintiff challenged 38 RCNY §§ 5-10(a), (h) and (n)[2], which provide:

> § 5-10 Grounds **for Denial of Handgun License.**
>
> In addition to other bases for disqualification pursuant to federal, state, and local law and this chapter, an application for a handgun license may be denied where it is determined that an applicant lacks good moral character or that other good cause exists for denial, pursuant to New York State Penal Law § 400.00 (1). Such a determination shall be made based upon consideration of the following factors:
>
> (a) The applicant has been arrested, indicted or convicted for a crime or violation except minor traffic violations, in any federal, state or local jurisdiction.
>
> \*\*\*
>
> (h) The applicant has a poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles
>
> \*\*\*
>
> (n) Other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the license. In evaluating incidents or circumstances pursuant to this section, the License Division shall consider all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings.

Those provisions, like the RCNY provisions challenged herein, are not limited to what plaintiff characterizes as "per se inhibitors," such as felony convictions or involuntary commitment. Opp. at p.4. With respect to those provisions, the Court held that, "consistent with other courts that have considered similar challenges--that, although the New York State licensing scheme and the New York City law applying it squarely implicate gun possession in the home, they do not

---

[2] Plaintiff in Abekassis also challenged 38 RCNY § 5-10(l) but that claim was dismissed for lack of standing. Abekassis at p.15.

7

implicate the Second Amendment's core, because they deny such possession only to persons who are found not to be "law-abiding and responsible." Accordingly, the Court held that intermediate scrutiny was applicable and that the challenged provisions satisfied it.

Plaintiff acknowledges that the New York City rifle/shotgun licensing scheme mimics the New York State licensing scheme for firearms (Opp. at p.6), but presents no basis as to why this Court should treat the provisions challenged herein any differently than the Court treated the firearms regulations challenged in <u>Libertarian Party</u> and <u>Abekassis</u>. For instance, plaintiff challenges the rifle and shotgun licensing scheme in part on the basis that they include eligibility factors beyond what plaintiff calls "per se statutory prohibitors," just as the provisions challenged in <u>Libertarian Party</u> and <u>Abekassis</u> do. Opp. at pp. 4, 6, 7, 13, 16, 20 and 23. Plaintiff does not argue, however, that such factors are appropriately considered with respect to firearms licensing, but not rifles and shotgun licensing, but instead appears to argue that consideration of such factors is unconstitutional in licensing firearms or rifles and shotguns. Opp. at 3, 6-7, 13-14. In fact, plaintiff cannot make such a distinction because the fact that <u>Libertarian Party</u> and <u>Abekassis</u> involved firearms regulations while the ones challenged herein involve rifle/shotgun regulations is a distinction without a difference as far as the Second Amendment is concerned. Accordingly, the analyses in <u>Libertarian Party</u> and <u>Abekassis</u> should be applied to the challenged provisions. Notably, neither the Supreme Court nor the Second Circuit has limited the eligibility factors for a gun license to such "per se statutory prohibitors."

## POINT III

### THE CHALLENGED PROVISIONS ARE NOT PREEMPTED BY STATE LAW

Contrary to plaintiff's assertions, the legislature did not evince an intent to preempt the field of the regulation of rifles and shotguns through the passage of New York's Secure

Ammunition and Firearms Enforcement Act (the "SAFE Act"). (Opp. at pp. 19-21). Plaintiff points to no language in the SAFE Act that explicitly reserves <u>all</u> regulatory responsibility with respect to rifle/shotgun licensing for the State.  Absent that, to establish field preemption, plaintiff must show "clear evidence that the legislature has 'evinced its desire to do so and that desire may be inferred from a declaration of State policy by the Legislature or from the legislative enactment of a comprehensive and detailed regulatory scheme in a particular area'" <u>New York State Ass'n for Affordable Hous. v. Council of the City of N.Y.</u>, 141 A.D. 3d 208, 213(1st Dep't 2016) quoting <u>New York State Club Assn. v. City of New York</u>, 69 NY2d 211, 217 (1987).  Plaintiff has failed to do so.

The SAFE Act bans very specific types of rifles characterized as "assault weapons." Plaintiff acknowledges that it does not set forth a licensing scheme for rifles and shotguns, nor address licensing at all.  <u>See</u> Opp. at p. 20 & n.11.  Plaintiff, however, lacking any express intent by the legislature to preempt the field of rifle and shotgun regulation, asks this Court to interpret the limited scope of the SAFE Act with respect to rifles/shotguns as a "comprehensive and detailed regulatory scheme" in the area of rifle regulation and licensing.  The SAFE Act's treatment of rifles and shotguns, however, is insufficient to render it a "comprehensive and detailed regulatory scheme" in the area of rifle regulation and licensing so as to preempt the New York City licensing scheme.  <u>See</u> <u>Berman v. City</u>, 25 N.Y.3d 684, 692 (2015) ("To the extent that the courts have exercised some authority over nonlegal services provided by attorneys […], the regulation in that area is not 'so detailed and comprehensive as to imply that' the field has been preempted."); <u>see</u> <u>also</u> <u>Patrolmen's Benevolent Assn. of the City of N.Y., Inc. v. City of New York</u>, 142 A.D.3d 53, 58-61 (1st Dep't 2016).

9

### POINT IV

**PLAINTFF LACKS STANDING TO CHALLENGE ADMIN. CODE §§ 10-303(a)(6), (7) AND (g) AND PENAL LAW §§ 265.01(1), 265.01(b), 265.02(5)(I), 265.03(2), 265.04(2) AND/OR 265.15(6)**

Plaintiff fails to explain how he has standing to challenge Admin. Code §§ 10-303(A)(6), (7) and (g), as raised by defendants in their moving papers. As they did not factor into the denial of his application for a rifle/shotgun license, plaintiff lacks standing to challenge them. Abekassis at pp. 12-15. Furthermore, plaintiff failed to plead that he intends to violate Penal Law §§ 265.01(1), 265.01(B), 265.02(5)(i), 265.03(2), 265.04(2) and/or 265.15(6). Accordingly, plaintiffs lacks standing to challenge these provisions.

### CONCLUSION

For the reasons set forth above as well as in the defendants' moving papers, the defendants' Motion to Dismiss should be granted and the action dismissed in its entirety.

Dated:     New York, New York
           September 9, 2020

        James E. Johnson
        Corporation Counsel
          of the City of New York
        *Attorney for Defendants*
        100 Church Street
        New York, New York 10007
        (212) 356-2214 office
        (646) 629-3118 cell
        kdevine@law.nyc.gov

        By: _____*Kerri A. Devine*__/s/_____
            Kerri A. Devine
            Assistant Corporation Counsel