UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ALAN TAVERAS,

                              Plaintiff,                    Case No.: 20 Civ. 01200 (KPF)

              -against-

NEW YORK CITY, New York,                          **NOTICE OF APPEAL**
JAMES O'NEILL, in his official capacity as
Police Commissioner, and all successors therein,
JONATHAN DAVID, in his official capacity
as Director, NYPD License Division, and
MICHAEL BARRETO, in his official capacity
as Commanding Officer of the License Division,

                              Defendants.
---------------------------------------------------------x

        PLEASE TAKE NOTICE that the plaintiff, ALAN TAVERAS, hereby appeals to the

United States Court of Appeals for the Second Circuit from the annexed Opinion and Order

dated January 19, 2021 and entered by the Clerk of the Court and each and every part thereof

that granted the defendants' motion to dismiss the complaint, and each and every part thereof

that was contrary to and/or prejudiced the plaintiff's rights, claims, and interests.

Dated: February 17, 2021
        Scarsdale, New York

                              THE BELLANTONI LAW FIRM, PLLC
                              *Attorneys for Plaintiff*
                              _____/s/_____
                              Amy L. Bellantoni (AB3061)
                              2 Overhill Road, Suite 400
                              Scarsdale, New York 10583
                              (914) 367-0090 (t)
                              (888) 763-9761 (f)
                              abell@bellantoni-law.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALAN TAVERAS, <br><br>               Plaintiff, <br><br>           -v.- <br><br> NEW YORK CITY, NEW YORK, JONATHAN DAVID, *in his official capacity as Director, NYPD License Division*, ASIF IQBAL, *in his official capacity as Executive Director, License Division Rifle/Shotgun Section*, and DERMOT SHEA, *in his official capacity as Police Commissioner, and all successors therein,* <br><br>               Defendants. | 20 Civ. 1200 (KPF) <br><br> **OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Alan Taveras brings this action seeking declaratory and injunctive relief against the City of New York (the "City"), New York City Police Department (the "NYPD") Commissioner Dermot Shea, NYPD License Division (the "License Division") Director Jonathan David, and NYPD License Division Rifle/Shotgun Section Executive Director Asif Iqbal (collectively, "Defendants"). Plaintiff applied for a license to possess a rifle and/or shotgun in his home in the Bronx. Defendants denied his application, based on his arrest history, summons history, domestic violence history, and order of protection history. Plaintiff seeks a declaration that portions of the Rules of the City of New York (the "RCNY") and the City's Administrative Code (the "Admin. Code") — specifically, 38 RCNY § 3-03(f) & (g) and Admin. Code § 10-303(a)(2), (6), (7), (9), & (g) — violate the Second Amendment, facially and as applied, and are preempted by New York State Penal Law ("Penal Law") § 400.00; and, further,

that the criminal penalties set forth in Penal Law §§ 265.01(1), 265.01-b, 265.02(5)(i), 265.03(2), 265.04(2), and 265.15(6) are unconstitutional as applied to him and to others similarly situated.  He further seeks injunctive relief barring Defendants from enforcing the challenged provisions.

Before the Court is Defendants' Motion to Dismiss the First Amended Complaint (the "FAC").  (Dkt. #20).  For the reasons set forth below, the Court grants the motion in full.

## BACKGROUND[1]

### A. New York State and New York City Firearm and Longarm Licensing Schemes

The State of New York requires a license to possess a firearm.  *See* Penal Law §§ 265.01-.04, 265.20 & 400.00.  For purposes of these provisions, "firearm" is defined as:

> (a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e) an assault weapon.

*Id.* § 265.00(3).  Penal Law § 400.00(1) addresses eligibility for firearms licenses and provides that such licenses shall not be issued if an applicant lacks good

---

[1]    The facts in this Opinion are drawn from Plaintiff's First Amended Complaint (the "FAC" (Dkt. #13)), which is the operative pleading in this case.  For ease of reference, the Court refers to Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint as "Def. Br." (Dkt. #21); and Plaintiff's Memorandum of Law in Opposition as "Pl. Opp." (Dkt. #22).

moral character or concerning whom good cause exists for the denial of such a

license.  Specifically, it states, in pertinent part, as follows:

> No license shall be issued or renewed pursuant to this
> section except by the licensing officer, and then only
> after investigation and finding that all statements in a
> proper application for a license are true.  No license
> shall be issued or renewed except for an applicant …
> (b) of good moral character; … and (n) concerning whom
> no good cause exists for the denial of the license.

Penal Law § 400.00(1).  By contrast, Penal Law §§ 265.01(1), 265.01-b,

265.02(5)(i), 265.03(2), 265.04(2), and 265.15(6) criminalize unlicensed

possession of firearms under various circumstances.

Standard rifles and shotguns, also known as longarms, are not defined

as firearms, *see* Penal Law § 265.00(3), (11), & (12), and are not specifically

licensed by New York State, *see id.* § 400.00.  New York City, however, has its

own local laws governing the licensing and possession of rifles and shotguns.

