UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ALAN TAVERAS,

                Plaintiff,

       -against-

NEW YORK CITY, New York, and
KEECHANT SEWELL, in her official capacity
as NYPD Police Commissioner, and all
successors,

                Defendant.
--------------------------------------------------------x

SECOND AMENDED
COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF

Case No. 20 Civ. 1200 (KPF)

      Plaintiff, ALAN TAVERAS, by and through his attorneys, states as his Second Amended

Complaint for Declaratory, Injunctive, and other relief against the defendants as follows:

## NATURE OF THE ACTION

      1.     This is an action for declaratory and injunctive relief, compensatory damages for

the defendants' violations of Plaintiff's Second and Fourteenth Amendment rights, reasonable

statutory attorney's fees, and costs.

      2.     In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court declared,

"In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an

individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. 2111, 2126

(2022).

      3.     Plaintiff's right to 'keep and bear' rifles and shotguns is covered by the plain text

of the Second Amendment and presumptively protected by the U.S. Constitution.

      4.     The *Bruen* Court continued, "To justify its regulation, the government may not

simply posit that the regulation promotes an important interest. Rather, the government must

demonstrate that the regulation is consistent with this Nation's historical tradition of firearm

regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Id. c*iting, *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961).[1]

5.      Long guns have been part of this nation's history since the colonists arrived.[2] The free and unabridged possession, purchase, trading, and use of long guns is part of this Nation's history and tradition. No permission from the government, licensing, registration, or any other action was required (or even imagined) to exercise the preexisting right that was later codified in the Second Amendment. Indeed, the purpose of codifying the right to keep and bear arms and declaring that it "shall not be infringed"[3] was to prevent *any encroachment* of that right by the government. Yet, here we are.

6.      New York City criminalizes the mere possession of rifles and shotguns and bans their purchase without permission. New York City's regulations on the purchase, possession, receipt, and transfer of rifles and shotguns have no historical analogue. The regulations challenged herein violate the Second and Fourteenth Amendments and must be temporarily and permanently enjoined.

---

[1] "Rather than begin with its view of the governing legal framework, the dissent chronicles, in painstaking detail, evidence of crimes committed by individuals with firearms. See post, at 2163 - 2168 (opinion of BREYER, J.). The dissent invokes all of these statistics presumably to justify granting States greater leeway in restricting firearm ownership and use. But, as Members of the Court have already explained, "[t]he right to keep and bear arms ... is not the only constitutional right that has controversial public safety implications." *McDonald v. Chicago*, 561 U.S. 742, 783, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (plurality opinion)." *Bruen*, 142 S. Ct. at 2126, n. 3.

[2] Long guns are, indisputably, 'arms' covered by the plain text of the Second Amendment.
[3] Infringe: encroach, limit, offend. https://www.merriam-webster.com/thesaurus/infringe
While, for example, the Fourth Amendment protects against "unreasonable" searches and seizures, the Second Amendment prohibits *any measure* of intrusion.

7.     Plaintiff seeks a judicial declaration that New York City's licensing scheme for rifles and shotguns - 38 RCNY 3 - violates the Second and Fourteenth Amendments to the U.S. Constitution and requests an Order temporarily and permanently enjoining its enforcement. The conduct being regulated under 38 RCNY 3 is protected by the Second Amendment and the regulations are inconsistent with this Nation's historical traditions of firearm regulation.

8.     Plaintiff seeks a judicial declaration that the provisions of the New York City Administrative Code, Title 10, Chapter 3 that regulate the purchase, possession, transfer, and/or receipt of rifles and shotguns violate the Second and Fourteenth Amendments to the U.S. Constitution and requests an Order temporarily and permanently enjoining their enforcement. The conduct related to rifles and shotguns regulated thereunder is protected by the Second Amendment and the regulations are inconsistent with this Nation's historical tradition of firearm regulation.

## JURISDICTION AND VENUE

9.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 1983 and 1988. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

10.    Plaintiff, Alan Taveras, is a natural person, a citizen of the United States and of the State of New York, and a resident of Bronx County, New York.

11.    Defendant New York City, New York is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

12.    Defendant Keechant Sewell, who is sued herein in her official capacity only, is the Police Commissioner of the New York Police Department ("NYPD"). In that position, she has authority and control over the creation and implementation of the policies and procedures for the

licensing of handguns, rifles and shotguns for the five (5) boroughs comprising New York City: the counties of Bronx, New York, Richmond, Kings, and Queens (the "City" or "New York City").