*See* Admin. Code § 10-303; 38 RCNY §§ 3-01 to 3-14.

## B.    Factual Background

Plaintiff is a resident of Bronx County, New York.  (*See* FAC ¶ 19).  In

early 2018, Plaintiff submitted an application to the NYPD License Division's

Rifle/Shotgun Section for a permit to possess a rifle and/or shotgun in his

residence.  (*Id.* at ¶ 23).  On or about April 11, 2018, as part of the application

process, Plaintiff provided to Investigator Young of the Rifle/Shotgun Section a

notarized statement addressing an incident on November 11, 2011, involving a

police complaint in which Plaintiff was accused of threatening his ex-girlfriend,

Denise Torres.  (*Id.* at ¶¶ 24-26).  Plaintiff stated that he was never arrested or

charged with any offense related to the November 2011 complaint by Ms. Torres, and that he has had no issues with law enforcement besides minor traffic violations since then. (*Id.* at ¶¶ 27-28).

On April 18, 2018, Defendant Asif Iqbal, Executive Director of the License Division's Rifle/Shotgun Section, disapproved Plaintiff's application for a permit by written Notice of Disapproval. (FAC ¶ 30). The Notice of Disapproval cited as grounds for disapproval Plaintiff's "arrest history, summons history and violent domestic violence history and Order of Protection history." (*Id.* at ¶ 31). The Notice of Disapproval further stated that Plaintiff had "shown poor moral judgment and an unwillingness to abide by the law," and that the above circumstances "reflect[ed] negatively upon [his] moral character and cast grave doubt upon [his] fitness to possess a firearm." (*Id.* at ¶ 32).

Plaintiff timely filed an internal appeal of the Notice of Disapproval with the NYPD Appeals Unit. (FAC ¶ 34). On or about November 28, 2018, Defendant Jonathan David, Director of the NYPD License Division, denied Plaintiff's appeal and affirmed the disapproval of his rifle/shotgun permit application. (*Id.* at ¶ 36). The denial of the appeal stated, in part:

> As delineated in 38 RCNY §§3-03 (f) and (g), an applicant can be denied a Rifle/Shotgun permit if he/she was a subject of an order of protection and there is a history of one or more incidents of domestic violence. Here, Mr. Taveras was named as a perpetrator in two separate domestic incidents, one of which led to an arrest. On May 22, 2011, his ex-girlfriend stated she had a verbal dispute with Mr. Taveras which led to physical violence. She said that he punched her in the left eye causing swelling and bruising. The victim was treated at the

4

hospital for her injuries. As a result of this domestic dispute, a complaint report was generated. Mr. Taveras was arrested on August 11, 2011 for Assault 3rd Degree — With Intent to Cause Physical Injury and Harassment as a result of this incident. A full order of protection was issued against Mr. Taveras which stated that he was to stay away from the victim and her home, school, business and place of employment and not be within 100 yards of the victim. Mr. Taveras was to refrain from any communication with the victim, including mail, telephone or email. Finally, he was ordered to surrender all firearms. The order of protection expired in February 2012. Ultimately, the charges against Mr. Taveras were dropped against him.

\*\*\*

Just three months after the order of protection was issued, Mr. Taveras was again named as a perpetrator in a domestic incident. On November 12, 2011, the same ex-girlfriend stated that Mr. Taveras threatened her on the phone stating he was going to "pull her out of a nightclub by her hair if she did not leave." Further, he stated that if she called the police, he would hurt her and her family. He was in direct violation of the active Order of Protection. A complaint report was also generated in regards to this incident.

\*\*\*

Although time has elapsed and the arrest charges were dismissed, the serious nature of these incidents raise safety concerns for yourself and others. Therefore, these domestic incidents and order of protection are grounds for denial of Mr. Taveras' application for a rifle/shotgun permit.

(*Id.* at ¶¶ 39-41). Plaintiff has not been convicted of a crime of domestic violence and was not subject to an order of protection at the time of his rifle/shotgun application. (*Id.* at ¶¶ 45, 47).

## C.    Procedural History

Plaintiff filed the original Complaint in this matter on February 11, 2020 (Dkt. #1), and the FAC on April 6, 2020 (Dkt. #13).  On May 4, 2020, Defendants filed a letter with the Court notifying it and Plaintiff of Defendants' intention to move for dismissal of the FAC.  (Dkt. #14).  After receiving Plaintiff's response (Dkt. #15), the Court set a briefing schedule for the motion. The briefing schedule was subsequently extended at Defendants' request.  (Dkt. #18-19).  Defendants filed their Motion to Dismiss the Amended Complaint (Dkt. #20) and Memorandum of Law in Support (Dkt. #21) on July 22, 2020; Plaintiff filed his Memorandum of Law in Opposition on August 24, 2020 (Dkt. #22); and Defendants filed their Reply Memorandum of Law on September 9, 2020 (Dkt. #23).

## DISCUSSION

## A.    Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept as true all well-pleaded factual allegations in the complaint.  *See Iqbal*, 556 U.S. at 678.