13.     As the Police Commissioner of New York City, Commissioner Sewell is the authority from whom relief can be granted to Plaintiff and to whom Plaintiff's harm is directly traceable as she has a statutory duty and authority to enforce 38 RCNY 3 and New York City Administrative Code Title 10, Chapter 3; such regulations were enforced by her predecessors, are continuing to be enforced and implemented under her administration, and will continue to be enforced absent an injunction from this Court. Enjoining Commissioner Sewell, her officers, agents, servants, employees, and all persons acting in concert with her who receive actual notice of such injunction, from enforcing and implementing the regulations challenged herein will provide Plaintiff with the injunctive relief that he seeks.

## STATEMENT OF FACTS

14.     Alan Taveras is a 33-year-old family man, a responsible homeowner, and resident of New York City. Mr. Taveras is gainfully employed, has no disqualifiers to the possession, purchase, receipt, and transfer of firearms under state and federal law. Mr. Taveras has never been convicted of a crime.

15.     On December 1, 2017, Mr. Taveras applied to the NYPD License Division for (i) a Rifle/Shotgun License ("R/S License"); and (ii) a Premise Handgun License for his home.[4]

16.     In New York City, the possession of rifles and shotguns is regulated under 38 RCNY § 3 and NYC Administrative Code Title 10, Chapter 3.

17.     Mr. Taveras paid the filing fees associated with applying for each license and was fingerprinted by NYPD; the NYPD obtained his fingerprint-based criminal history and was made

---

[4] NYPD has 2 separate applications, but both are subjective and discretionary, and the grounds for denial contain identical language, as set forth below.

aware that Mr. Taveras had never been convicted of a crime, was not subject to an existing order of protection, and otherwise had no disqualifying events or conditions preventing his lawful possession of firearms under state or federal law.

18.    On April 18, 2018, Mr. Taveras' R/S application was denied because, under the broad discretion afforded, the License Division it determined that:

> "The circumstances surrounding your actions exhibited in your past question your ability to abide by the rules and regulations to possess a rifle/shotgun permit. Based upon your arrest history, summons history and violent domestic violence history and Order of Protection history. You have shown poor moral judgment and an unwillingness to abide by the law. The above circumstances reflect negatively upon your moral character and cast grave doubt upon your fitness to possess a firearm."

19.    The "arrest history", "domestic violence history" and "order of protection history" all related to 1 charge from 2011 filed by an ex-girlfriend that was ultimately dismissed *on the merits*[5] a subsequent complaint that the NYPD declined to even pursue.[6] The "summons history" consisted of 3 petty offenses in the summer of 2007 – over 11 years prior.

20.    On October 1, 2018, the License Division also denied Mr. Taveras' application for a handgun license based on the same grounds for denial under the City's handgun licensing scheme. See, 38 RCNY 5.

21.    Absent any disqualifying event or condition, Mr. Taveras was stripped of his protected constitutional rights because the City's regulations imbue discretion in a government employee to judge an applicant's "moral judgment", "moral character", and "fitness to possess a firearm", and to deny a license based on a subjective finding of "an unwillingness to abide by the law" - apparently *any* law, not only those rising to the level of warranting the termination of a

---

[5] The prosecution was terminated in Mr. Taveras' favor under New York State Criminal Procedure Law 160.50.
[6] In typical fashion, the License Division attempted to bolster a non-event to create the appearance that Mr. Taveras is a domestic violence misdemeanant, which he is not.

constitutional right. See, 38 RCNY § 3-03 "Grounds for denial", which includes among other things traffic infractions, failure to pay child support or other government fines, and a poor driving history.

22.     Where there is no bright line separating eligibility from disqualification rooted in our Nation's historical traditions, there is no "Right" at all, only a government issued 'privilege.'

23.     A constitutional guarantee subject to future judges' [and licensing officers'] assessments of its usefulness is no constitutional guarantee at all. *Heller*, 554 U.S. at 634.

24.     Mr. Taveras appealed the denial of his R/S License to the NYPD License Division, Appeals Unit.

25.     On November 28, 2018, Mr. Taveras' R/S appeal was denied by written Notice of Disapproval After Appeal (the "Notice"). The Appeals Unit determined that Mr. Taveras was "not of good moral character" and "good cause exists" to deny the license under New York City Administrative Code §§ 10-303(a)(2) and (9).

26.     The Notice went on to cite 38 RCNY § 3-03, which "provides a list of what shall be considered in assessing moral character and whether good cause exists for a denial", ultimately relying on 38 RCNY §§3-03 (f) and (g) because Mr. Taveras "was a subject of an order of protection" and "there is a history of one or more incidents of domestic violence", despite acknowledging that "the charges against Mr. Taveras were dropped against him."

> "Although time has elapsed and the arrest charges were dismissed, the serious nature of these incidents raise safety concerns for yourself and others. Therefore, these domestic incidents and order of protection are grounds for denial of Mr. Taveras' application for a rifle/shotgun permit."