6

**B.     Analysis**

In his FAC, Plaintiff raises six claims: (i) 38 RCNY § 3-03(f) & (g), both facially and as applied, violate his Second Amendment rights (FAC ¶¶ 160-63); (ii) Admin. Code § 10-303(a)(2), (6), (7), (9), & (g), both facially and as applied, violate his Second Amendment rights (*id.* at ¶¶ 164-67); (iii) 38 RCNY § 3-03(f) & (g), both facially and as applied, violate his right under the Fourteenth Amendment to procedural due process (*id.* at ¶¶ 168-71); (iv) Admin. Code § 10-303(a)(2), (6), (7), (9), & (g), both facially and as applied, violate his right under the Fourteenth Amendment to procedural due process (*id.* at ¶¶ 172-75); (v) Defendants' enforcement of Penal Law §§ 265.01(1), 265.01-b, 265.02(5)(i), 265.03(2), 265.04(2), and 265.15(6) violates his and similarly situated persons' Second Amendment rights (*id.* at ¶¶ 176-79); and (vi) 38 RCNY § 3-03(f) & (g), and Admin. Code § 10-303(a)(2), (6), (7), (9), & (g), are preempted by Penal Law § 400.00 (*id.* at ¶¶ 180-82).  In his brief in opposition to the Motion to Dismiss, Plaintiff states that he "voluntarily withdraws his claim for a violation of due process under the Fourteenth Amendment to the United States Constitution." (Pl. Opp. 2 n.1).  Accordingly, the Court grants Defendants' motion as to Counts III and IV of the FAC without further analysis.

For the reasons set forth below, the Court also grants Defendants' motion as to Plaintiff's remaining claims regarding Second Amendment violations and preemption.

7

### 1.    Plaintiff Fails to State Viable Second Amendment Claims

#### a.    Plaintiff Lacks Standing to Challenge Admin. Code § 10-303(a)(6), (7), & (g), and Penal Law §§ 265.01(1), 265.01-b, 265.02(5)(i), 265.03(2), 265.04(2), & 265.15(6)

Defendants first argue that "Plaintiff's claims with respect to Admin. Code §§ 10-303(a)(6), (7), and § 10-303(g) and Penal Law §§ 265.01(1), 265.01(b), 265.02(5)(i), 265.03(2), 265.04(2), and/or 265.15(6) must be dismissed for lack of standing."  (Def. Br. 6.)  Plaintiff responds that he "has standing to challenge all offending statutes generally because the licensing of rifles and shotguns is a violation of the Second Amendment," and further claims that (i) the challenged provisions of the Admin. Code were relevant to the denial of his rifle/shotgun license and (ii) he risks criminal prosecution under the challenged provisions of the Penal Law.  (Pl. Opp. 23.)

To establish Article III standing, a plaintiff must have "[i] suffered an injury in fact, [ii] that is fairly traceable to the challenged conduct of the defendant, and [iii] that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc.* v. *Robins*, 136 S. Ct. 1540, 1547 (2016).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.  A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and

interests of third parties." *Warth* v. *Seldin*, 422 U.S. 490, 499 (1975) (citations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547. The plaintiff must "clearly ... allege facts demonstrating" each element. *Warth*, 422 U.S. at 518.

### i. Admin. Code § 10-303(a)(6), (7), & (g)

Plaintiff alleges that his "application for a Rifle/Shotgun Permit was denied because of Defendants' enforcement and implementation of 38 RCNY 3-03(f), 38 RCNY 3-03(g), and NYC 10-303(a)(2), NYC 10-303(6), NYC 10-303(7), NYC 10-303(9), and NYC 10-303(g)." (FAC ¶ 52). Per Plaintiff's allegations, the Notice of Disapproval issued by Defendant Iqbal cites Plaintiff's "arrest history, summons history and violent domestic violence history and Order of Protection history," without reference to specific statutory provisions. Plaintiff further pleads that Defendant David affirmed the disapproval of Plaintiff's application based on the factors set forth in Admin. Code § 10-303(a)(2) & (9) and 38 RCNY § 3-03(f) & (g). (*Id.* at ¶¶ 37, 39). Plaintiff quotes Defendant David's disapproval notice as explaining,

> Pursuant to §§ 10-303(a)(2) and (9) of the New York City Administrative Code, an application for a Rifle/Shotgun Permit may be denied when an applicant is not of good moral character, and/or when good cause exists for the denial of the permit. Title 38 of the Rules of The City of New York (RCNY), § 3-03, provides a list of what shall be considered in assessing moral character and whether good cause exists for a denial.

(*Id.* at ¶ 38). Plaintiff does not cite any comments from either Defendant Iqbal, who initially denied the license, or Defendant David, who considered Plaintiff's

appeal of the denial, that indicate that Admin. Code § 10-303(a)(6), (7), & (g) were relevant to their decision-making.  (*See id.* at ¶¶ 30-41).