27.     The 'serious nature' of incidents that never happened raised speculative 'safety concerns' that never materialized, yet stripped Mr. Taveras of exercising a guaranteed, preexisting, and individual right for the past 4 years.[7]

28.     Mr. Taveras has had no further charges or arrests.

29.     Mr. Taveras has suffered, and continues to suffer, irreparable harm directly resulting from the challenged regulations. Without the relief sought, Mr. Taveras – and all similarly situated people - will continue to be harmed, because the right to engage in conduct protected by the Second Amendment does not exist in New York City and cannot be restored without the requested injunctive relief.

30.     Mr. Taveras has a present intention and plan to purchase and possess shotguns and rifles for all lawful purposes, including self-defense and ammunition for the same, without the need to seek permission from the government or requirement that he submit to discretionary and subjective licensing schemes under 38 RCNY 3 and NYC Admin. Code Title 10, Chapter 3 or suffer criminal and civil penalties.

31.     Mr. Taveras *cannot* purchase rifles, shotguns, or ammunition from a firearm dealer in New York City because New York City firearm dealers are prohibited under NYC Code 10 from selling rifles, shotguns and/or ammunition to anyone who does not have and present a R/S license, and a certificate of registration. Such laws prevent Mr. Taveras' ability to engage in Second Amendment protected conduct and should also be enjoined.

32.     If Mr. Taveras exercises his right to purchase, possess, and carry rifles, shotguns, and their ammunition, he will be arrested and subject to incarceration, fines, and other criminal

---

[7] Mr. Taveras' handgun license was similarly denied by the Appeals Unit in July 2019 under NYC Code and corresponding provisions of 38 RCNY 5.

and civil penalties. Mr. Taveras should not have to choose between exercising a protected constitutional right or suffering such penalties.

## STATEMENT OF LAW

### *The Second Amendment*

33.     The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

34.     The Second Amendment does not *bestow* any rights to the individual to possess and carry weapons to protect himself; it *prohibits the government* from infringing upon the basic, fundamental right of the individual to keep and bear weapons in common use for self-defense in the event of a violent confrontation. *Heller*, supra; *McDonald*, supra; *Caetano v. Massachusetts,* 577 U.S. (2016).

35.     "Individual self-defense is the central component of the Second Amendment right." *McDonald,* 561 U.S. at 767, citing, *Heller*, 554 U.S. at 599 (internal quotations omitted). The Second Amendment protects the core right of the individual to self-protection. *Heller*, 554 U.S. at 595-599, 628.

36.     The Second Amendment is "deeply rooted in this Nation's history and tradition" and fundamental to our scheme of ordered liberty". *McDonald*, 561 U.S at 768. The Second Amendment's protections are fully applicable to the states through the Fourteenth Amendment. *McDonald*, 130 S. Ct. at 3026.

37.     The "Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding …" *Caetano v. Massachusetts*, 577 U.S. at 411.

8

38.     Rifles and shotguns are 'bearable arms' in common use for self-defense [*Panzella v. Sposato*, 863 F3d 210, 218 (2d Cir.2017)] and therefore are presumptively protected by the Second Amendment. *Caetano,* supra.

### The "People" Protected By the Constitution

39.     *Heller* explained, "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, at 580. "[T]he people' … refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.* (citation omitted).

40.     Mr. Taveras is a member of the national community with no prohibitors to the possession of firearms and he is entitled to the full and unabridged protections of the Second and Fourteenth Amendments.

### The *Bruen* Test for Second Amendment Challenges

41.     The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, at 592.

> "Putting all of these textual elements together, we find that they *guarantee* the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it 'shall not be infringed.' As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L.Ed. 588 (1876), '[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ....'"

*Id.* (emphasis added).

42. In *Bruen*, the Supreme Court flatly rejected the two-tiered, intermediate scrutiny, 'means-end' public safety balancing test[8] improperly created and applied by the Second Circuit[9] and others. Rather, the test to be applied to Second Amendment challenges is as follows:

> "we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution **presumptively** protects that conduct.
>
> To justify its regulation, the government may not simply posit that the regulation promotes an important interest.
>
> Rather, **the government must demonstrate** that the regulation is consistent with this Nation's historical tradition of firearm regulation.
>
> Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, at 2126 (emphasis added) citing, *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961).

### ***Bruen* Defined and Limited the Relevant Historical Time Period**

43. Because "not all history is created equal," the *Bruen* Court held that, when deciding whether the government's regulation is consistent with this Nation's historical tradition,

> the only appropriate inquiry is what the public understanding of the right to keep and bear arms was during the ratification of the Second Amendment in 1791, and perhaps during ratification of the Fourteenth Amendment in 1868.

*Bruen*, at 2138.

---

[8] Core Second Amendment rights, like the right to possess firearms in the home for self-defense, are not subject to 'interest balancing'. *Heller*, 554 U.S. at 634 ("We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach. The very enumeration of the right takes out of the hands of government--even the Third Branch of Government--the power to decide on a case-by-case basis whether the right is really worth insisting upon.").