Thus, the well-pleaded facts contradict Plaintiff's conclusory statement that his "application for a Rifle/Shotgun Permit was denied because of the defendants' enforcement and implementation of," *inter alia*, Admin. Code § 10-303(a)(6), (7), & (g).  (FAC ¶ 52).  This is especially true for subsection (g), which concerns the circumstances under which a rifle/shotgun license may be revoked and is therefore wholly irrelevant to a challenge to the denial of a license in the first instance rather than to a revocation of a license previously granted.  *See* Admin. Code § 10-303(g).  The facts support only the conclusion that Admin. Code § 10-303(a)(2) & (9) and 38 RCNY § 3-03(f) & (g) played a role in the denial of Plaintiff's rifle/shotgun license application.  Plaintiff therefore cannot establish that he suffered an injury in fact as a result of Defendants' application of Admin. Code § 10-303(a)(6), (7), & (g).  *See Lujan*, 504 U.S. at 560.  Plaintiff having failed to plead the requisite elements for Article III standing, his constitutional challenge to these provisions is dismissed.

### ii.  Penal Law §§ 265.01(1), 265.01-b, 265.02(5)(i), 265.03(2), 265.04(2), and 265.15(6)

Plaintiff also challenges the constitutionality of Penal Law §§ 265.01(1), 265.01-b, 265.02(5)(i), 265.03(2), 265.04(2), and 265.15(6), as applied to him and to "other law-abiding individuals with no enumerated prohibitors to firearm possession who possess rifles and shotguns in their home for self-defense but have been denied a Rifle/Shotgun permit by the NYPD License Division" based on the challenged RCNY and Admin. Code provisions.  (FAC

¶¶ 176-79).  Defendants argue that Plaintiff lacks standing to challenge these provisions because he does not allege that he intends to engage in conduct criminalized by the provisions and thus faces a credible threat of prosecution. (Def. Br. 7-8).  The Court agrees with Defendants that Plaintiff has not alleged facts that support his standing for this claim.  Consequently, the claim must be dismissed.

Penal Law § 265.01 sets forth the crime of criminal possession of a weapon in the fourth degree, a class A misdemeanor.  As relevant here, subsection (1) prohibits unlicensed possession of a firearm or other listed dangerous weapon.  Penal Law § 265.01(1).  Section 265.01-b makes criminal possession of a firearm a class E felony.  *Id.* § 265.01-b.  Section 265.02(5) provides that "a person is guilty of criminal possession of a weapon in the third degree," a class D felony, when "(i) [s]uch person possesses three or more firearms; or (ii) such person possesses a firearm and has been previously convicted of a felony or a class A misdemeanor defined in this chapter within the five years immediately preceding the commission of the offense and such possession did not take place in the person's home or place of business."  *Id.* § 265.02(5).  Under section 265.03(2), a person is guilty of criminal possession of a weapon in the second degree, a class C felony, when he possesses five or more firearms.  *Id.* § 265.03(2).  Under section 265.04(2), possession of ten or more firearms is criminal possession of a weapon in the first degree, a class B felony.  *Id.* § 265.04(2).  Additionally, section 265.15(6) states that "[t]he possession of five or more firearms by any person is presumptive evidence that

such person possessed the firearms with the intent to sell same." *Id.* § 265.15(6).

By their plain terms, these provisions address only possession of *firearms*, with various exacerbating factors. To reiterate, standard rifles and shotguns are not classified as "firearms" under New York State law. *See* Penal Law § 265.00(3). Plaintiff does not allege that he applied for a firearm license and was denied. *See United States* v. *Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) ("[B]ecause Decastro failed to apply for a gun license in New York, he lacks standing to challenge the licensing laws of the state."). Nor does he allege that he intends to possess without a license any instrument categorized under § 265.00(3) as a firearm, let alone three, five, ten, or more. Plaintiff alleges only that he desires to possess a standard rifle and/or shotgun in his home, and that he was denied the ability to do so legally by Defendants' actions. (*See generally* FAC; *see also* Pl. Opp. 23 ("Plaintiff also risks being subjected to criminal penalties because he intends to possess rifles and/or shotguns and such ammunition in the absence of a rifle/shotgun license issued by Defendants[.]")). The state criminal laws concerning firearm possession do not apply to this conduct, and thus there is no basis for concluding that Plaintiff faces an imminent risk of prosecution under any of the challenged provisions. Plaintiff therefore cannot establish that the Penal Law provisions invade a legally protected interest in a manner that affects him personally. *See Lujan*, 504 U.S. at 560. Because Plaintiff fails to satisfy the elements for Article III

standing, his constitutional challenge to Penal Law §§ 265.01(1), 265.01-b, 265.02(5)(i), 265.03(2), 265.04(2), and 265.15(6) is dismissed.