[9] "Despite the popularity of this two-step approach, it is one step too many. Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history. But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, at 2127.

44. "Post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Bruen*, at 2137 (emphasis supplied) citing, *Heller*, 670 F.3d at 1274, n. 6 (Kavanaugh, J., dissenting); *Espinoza v. Montana Dept. of Revenue*, 591 U.S. ——, ——, 140 S.Ct. 2246, 2258–2259 (2020).

### ***Bruen*'s Rejection of "May Issue Statutory Schemes"**

45. The vast majority of States - 43 by our count - are "shall issue" jurisdictions, where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability. *Bruen*, at 2123–24.

46. *Bruen* called out New York's outlier status for being only 1 of 6 States and the District of Columbia with 'may issue' licensing schemes, under which authorities have discretion to deny firearm licenses even when the applicant satisfies the statutory criteria. *Id.*

47. *Bruen* pointed to 'shall issue' jurisdictions where licenses are issued "whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses," and "appear to contain only narrow, objective, and definite standards guiding licensing officials…rather than requiring the appraisal of facts, the exercise of judgment, and the formation of an opinion." *Bruen*, at 2138, n. 9.

48. *Bruen* even cautioned 'shall issue' jurisdictions: "[t]hat said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Id*.

49. As far as "may issue" states like New York, the *Bruen* Court conditioned their continued license requirement "for carrying handguns for self-defense so long as those States

employ objective licensing requirements like those used by the 43 shall-issue States." *Bruen*, at 2162.

50.     New York City's rifle and shotgun regulations are wholly inconsistent with the Nation's historical traditions – an affront to the plain text of the Second Amendment, really. Even New York State has refrained from licensing rifles and shotguns.[10]

### *The Challenged Regulations Violate the Second and Fourteenth Amendments*

51.     The plain text of the Second Amendment presumptively protects Mr. Taveras' conduct: purchasing and possessing shotguns, rifles, and ammunition.

52.     Defendants "must demonstrate that their regulations are consistent with this Nation's historical tradition of firearm regulation. *Bruen*, at 2126. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command'." *Bruen*, at 2126.

53.     Defendants cannot meet that burden.

54.     None of the challenged regulations are consistent with this Nation's historical tradition of firearm regulations. Only Defendants, and not Mr. Taveras, have the burden to demonstrate otherwise. *Bruen*, at 2126.

### CHALLENGED NEW YORK CITY REGULATIONS

55.     New York City prevents ordinary people[11] from possessing and purchasing rifles and shotguns without first applying for and obtaining a Rifle/Shotgun License through the NYPD.

---

[10] The exception being the June 2022 enactment of knee-jerk legislation imposing the State's discretionary handgun licensing scheme on semi-automatic rifles, which are commonly possessed by millions of ordinary people for lawful purposes across the country, and corresponding felony criminal statutes for non-compliance – a regulation whose time is  also limited. See, Penal Law 265.65; 265.66; 400.00, *et seq.*
[11] Individuals who are eligible to possess, purchase, receive, and/or transfer firearms under state and federal law.

56.     Through 38 RCNY 1-05, 38 RCNY 3 and NYC Admin. Code Title 10, the City implements a "may issue" discretionary, and subjective licensing scheme for rifles and shotguns that requires the denial of applications based on events and conditions that are not 'disqualifiers' to firearm possession, imposes criminal and civil penalties upon ordinary people for the 'mere possession' of rifles and/or shotguns without a license, and otherwise impose restrictions that are inconsistent with this Nation's historical tradition of firearm regulation.

<u>38 RCNY 1-05</u>

57.     38 RCNY 1 regulates firearm dealers in rifles and shotguns. The provisions challenged herein regulate conduct protected by the Second and Fourteenth Amendments.

58.     Commissioner Sewell and her agents, officers and designees are required, and have a statutory duty, to enforce the provisions of 38 RCNY 1.

59.     The following provisions of 38 RCNY 1 are inconsistent with this Nation's historical tradition of firearm regulation, violate the Second and Fourteenth Amendments, and should be enjoined in their entirety.

60.     38 RCNY 1-05(a), which provides that "[n]o rifle or shotgun shall be sold, or given away, or disposed of, unless the transferee is authorized by law to possess such rifle or shotgun" is facially unconstitutional and, at the very least, vague and overbroad.

61.     Mr. Taveras has an individual, preexisting, guaranteed right to possess and carry arms in case of confrontation [*Heller*, 554 U.S. at 592] and cannot be required to obtain prior "authorization by law" to purchase, receive, transfer, or possess firearms, including rifles and shotguns.