### b. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted with Respect to Admin. Code § 10-303(a)(2) & (9), and 38 RCNY § 3-03(f) & (g)

Plaintiff asserts that Admin. Code § 10-303(a)(2) & (9), and 38 RCNY § 3-03(f) & (g), "individually and collectively substantially burden a core pre-existing right protected by the Second Amendment, to wit, the right to possess rifles and shotguns in the home for self-defense." (FAC ¶¶ 161, 165). He asks the Court to declare the provisions unconstitutional, both facially and as applied to him, and to enjoin Defendants' implementation and enforcement of the provisions. (*Id.* at ¶¶ 162-63, 166-67). Defendants seek dismissal of Plaintiff's claims as to these provisions for failure to state a claim upon which relief may be granted. (*See* Def. Br. 9-18). For the reasons set forth below, the Court concludes that Plaintiff fails to state a viable Second Amendment challenge to Admin. Code § 10-303(a)(2) & (9), and 38 RCNY § 3-03(f) & (g).

### i. The Challenged Provisions

The rifle/shotgun licensing provisions Plaintiff challenges on Second Amendment grounds are local laws in the City of New York; they are not New York State laws, although they are similar in manner. Admin. Code § 10-303 sets out the circumstances under which an application for a rifle/shotgun

13

license may be denied by the individual Defendants in their official capacities.

It provides, in pertinent part:

    a.    Requirements. No person shall be denied a permit to purchase and possess a rifle or shotgun unless the applicant:

\*\*\*

    (2) is not of good moral character; or

\*\*\*

    (9) unless good cause exists for the denial of the permit.

Admin. Code § 10-303(a).

Title 38 RCNY § 3-03 states:

> In addition to other bases for disqualification pursuant to federal, state, and local law and this chapter, an application for a rifle/shotgun permit may be denied where it is determined that an applicant lacks good moral character or that other good cause exists for denial, pursuant to section 10-303 of the Administrative Code of the City of New York.

The factors to be considered in determining whether an applicant "lacks good moral character or that other good cause exists for denial" include whether the applicant is the subject of an order of protection or a temporary order of protection or has a history of one or more incidents of domestic violence.  38 RCNY § 3-03(f) & (g).

### ii.    Plaintiff Identifies a Right Protected by the Second Amendment

The Second Amendment, which applies to the States through the Fourteenth Amendment, *see McDonald* v. *City of Chicago*, 561 U.S. 742, 791 (2010), provides:  "A well regulated Militia, being necessary to the security of a

14

free State, the right of the people to keep and bear Arms, shall not be infringed," U.S. Const. amend. II. In *District of Columbia* v. *Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment codified a pre-existing "individual right to possess and carry weapons in case of confrontation." *Id.* at 592. The Supreme Court did not, however, "purport to find that the Second Amendment right to bear arms was unlimited; rather, it noted that certain longstanding restrictions on the right are 'presumptively lawful,' and that its list of examples 'd[id] not purport to be exhaustive.'" *Libertarian Party of Erie Cty.* v. *Cuomo*, 970 F.3d 106, 127 (2d Cir. 2020) (quoting *Heller*, 554 U.S. at 626-27 & n.26)).

Neither *Heller* nor *McDonald* "delineated the precise scope of the Second Amendment or the standards by which lower courts should assess the constitutionality of firearms restrictions." *N.Y. State Rifle & Pistol Ass'n, Inc.* v. *Cuomo*, 804 F.3d 242, 254 (2d Cir. 2015) ("*NYSRPA* v. *Cuomo*"). To fill this gap, the Second Circuit "has adopted a two-step analysis in which [courts] first consider whether the challenged law burdens the right and, if it does, [courts] then determine the appropriate level of scrutiny." *Libertarian Party*, 970 F.3d at 127 (citing *NYSRPA* v. *Cuomo*, 804 F.3d at 254; *Kachalsky* v. *County of Westchester*, 701 F.3d 81, 93 (2d Cir. 2012); *Decastro*, 682 F.3d at 165-68). The core Second Amendment right, as the Second Circuit has interpreted it, "protects only 'the sorts of weapons' that are [i] 'in common use' and [ii] 'typically possessed by law-abiding citizens for lawful purposes.'" *NYSRPA* v. *Cuomo*, 804 F.3d at 254-55 (quoting *Heller*, 554 U.S. at 625, 627).

15

Consistent with the Supreme Court's statement in *Heller* that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home," 554 U.S. at 635, this Circuit has included the "law-abiding and responsible" qualification when identifying the Second Amendment's core protections. *See United States* v. *Jimenez*, 895 F.3d 228, 235 (2d Cir. 2018); *see also Libertarian Party*, 970 F.3d at 127.