62.     The premise that one needs "authorization by law" - whether by license, permit, or other affirmative act – to purchase or possess arms in common use – especially rifles and shotguns

– is a patent violation of the plain text of the Second Amendment. 38 RCNY 1-05(a) should be declared violative of the Second and Fourteenth Amendments and stricken.

63.     38 RCNY 1-05(k) prohibits firearm dealers from selling, transferring, or otherwise disposing of rifle or shotgun ammunition to any person who has not been issued a rifle/shotgun permit and a certificate of registration who does not exhibit the same to the dealer at the time of purchase. Likewise, it should be declared unconstitutional and stricken.

<u>38 RCNY 3</u>

64.     38 RCNY 3 is New York City's licensing scheme for the possession of rifles and shotguns. 38 RCNY 3 regulates conduct protected by the Second Amendment.

65.     The licensing of rifles, shotguns and ammunition is inconsistent with this Nation's historical tradition of firearm regulation. 38 RCNY 3 violates the Second and Fourteenth Amendments and should be enjoined in its entirety.

<u>New York Administrative Code Title 10, Chapter 3</u>

66.     The provisions of NYC Code Title 10, Chapter 3 that regulate the purchase and possession of rifles, shotguns, and ammunition are inconsistent with this Nation's historical tradition of firearm regulation[12] and should be enjoined.

67.     NYC Code § 10-302.1 (a) prohibits the transfer and/or sale of more than one rifle or shotgun to any individual as part of the same sales transaction; and prohibits the transfer and/or sale of a rifle or shotgun to any individual if the dealer knows or should know that such individual has purchased a rifle or shotgun within the prior ninety days. Subsection (b) prohibits an ordinary

---

[12] By not challenging the remaining provisions of NYC Admin. Code Title 10, Chapter 3, Mr. Taveras makes no concession that they are consistent with the Second and/or Fourteenth Amendments.

person from acquiring a rifle or shotgun if such person has acquired a rifle or shotgun within the previous ninety days.[13]

68.     NYC Code § 10-303, entitled 'Permits for possession and purchase of rifles and shotguns', provides,

> "It shall be unlawful to dispose of any rifle or shotgun to any person unless said person is the holder of a permit for possession and purchase of rifles and shotguns; it shall be unlawful for any person to have in his or her possession any rifle or shotgun unless said person is the holder of a permit for the possession and purchase of rifles and shotguns. The disposition of a rifle or shotgun, by any licensed dealer in rifles and shotguns, to any person presenting a valid rifle and shotgun permit issued to such person, shall be conclusive proof of the legality of such disposition by the dealer."

69.     NYC Code § 10-304(a) prohibits ordinary people from possessing any rifle or shotgun unless, in addition to obtaining a R/S license, they also hold "a certificate of registration for such rifle or shotgun"; conversely under subsection (b) it prohibits the transfer or sale of a rifle or shotgun to an ordinary person who does not have a "certificate of registration." A licensee who does not have a certificate of registration must "file with the police commissioner a declaration in duplicate, signed and affirmed by the declarant which shall list by caliber, make, model, manufacturer's name and serial number, or if none, any other distinguishing number or identification mark, of each rifle and shotgun possessed by the declarant. Upon receipt of acknowledgement of said declaration by the police commissioner, the declarant may lawfully sell, transfer, or otherwise dispose of such rifles or shotguns to a licensed dealer or any other person legally permitted to purchase or take possession of such rifles or shotguns. Any willful or material omission or false statement shall be a violation of this section."

---

[13] Mr. Taveras does not fall within any of the exceptions listed in this section.

70.   Under subsection (c), "every person carrying a rifle or shotgun" shall have on his or her person a certificate of registration valid for such weapon. Upon demand, the appropriate certificate shall be exhibited for inspection to any peace officer or police officer. Failure of any person to so exhibit his or her certificate shall be presumptive evidence that he or she is not duly authorized to possess such rifle or shotgun and may be considered by the police commissioner as cause for revocation or suspension of such person's permit."

71.   Under subsection (d), the revocation of a rifle or shotgun permit shall automatically be deemed to be a revocation of all certificates of registration for rifles and shotguns held by the person whose permit has been revoked.

72.   NYC Code § 10-306 prohibits ordinary people from purchasing and/or possessing ammunition feeding devices for rifles and/or shotguns (i.e., magazines and clips) (i) without a R/S license; (ii) without a certificate of registration; and (iii) that is capable of holding more than 5 rounds. Under subsection (d), it shall be unlawful for any person who is required to have a permit in order to possess a rifle or shotgun and who has not been issued such permit to possess rifle or shotgun ammunition or an ammunition feeding device which is designed for use in a rifle or shotgun.