Following the Second Circuit's lead, the Court assumes *arguendo* that the City's rifle/shotgun licensing scheme impinges on an interest protected by the Second Amendment — namely, Plaintiff's desire to keep a rifle and/or shotgun in his home for self-protection. *See Jimenez*, 895 F.3d at 234 ("[W]e have routinely assumed that the Second Amendment applies to a given application of a firearms (or ammunition) regulation in order to determine whether the law being challenged would withstand the requisite level of scrutiny. If it would, we need not grapple with whether the law actually implicates the Second Amendment, since it would comport with that Amendment's dictates in any case."); *see also Abekassis* v. *New York City*, No. 19 Civ. 8004 (PAE), 2020 WL 4570594, at *7 (S.D.N.Y. Aug. 7, 2020); *Corbett* v. *City of New York*, No. 18 Civ. 7022 (KPF), 2019 WL 2502056, at *9 (S.D.N.Y. June 17, 2019), *aff'd*, 816 F. App'x 551 (2d Cir. 2020) (summary order); *Toussaint* v. *City of New York*, No. 17 Civ. 5576 (NGG), 2018 WL 4288637, at *5 (E.D.N.Y. Sept. 7, 2018). The Court may do so here because, as explained below, the challenged provisions "'pass[] constitutional muster' under

intermediate scrutiny." *New York State Rifle & Pistol Ass'n, Inc.* v. *City of New York*, 883 F.3d 45, 55 (2d Cir. 2018) ("*NYSRPA* v. *City*") (quoting *NYSRPA* v. *Cuomo*, 804 F.3d at 257), *vacated as moot*, 140 S. Ct. 1525 (2020).

### iii. The Challenged Provisions Survive Intermediate Scrutiny Both Facially and as Applied

The Court begins with Plaintiff's facial challenge to Admin. Code § 10-303(a)(2) & (9) and 38 RCNY § 3-03(f) & (g), and then considers his as-applied challenge. Neither succeeds.

To prevail in a facial constitutional challenge, "the challenger must establish that no set of circumstances exists under which the [regulation] would be valid." *United States* v. *Salerno*, 481 U.S. 739, 745 (1987). The Supreme Court has emphasized that "[i]n determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange* v. *Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008). In the specific context of a facial Second Amendment challenge to a statute, the Second Circuit considers "a facial challenge to a legislative enactment [a]s 'the most difficult challenge to mount successfully'" and as presenting a "prohibitively high bar." *NYSRPA* v. *Cuomo*, 804 F.3d at 265 (quoting *Salerno*, 481 U.S. at 745).

The Supreme Court has yet to specify the level of scrutiny to apply to Second Amendment challenges. Like many sister circuits, the Second Circuit has declined to adopt a single tier of scrutiny for assessing Second Amendment

17

issues, and instead calibrates the standard depending on the characteristics of the law under review.  In determining the proper level of scrutiny, the Circuit has considered two factors: "[i] 'how close the law comes to the core of the Second Amendment right' and [ii] 'the severity of the law's burden on the right.'"  *NYSRPA* v. *Cuomo*, 804 F.3d at 258 (quoting *Ezell* v. *City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011)).  The Circuit has explained that strict scrutiny is warranted where "[l]aws … place substantial burdens on core rights," *Jimenez*, 895 F.3d at 234; intermediate scrutiny is warranted where "laws … place either insubstantial burdens on conduct at the core of the Second Amendment or substantial burdens on conduct outside the core of the Second Amendment (but nevertheless implicated by it)," *id.*; and non-heightened scrutiny is applied where the regulations at issue "'neither implicate the core protections of the Second Amendment nor substantially burden their exercise,'" *NYSRPA* v. *City*, 883 F.3d at 56 (quoting *NYSRPA* v. *Cuomo*, 804 F.3d at 258).

In his FAC, Plaintiff argues for the application of strict scrutiny to the challenged provisions.  (*See* FAC ¶¶ 102, 104).  In his opposition brief, he shifts position and argues that any interest balancing entailed by the application of different tiers of scrutiny is inappropriate.  (*See* Pl. Opp. 7).  In support of this assertion, he relies almost entirely on a dissenting opinion written by Justice Thomas, joined by Justice Kavanaugh, in *Rogers* v. *Grewal*, 140 S. Ct. 1865 (2020).  (*See id.* at 8-11).  Defendants, in contrast, argue that intermediate scrutiny is the correct framework for analysis.  (*See* Def. Br. 11-13 (citing, *inter*

18

*alia*, *NYSRPA* v. *City*, 883 F.3d at 56; *Toussaint*, 2018 WL 4288637, at *5; *Mishtaku* v. *City of New York*, No. 14 Civ. 839 (VSB), 2015 WL 13002182 (S.D.N.Y. May 4, 2015))).

To reiterate, the Second Circuit has consistently held that the Second Amendment's core protections apply only to those who are "law-abiding and responsible." *See Jimenez*, 895 F.3d at 235. Accordingly, "heightened scrutiny is triggered only by those restrictions that … operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense (or for other lawful purposes)." *Decastro*, 682 F.3d at 166; *see also NYSRPA* v. *City*, 883 F.3d at 56; *NYSRPA* v. *Cuomo*, 804 F.3d at 259; *Kwong* v. *Bloomberg*, 723 F.3d 160, 167 (2d Cir. 2013); *Kachalsky*, 701 F.3d at 93. Other circuits have held the same. *See Jimenez*, 895 F.3d at 235 (collecting cases).