73.   NYC Code § 10-306 prohibits FFLs/firearm dealers from selling ammunition feeding devices for rifles and/or shotguns (i.e., magazines and clips) (i) to ordinary people who do not hold a R/S license; (ii) to ordinary people who do not hold a certificate of registration; and (iii) that are capable of holding more than 5 rounds.[14]

---

[14] The Second Amendment protects "arms," "weapons," and "firearms"; it does not explicitly protect ammunition. Nevertheless, without bullets, the right to bear arms would be meaningless. A regulation eliminating a person's ability to obtain or use ammunition could thereby make it impossible to use firearms for their core purpose. *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014), cf. *Heller*, 554 U.S. at 630, 128 S.Ct. 2783 (holding that "the District's requirement (as applied to respondent's handgun) that firearms in the home be rendered and kept inoperable at all times ... makes it impossible for citizens to use them for the core lawful purpose of self-defense and

74.     Under NYC Code § 10-310, an ordinary person who violates sections 10-301 through 10-309 and the rules and regulations issued by the NYPD Police Commissioner pursuant thereto shall be guilty of a crime: $300 fine and 15 days in jail on the high end for the first violation and for each subsequent violation, a Class A Misdemeanor conviction with a fine up to $1,000 and/or up to 1 year in jail.[15]

75.     Mr. Taveras should not be subject to any licensing scheme for the possession, purchase, receipt, or transfer of rifles, shotguns and their ammunition because no one was subject to any analogous regulations when the Second Amendment was enacted. As such, the aforementioned regulations should be declared to violate the Second and Fourteenth Amendment, and temporarily and permanently enjoined.

76.     New York City's licensing scheme for rifles and shotguns should be declared unconstitutional; and temporarily and permanently enjoined because it is inconsistent with this Nation's historical tradition of firearm regulation.

77.     As applied to Mr. Taveras, the grounds under which his right to possess and purchase rifles and shotguns are also inconsistent with this Nation's historical traditions and should be enjoined. As the License Division explained, Mr. Taveras' license was denied based on his "arrest history" "summons history" "violent domestic violence history" "order of protection history" "poor moral judgment" "unwillingness to abide by the law" and the "grave doubt cast upon his fitness to possess a firearm" and the "negative reflection cast upon his moral character."

---

is hence unconstitutional"). Thus "the right to possess firearms for protection implies a corresponding right" to obtain the bullets necessary to use them. Cf. *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) (holding that the right to possess firearms implied a corresponding right to have access to firing ranges in order to train to be proficient with such firearms).

[15] The first violation of possession of an unregistered rifle and shotgun or rifle and shotgun ammunition or an ammunition feeding device which is designed for use in a rifle or shotgun and which is capable of holding no more than five rounds of rifle or shotgun ammunition is not an available option (a) where the violation of the regulation took place in conjunction with the commission of a crime; (b) the possessor was previously convicted of a felony or a serious offense; and (c) the possessor previously applied for and was denied a permit for such possession.

78.     His R/S application having been denied, Mr. Taveras' appealed to the Appeals Unit of the License Division, which listed as its reasons for confirming the initial denial that Mr. Taveras was "not of good moral character" and that "good cause exists" to deny the license. See, NYC Code §§ 10-303(a)(2) and (9).

79.     The Appeals Unit went on to cite 38 RCNY § 3-03, which "provides a list of what shall be considered in assessing moral character and whether good cause exists for a denial", ultimately relying on 38 RCNY §§3-03 (f) and (g) in reaching its own conclusion that, because Mr. Taveras "was a subject of an order of protection" in the past and had "a history of one or more incidents of domestic violence", specifically acknowledging that "the charges against Mr. Taveras were dropped against him" and "time has elapsed and the arrest charges were dismissed", "the serious nature of these incidents raise safety concerns for yourself and others. Therefore, these domestic incidents and order of protection are grounds for denial of Mr. Taveras' application for a rifle/shotgun permit."

80.     The License Division deprived Mr. Taveras of the ability to engage in conduct protected by the Second Amendment based on the following regulations:

81.     NYC Admin. Code 10-303(a)(2) and (9) prohibit the issuance of a R/S License if the licensing officer finds that the applicant "(2) is not of good moral character;" or (9) "good cause exists for the denial of the permit."

82.     38 RCNY 3-03 requires denial of a R/S license where the applicant (a) "has been arrested"; (f) "is the subject of an order of protection or a temporary order of protection"; (g) "has a history of one or more incidents of domestic violence"; "(n) Other information demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern

18

for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the permit." (emphasis added).

83.     NYC Admin. Code 10-303(a)(2) and (9) and 38 RCNY 3-03(a), (f), (g), and (n) regulate conduct protected by the plain text of the Second Amendment and should be declared unconstitutional and temporarily and permanently enjoined as they are inconsistent with this Nation's historical tradition of firearm regulation.