Here, although the challenged rifle/shotgun licensing provisions apply to rifle/shotgun ownership in the home, they do not implicate the general populace. Instead, they are explicitly aimed at identifying those applicants who, in the eyes of City lawmakers, are not law-abiding or responsible. Specifically, in determining whether good cause exists to deny someone a rifle/shotgun license, Admin. Code § 10-303(a)(2) & (9) and 38 RCNY § 3-03(f) & (g) call on licensing officials to consider an applicant's demonstrated moral character, history of orders of protection, and history of domestic violence. "[R]ather than facially infringing on rights protected by the Second Amendment, the [Admin. Code § 10-303 and 38 RCNY § 3-03] factors,

19

including those implicated here, are aimed at limiting gun possession to people who have such a right, by helping to identify the 'law-abiding and responsible persons whose interests in possessing firearms are at the Amendment's core.'" *Abekassis*, 2020 WL 4570594, at *9 (quoting *Jimenez*, 895 F.3d at 235).

Furthermore, in this Circuit, "heightened scrutiny is triggered only by those restrictions that (like the complete prohibition on handguns struck down in *Heller*) operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense (or other lawful purposes)." *Decastro*, 682 F.3d at 166; *see also Libertarian Party*, 970 F.3d at 128. Admin. Code § 10-303 and 38 RCNY § 3-03 are part of a licensing scheme rather than an outright prohibition on rifle and shotgun ownership. As such, the default position under the laws is that an applicant will be able to acquire a license, but subject to disqualification based on one or more enumerated grounds. *See* Admin. Code § 10-303. Licensing officials retain discretion to assess the relevant factors in a holistic manner in order to determine whether an applicant has the moral character to be entrusted with a license; no one factor or combination of factors mandates denial of a license. This discretion allows "the government to more narrowly prescribe the circumstances under which an individual's Second Amendment rights may be burdened," *Torcivia* v. *Suffolk County*, 409 F. Supp. 3d 19, 38 (E.D.N.Y. 2019), and thus ensures that the burden imposed by the provisions is "less than substantial," *Abekassis*, 2020 WL 4570594, at *10.

For law-abiding, responsible individuals, the challenged provisions impose only a "modest" burden on the exercise of core Second Amendment rights. *Libertarian Party*, 970 F.3d at 128 (analyzing New York State's firearms licensing scheme). Accordingly, the Court will apply intermediate scrutiny. *See, e.g.*, *id.*; *Jimenez*, 895 F.3d at 236-38 (applying intermediate scrutiny in upholding statute prohibiting dishonorably discharged veterans from possessing firearms); *Kachalsky*, 701 F.3d at 96-97 (same in upholding "proper cause" requirement for carry permits under New York State law); *Doe No. 1* v. *Putnam County*, 344 F. Supp. 3d 518, 537 (S.D.N.Y. 2018) ("This is in accord with the general practice in the Second Circuit of applying intermediate scrutiny to a wide variety of laws implicating the Second Amendment.").

In applying intermediate scrutiny, the Court considers "whether the statutes at issue are substantially related to the achievement of an important governmental interest." *NYSRPA* v. *Cuomo*, 804 F.3d at 261 (internal quotation marks omitted). "As it is beyond cavil that states have substantial, indeed compelling, governmental interests in public safety and crime prevention, [courts] consider only whether the challenged laws are substantially related to the achievement of that governmental interest." *Libertarian Party*, 970 F.3d at 128 (internal quotation marks omitted). "To survive intermediate scrutiny, the fit between the challenged regulation" and the government interest "need only be substantial, not perfect." *Kachalsky*, 701 F.3d at 97 (internal quotation marks omitted). Courts must also "bear in mind that 'in the context of firearm regulation,' the judiciary is not in the best position, relative to legislatures, 'to

make sensitive public policy judgments concerning the dangers in carrying firearms and the manner to combat those risks.'" *Abekassis*, 2020 WL 4570594, at *13 (quoting *Kachalsky*, 701 F.3d at 97). "So long as the defendants produce evidence that fairly supports their rationale, the laws will pass constitutional muster." *NYSRPA* v. *Cuomo*, 804 F.3d at 261 (internal quotation marks omitted).

The challenged provisions easily satisfy this standard. As noted previously, under Admin. Code § 10-303, licensing officials are instructed not to deny a permit unless, among other reasons, the applicant is "not of good moral character" or other "good cause exists for the denial of the permit." *Id.* § 10-303(a)(2) & (9). Relevant considerations include a history of orders of protection and a history of domestic violence. RCNY § 3-03(f) & (g). These provisions are clearly aimed at denying rifles and shotguns to applicants who "would present a potential risk to the safety and security of the public if granted a license to possess" a rifle or shotgun. *Aron* v. *Becker*, 48 F. Supp. 3d 347, 374 (N.D.N.Y. 2014); *see also Bach* v. *Pataki*, 408 F.3d 75, 91 (2d Cir. 2005) (stating that New York "has a substantial and legitimate interest in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument"), *overruled on other grounds by McDonald*, 561 U.S. 742; *Abekassis*, 2020 WL 4570594, at *15 (describing allegations of domestic violence as a "paradigmatic 'red flag[]'" supporting denial of a firearm license).