84.     Mere allegations, petty offenses, driving infractions, and non-prohibiting convictions are not within the *sui generis* of events and conditions serious enough to warrant termination of the individual right to possess and carry arms.

85.     If there is a benchmark for forfeiture of the rights protected by the Second Amendment, it is "adjudicated dangerousness." None of the grounds for depriving Mr. Taveras of his rights come close to this high standard.

### LICENSING IS A PRETEXT TO VIOLATE THE SECOND AMENDMENT

86.     The idea that a licensing scheme in New York makes society 'safer' is a façade.

#### *A National Instant Criminal Background Check is Required for Every*
#### *Sale of a Handgun, Rifle and Shotgun in New York*

87.     In New York State, every sale, purchase, or transfer of a firearm requires a NICS (National Instant Criminal Background Check System) background check be performed of a buyer or transferee by a federal firearms licensee ("FFL"), unless the transfer is between immediate family members.[6] New York is a "point-of-contact" state, meaning that **every gun store in the state** is required by law to contact NICS at the point of sale to perform a background check with every purchase and/or transfer.[7]

88.    Under the federal Brady Act, a national namecheck system for FFLs, such as gun shop owners, pawn shop dealers, and retailers, is required to be conducted through NICS to determine whether a person can legally buy or own a firearm.[8]

89.    A NICS check will result in a "Deny" - preventing a transfer or sale from occurring – if the purchaser/transferee is prohibited from purchasing, receiving, transferring and/or possessing firearms. There are numerous state and federal grounds that will result in a NICS denial including various state prohibitors, being under indictment, subject to an order of protection, illegal alien status, misdemeanor crime of domestic violence, dishonorable discharge, renunciation of citizenship, and having been adjudicated as mentally unfit.[9] See also, New York State Mental Hygiene Law § 7.09(j).

### *Penal Law 265.01 Prohibits "Ineligible Persons" from Possessing Rifles and Shotguns*

90.    Penal Law § 265.01(4) makes it a crime for an individual who has been convicted of a felony or a 'serious offense' as defined by § 265.00(17) to possess a rifle or shotgun.

91.    Penal Law § 265.01(6) makes it a crime for a person who has been "Certified not suitable to possess a self-defense spray device, a rifle or shotgun" to possess a rifle or shotgun.[10]

92.    Felons and serious offense convicts cannot legally purchase a handgun, rifle, or shotgun in New York State and Penal Law 265.00, *et seq.* punishes disqualified people who possess firearms – as well as non-prohibited people who use firearms in the commission of some other crime.[16]

93.    'Licensing' does not prevent criminals from acquiring guns and/or using them to commit other crimes. Criminals don't apply for licenses; by their very nature they disregard the law. The only people harmed by licensing schemes – and they are schemes – are ordinary people

---

[16] And some provisions punish non-prohibited people who 'merely possess' handguns, rifles, and/or shotguns for self-defense.

whose Right to be armed for self-protection - which "shall not be infringed" – is placed on hold for between 6 months and 2 years, requires a fee, an interview, fingerprinting (despite the mandatory NICS check), and is subject to the 'broad discretion' of a government employee (in this case police officers who, by the nature of their profession, want everyone disarmed).[17]

94.     As a direct result of New York City's policies, regulations and rules, and Defendants' implementation and enforcement of the same, Mr. Taveras has suffered harm resulting from the deprivation of his constitutional right to keep and bear arms for self-defense, and *inter alia* has been deprived of the ability to be armed in the defense and protection of family and home, to be armed with the type of weapon of his choice, the inability to possess rifles and shotguns, engage in target practice and be proficient with a firearm, and the absence of peace of mind and self-confidence associated with the ability to protect oneself, family, and homestead in the event of violent confrontation.[18]

### DECLARATORY AND INJUNCTIVE RELIEF ALLEGATIONS

95.     Mr. Taveras incorporates the foregoing paragraphs by reference in their entirety and repeats that he is suffering an injury in fact caused directly by the regulations challenged herein and Defendants' enforcement thereof:

- 38 RCNY 1-05(a);

- 38 RCNY 1-05(k);

- 38 RCNY 3;

---

[17] New York's oppressive licensing schemes do not deter criminals or prevent crime. Right now, violent criminals are emboldened and unrestrained knowing that ordinary people are disarmed and unable to protect themselves.

[18] See, *Duncan v. Becerra*, 265 F.Supp.3d 1106, 1135 ("The right to keep and bear arms protects tangible and intangible interests which cannot be compensated by damages…The right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence — and psychic comfort — that comes with knowing one could protect oneself if necessary…Loss of that peace of mind, the physical magazines, and the enjoyment of Second Amendment rights constitutes irreparable injury.") citing, *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150 (D.D.C. 2016) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011)).