Thus, they survive Plaintiff's facial challenge under intermediate scrutiny. *Cf. Libertarian Party*, 970 F.3d at 127-28 (upholding under intermediate scrutiny "good moral character" and "good cause" requirements for obtaining an at-home firearm permit under Penal Law § 400.00).

Plaintiff's as-applied challenge fares no better. He insists that the only two classes of persons who may be denied the right to possess firearms and longarms are felons and the mentally ill, neither of which category applies to him. (Pl. Opp. 13-14). However, as discussed previously, this is not a correct statement of the law post-*Heller* and *McDonald*. The Supreme Court was clear in *Heller* that its explicit recognition of "longstanding prohibitions on the possession of firearms by felons and the mentally ill" as "presumptively lawful" was not to be interpreted as meaning that *only* those prohibitions were lawful. *See Heller*, 554 U.S. at 626-27 & n.26. In the interest of public safety, the City, like New York State with respect to firearms, has chosen to sweep more broadly in its assessment of applicants' fitness for rifle and shotgun ownership, and has set discretionary disqualification criteria accordingly. Defendants Iqbal and David determined that Plaintiff meets at least four of these negative criteria, as set forth in Admin. Code § 10-303(a)(2) & (9) and 38 RCNY § 3-03(f) & (g), based on his history of summonses, arrests, domestic violence, and orders of protection. (*See* FAC ¶¶ 30-41). With that finding, Defendants were justified in concluding that "by [his] conduct, [Plaintiff] ha[s] shown [himself] to be lacking in the essential temperament or character which should be present in one entrusted with a dangerous instrument." *Bach*, 408 F.3d at 91.

Therefore, the Court holds that Admin. Code § 10-303(a)(2) & (9) and 38 RCNY § 3-03(f) & (g) were constitutionally applied to Plaintiff, and denies his as-applied Second Amendment claim.

In sum, the Court concludes that Plaintiff has standing to challenge only Admin. Code § 10-303(a)(2) & (9) and 38 RCNY § 3-03(f) & (g); that intermediate scrutiny applies to Plaintiff's facial and as-applied challenges to these provisions; and that the provisions survive intermediate scrutiny because they are substantially related to an important governmental interest and were applied appropriately to Plaintiff.  Accordingly, the Court dismisses Plaintiff's federal claims in their entirety.

## 2.    The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State-Law Preemption Claim

Finally, the Court considers Plaintiff's claim that 38 RCNY § 3-03(f) & (g), and Admin. Code § 10-303(a)(2), (6), (7), (9), & (g), are preempted by Penal Law § 400.00.  (FAC ¶¶ 180-82.  He argues that "New York State's detailed and comprehensive firearms regulatory scheme leaves no room for local governments to act, nor does it delegate any authority to local governments in the field of firearms regulation," and thus the City may not step in to regulate licensing and possession of rifles and shotguns where state law does not.  (*See* Pl. Opp. 19-22).  Defendants argue that in the absence of viable federal claims, the Court should decline to exercise supplemental jurisdiction over this state-law claim.  (*See* Def. Br. 20-21).  The Court agrees with Defendants and dismisses this claim without prejudice to Plaintiff's ability to bring such a challenge in state court.

24

Federal district courts have supplemental jurisdiction over non-federal-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, a district court may, at its discretion, decline to exercise supplemental jurisdiction over a state-law claim when: "[i] the claim raises a novel or complex issue of State law, [ii] the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, [iii] the district court has dismissed all claims over which it has original jurisdiction, or [iv] in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

In deciding whether to exercise supplemental jurisdiction, district courts must balance the "values of judicial economy, convenience, fairness, and comity[.]"  *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988).  As a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers* v. *Gibbs*, 383 U.S. 715, 726 (1966)). Here, given the Court's dismissal of all of Plaintiff's federal claims, no circumstances counsel in favor of exercising supplemental jurisdiction over Plaintiff's remaining state-law preemption claim.  The question whether New York City's longarm regulatory scheme is in conflict with New York State's firearm licensing scheme presents a "novel or complex issue of State law" that is better suited for a state court in the first instance.  *See* 28 U.S.C.

25

§ 1367(c)(1); *see also Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 124 (2d
Cir. 2006) ("[A] district court particularly abuses its discretion when it retains
jurisdiction over state-law claims raising unsettled questions of law following
dismissal of all original-jurisdiction claims.").  Plaintiff does not assert, and the
Court cannot identify, any compelling reason why the Court should
nonetheless wade into this state-law dispute.  Accordingly, the Court declines
to exercise supplemental jurisdiction over Plaintiff's state-law preemption
claim.  That claim is dismissed without prejudice.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in
full.  The Court dismisses Plaintiff's federal claims with prejudice, and
dismisses Plaintiff's state-law preemption claim without prejudice to his right
to bring such a claim in state court.

The Clerk of Court is directed to terminate all pending motions, adjourn
all remaining dates, and close this case.

SO ORDERED.

Dated:   January 19, 2021
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

26