- NYC Admin. Code 10-302.1;

- NYC Admin. Code 10-303;

- NYC Admin. Code 10-304(a), (b), (c) and (d);

- NYC Admin. Code 10-306;

- NYC Admin. Code 10-310.

96.     Mr. Taveras incorporates the foregoing paragraphs by reference in their entirety and states that he is suffering an injury in fact caused directly by regulations challenged herein and Defendants' enforcement thereof:

- 38 RCNY 3-03 (a), (f), (g), and (n); and

- NYC Admin. Code 10-303 (a)(2), (a)(9).

97.     The foregoing laws regulate conduct protected by the plain text of the Second Amendment for which there is no historical analogue in this Nation's tradition of firearm regulations; they should be judicially declared unconstitutional and violative of the Second and Fourteenth Amendments; and they should be temporarily enjoined for the pendency of this proceeding and permanently enjoined thereafter.

98.     Mr. Taveras will continue to suffer irreparable harm and the deprivation of the preexisting and guaranteed individual rights protected and guaranteed by the Second and Fourteenth Amendments without the requested temporary and permanent injunctive relief.

99.     The defendants deny the allegations stated herein.

## COUNT I

100.    Repeats and realleges paragraphs "1" through and including "99" as if set forth in their entirety herein.

101.    38 RCNY 1-05(a), and (k) violate the Second and Fourteenth Amendments to the United States Constitution. 42 U.S.C. § 1983.

## COUNT II

102.    Repeats and realleges paragraphs "1" through and including "101" as if set forth in their entirety herein.

103.    38 RCNY 3, *et seq.* violates the Second and Fourteenth Amendments to the United States Constitution. 42 U.S.C. § 1983.

## COUNT III

104.    Repeats and realleges paragraphs "1" through and including "103" as if set forth in their entirety herein.

105.    38 RCNY 3 (a), (f), (g), and (n) violate the Second and Fourteenth Amendments to the United States Constitution. 42 U.S.C. § 1983.

## COUNT IV

106.    Repeats and realleges paragraphs "1" through and including "105" as if set forth in their entirety herein.

107.    NYC Admin. Code 10-302.1; NYC Admin. Code 10-303, *et seq.*; NYC Admin. Code 10-304(a), (b), (c) and (d); NYC Admin. Code 10-306; and NYC Admin. Code 10-310 violate the Second and Fourteenth Amendments to the United States Constitution. 42 U.S.C. § 1983.

## COUNT V

108.    Repeats and realleges paragraphs "1" through and including "107" as if set forth in their entirety herein.

109.    NYC Admin. Code 10-303 (a)(2), and (a)(9) violate the Second and Fourteenth Amendments to the United States Constitution. 42 U.S.C. § 1983.

## COUNT VI

110.    Repeats and realleges paragraphs "1" through and including "109" as if set forth in their entirety herein.

111.    Under the theory that, by creating, maintaining, enforcing and/or applying the unconstitutional policy described herein, defendant New York, New York is liable to the plaintiff under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978) for the violations of the Constitutional Rights detailed herein. 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against the defendants as follows:

- A judicial declaration that 38 RCNY 1-05(a); 38 RCNY 1-05(k); 38 RCNY 3, *et seq.*; NYC Admin. Code 10-302.1; NYC Admin. Code 10-303, *et seq.*; NYC Admin. Code 10-304(a), (b), (c) and (d); NYC Admin. Code 10-306; and NYC Admin. Code 10-310 violate the Second and Fourteenth Amendments to the U.S. Constitution;

- A judicial declaration that 38 RCNY 3-03 (a), (f), (g), and (n); and NYC Admin. Code 10-303 (a)(2), and (a)(9) violate the Second and Fourteenth Amendments to the U.S. Constitution;

24

- An Order preliminarily and permanently enjoining the defendants, their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction, from enforcing and implementing 38 RCNY 1-05(a); 38 RCNY 1-05(k); 38 RCNY 3; NYC Admin. Code 10-302.1; NYC Admin. Code 10-303; NYC Admin. Code 10-304(a), (b), (c) and (d); NYC Admin. Code 10-306; and NYC Admin. Code 10-310;

- An Order preliminarily and permanently enjoining the defendants, their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction, from enforcing and implementing 38 RCNY 3-03 (a), (f), (g), and (n); and NYC Admin. Code 10-303 (a)(2), and (a)(9);

- Reasonable statutory attorney's fees, under 42 U.S.C. § 1988 and any other applicable law, costs and disbursements;

- Compensatory damages against New York City, New York for the presumed constitutional harms suffered by Plaintiff, in at least a nominal amount; and

- Grant such further, different, and alternative relief as the Court deems just and proper.

Respectfully submitted,

Dated: September 25, 2022
　　　 Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiff*

_____/s/_____
Amy L. Bellantoni (AB3061)
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com
(914) 367-0090 (t)
(888) 763-9761 (f)