UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ALAN TAVERAS,

                      Plaintiff,                          Case No.: 20 Civ. 1200 (KPF)

           -against-


NEW YORK CITY, New York,
KEECHANT SEWELL, in her Official
Capacity as NYPD Police Commissioner,

                      Defendants.
-------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**


**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiff*
**2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................. 1

LEGAL STANDARD...................................................................................................... 3

*The Second Amendment* .............................................................................................. 3

*The Test to be Applied in Second Amendment Challenges* .......................................... 4

*The Historical Time Period That Determines This Nation's Traditions of Firearm Regulation*.................................................................................................... 5

*The Challenged New York City Regulations*................................................................ 6

ARGUMENT ................................................................................................................... 7

I.  PLAINTIFF HAS SATISFIED HIS BURDEN UNDER THE BRUEN TEST: PLAINTIFF'S CONDUCT IS 'PRESUMPTIVELY PROTECTED' BY THE PLAIN TEXT OF THE SECOND AMENDMENT.................................................................................................... 8

II.  THE BURDEN TO JUSTIFY THE CHALLENGED REGULATIONS RESTS SQUARELY ON DEFENDANTS' SHOULDERS.................................................................................... 8

III.  *BRUEN* REJECTED 'MAY ISSUE' DISCRETIONARY LICENSING SCHEMES ........... 9

      A. New York City's Discretionary Licensing Scheme is Unconstitutional................ 10

      B. New York City's Licensing Scheme is an Unconstitutional Pretext ..................... 11

           New York Administrative Code Title 10, Chapter 3 ....................................... 12

           NYC Admin. Code 10-303(a)(2) and (9)........................................................ 13

           38 RCNY 1-05 ............................................................................................... 14

           38 RCNY 3-03: Grounds for Denial of Rifle/Shotgun Permit ........................ 14
              Subsection (a)......................................................................................... 15
              Subsection (f) .......................................................................................... 16
              Subsection (g) ......................................................................................... 16
              Subsection (n) ......................................................................................... 16

IV. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ..... 17

V. DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED...................................... 19

      A. Plaintiff Has Standing to Challenge Each Regulation ........................................ 19

      B. Plaintiff's Claims Are Not Moot......................................................................... 21

CONCLUSION.................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abekassis v. New York City, New York*,
2021 WL 852081 (2d Cir. Mar. 4, 2021).................................................................. 22

*Amnesty Am. V. Town of W. Hartford*,
361 F.3d 113 (2d Cir. 2004) ......................................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ......................................... 7

*Anilao v Spota*,
340 F Supp 3d 224 (EDNY 2018) .......................................................................... 7, 8

*Benton v. Maryland*,
395 U.S. 784 (1969) ....................................................................................................... 5

*Bliss v. Commonwealth*,
12 Ky. 90 (1822)........................................................................................................... 18

*City of Mesquite v. Aladdin's Castle, Inc.*,
455 U.S. 283 (1982) ..................................................................................................... 22

*Crawford v. Washington*,
541 U.S. 36 (2004) ......................................................................................................... 5

*D.C. v. Heller*,
554 U.S. 570 (2008) ....................................................................................................... 3

*Duncan v. Louisiana*,
391 U.S. 145 (1968) ....................................................................................................... 6

*Fulton v. City of Philadelphia*,
141 S.Ct. 1868 (2021)..................................................................................................... 5

*Gamble v. United States*,
139 S.Ct. 1960 (2019)..................................................................................................... 5

*Gonzalez v. City of Schenectady*,
728 F.3d 149 (2d Cir. 2013) ......................................................................................... 7

*Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*,
565 U.S. 171 (2012) ....................................................................................................... 5

i

# TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Huminski v. Corsones,*
   396 F.3d 53 (2d Cir. 2005) ........................................................................................ 7

*In re Oliver,*
   333 U.S. 257 (1948) .................................................................................................. 5

*Klopfer v. North Carolina,*
   386 U.S. 213 (1967) .................................................................................................. 5

*Lynch v. Donnelly,*
   465 U.S. 668 (1984) .................................................................................................. 5

*McDonald v. Chicago,*
   561 U.S. 742 (2010) ............................................................................................. 3, 4

*Near v. Minnesota,*
   283 U.S. 697 (1931) .................................................................................................. 5

*Nevada Comm'n on Ethics v. Carrigan,*
   564 U.S. 117 (2011) .................................................................................................. 5

*NYSRPA v. Bruen,*
   142 S. Ct. 2111 (2022) ....................................................................................Passim

*Plutzer on behalf of Tharanco Grp., Inc. v. Bankers Tr. Co. of S. Dakota,*
   2022 WL 17086483 (2d Cir. Nov. 21, 2022) ......................................................... 19

*Powell v. Alabama,*
   287 U.S. 45 (1932) .................................................................................................... 5

*Ramos v. Louisiana,*
   140 S.Ct. 1390 (2020) ............................................................................................... 5

*Reynolds v. United States,*
   98 U.S. 145 (1878) .................................................................................................... 5

*Shuttlesworth v. City of Birmingham, Ala.,*
   394 U.S. 147 (1969) .................................................................................................. 9

*Staub v. City of Baxley,*
   355 U.S. 313 (1958) .................................................................................................. 9

## TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Taveras v. New York City, New York,*
2021 WL 185212 (S.D.N.Y. Jan. 17, 2021) ............................................................ 21

*Thole v. U.S. Bank N.A.,*
140 S. Ct. 1615 (2020) ............................................................................................ 20

*Timbs v. Indiana,*
139 S.Ct. 682 (2019) ................................................................................................ 6

*United States v. Cruikshank,*
92 U.S. 542 (1876) ............................................................................................ 3, 18

*Virginia v. Moore,*
553 U.S. 164 (2008) ................................................................................................. 5

*Washington v. Texas,*
388 U.S. 14 (1967) ................................................................................................... 6

*Weyant v. Okst,*
101 F.3d 845 (2d Cir. 1996) ..................................................................................... 7

*Wilson v. Arkansas,*
514 U.S. 927 (1995) ................................................................................................. 5

*Wyoming v. Houghton,*
526 U.S. 295 (1999) ................................................................................................. 5

**Statutes**

18 USC § 922(g) ........................................................................................................ 15
NY Gen. Bus. Law § 898 ........................................................................................... 11
NYS Criminal Procedure Law § 160.50 ..................................................................... 15

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................. 7

**Regulations**

27 C.F.R. 478.11 ....................................................................................................... 16
38 RCNY 1-05 ..................................................................................................... 12, 14
38 RCNY 1-05(a) ................................................................................................. 10, 14
38 RCNY 1-05(k) ................................................................................................. 10, 14

# TABLE OF AUTHORITIES (con't)

**Page(s)**

**Regulations**

38 RCNY 3-03 ..................................................................................................Passim
NYC Admin. Code Title 10, Chapter 3 ............................................................. 12
NYC Code Title 10, Chapter 3 ......................................................................... 12
NYC Code § 10-302.1 (a).......................................................................... 12, 20
NYC Admin. Code § 10-303(2) and (9) ..........................................................Passim
NYC Admin. Code § 10-304(a).................................................................. 12, 13
NYC Code § 10-306 ......................................................................................... 13
NYC Admin. Code § 10-310 ..................................................................... 13, 19

## PRELIMINARY STATEMENT

Plaintiff, Alan Taveras, by and through his attorneys, submits the within Memorandum of Law, accompanying Local Rule 56.1 Statement of Undisputed Material Facts, Declaration of Alan Taveras with annexed exhibits, and Declaration of Amy L. Bellantoni with annexed exhibit, in support of Plaintiff's Cross-Motion for Summary Judgment and in opposition to Defendants' Motion to Dismiss.

There are no genuine issues of material fact to be decided, warranting judgment in Plaintiff's favor as a matter of law. The New York City firearm[1] regulations challenged in this action violate the Second and Fourteenth Amendments and cannot pass the *Bruen* test because (i) Plaintiff's conduct is presumptively protected by the plain language of the Second Amendment; (ii) the regulations are inconsistent with this Nation's historical traditions of firearm regulation; and (iii) New York City's discretionary  licensing scheme for the purchase, possession, and transfer of rifles, shotguns, ammunition, and ammunition feeding devices is impermissibly discretionary.

Defendants' Motion to Dismiss should be denied because Plaintiff has Article III standing to challenge (i) the regulations underlying the denial of his Rifle/Shotgun License, (ii) the requirement that he be subject to a discretionary licensing scheme; and (iii) having to seek and obtain a license in the first instance – a burden that no individual in the Founding Era bore.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[2]

Alan Taveras ("Plaintiff") is over the age of 21 and has no prohibitors to the possession, purchase, receipt, or transfer of firearms under state or federal law. See, Rule 56.1 Statement at ¶¶

---

[1] The term "firearm," as used herein, encompasses handguns, rifles, and shotguns generally.
[2] The facts material to the Court's determination of the legal issues in this matter are contained in Plaintiff's accompanying Statement of Undisputed Material Facts pursuant to Local Rule 56.1.

1-2. Plaintiff has never been convicted of a crime or any violation of the New York State Penal Law and is a law-abiding member of the community. *Id.* at ¶ 3.

Plaintiff applied to the NYPD License Division ("License Division") for a permit to possess rifles and shotguns for self-defense, which was denied on April 18, 2018. *Id.* at ¶¶ 4, 11. Plaintiff timely filed an internal appeal of the denial of his permit, which was also denied. *Id.* at ¶¶ 12-13. The License Division denied Plaintiff's application based on false allegations by an ex-girlfriend over 7 years prior to his application. *Id.* at ¶¶ 11, 13. The charges were dismissed and sealed. *Id.* at ¶ 10. During the application process, Plaintiff informed the License Division that the allegations were false and that he had not committed any offense. *Id.* at ¶ 8. Specifically, Plaintiff informed the License Division at Question #19, "On 08/11/2011, I was arrested on a fabricated complaint of assault on an ex-girlfriend who was angry that I ended our relationship (detailed explanation follows in #23)…On 11/14/2011, the court dismissed and sealed the entire criminal complaint." Plaintiff further denied the allegations in Question #23 of the application. *Id.* at ¶ 9.

Contrary to the City's representations to this Court, Plaintiff did not receive, nor does he hold, a rifle/shotgun permit. *Id.* at ¶¶ 15-19.

Defendants violated Plaintiff's Second and Fourteenth Amendment rights by denying his application for a rifle/shotgun license in 2018 through the enforcement of NYC Administrative Code 10-303(2) and (9), and 38 RCNY 3-03(a), (f), (g) and (n). *Id.* at ¶ 13.

Defendants are continuing to violate Plaintiff's Second and Fourteenth Amendment rights by enforcing a discretionary and subjective licensing scheme – the violation of which results in criminal penalties.

## LEGAL STANDARD

### *The Second Amendment*

The Second Amendment to the United States Constitution declares:

> "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

The Second Amendment does not *grant* the right to possess and carry weapons to protect oneself, it protects the preexisting right.[3] "…it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing right*. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed." it prohibits the government from infringing upon the basic, fundamental right of the individual to keep and bear arms for self-defense in the event of a violent confrontation. *Heller*, at 592 (emphasis supplied); accord, *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. (2016).

"Individual self-defense is *the central component* of the Second Amendment right." *McDonald*, at 767, citing, *Heller*, at 599 (internal quotations omitted); *Heller*, at 595-599, 628.

The Second Amendment is "deeply rooted in this Nation's history and tradition" and fundamental to our scheme of ordered liberty". *McDonald*, at 768.

---

[3] *D.C. v. Heller*, 554 U.S. 570, 592 (2008) ("[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed (quoting, *United States v. Cruikshank*, 92 U.S. 542, 553 (1876)).

***The Test to be Applied in Second Amendment Challenges***

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court reaffirmed the standard to be used by the courts to determine a Second Amendment challenge.

> "In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution **presumptively protects** that conduct.
>
> To justify its regulation, the government may not simply posit that the regulation promotes an important interest.
>
> Rather, the **government must demonstrate** that the regulation is consistent with this Nation's historical tradition of firearm regulation. **Only if** a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*NYSRPA V. Bruen*, 142 S. Ct. 2111, 2126 (2022) (citation omitted).[4]

The *Bruen* Court confirmed that the test created by the circuit courts was "inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny." *Bruen*, at 2129–30. To tighten the reigns on the lower courts' adjudication of Second Amendment challenges the *Bruen* Court emphasized for the second time in its written opinion:

> "We **reiterate** that the standard for applying the Second Amendment is as follows:
>
> When the Second Amendments plain text covers an individual's conduct, the Constitution **presumptively protects** that conduct.
>
> The **government must then justify its regulation** by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

---

[4] 1  "Rather than begin with its view of the governing legal framework, the dissent chronicles, in painstaking detail, evidence of crimes committed by individuals with firearms. See post, at 2163-2168 (opinion of BREYER, J.). The dissent invokes all of these statistics presumably to justify granting States greater leeway in restricting firearm ownership and use. But, as Members of the Court have already explained, "[t]he right to keep and bear arms ... is not the only constitutional right that has controversial public safety implications." *McDonald v. Chicago*, 561 U.S. 742, 783, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (plurality opinion)." *Bruen*, 142 S. Ct. at 2126, n. 3.

*Bruen*, at 2129-2130 (emphasis added) (citation omitted).

***The Historical Time Period That Determines This Nation's Traditions of Firearm Regulation***

Consistent with Supreme Court jurisprudence on all other provisions of the Bill of Rights, *Bruen* looked to the Founding Era, the ratification of the Bill of Rights in 1791, as the "principal period for determining the scope or meaning of a provision of the Bill of Rights."[5]

Noting that "the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791," *Bruen* pointed to *Crawford v. Washington*, 541 U.S. 36, 42–50 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008) (Fourth Amendment); and *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (First Amendment). *Bruen*, at 2137–38 (emphasis added); see also, *Near v. Minnesota*, 283 U.S. 697 (1931) (First Amendment); *Reynolds v. United States*, 98 U.S. 145 (1878) (First Amendment); *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171 (2012) (First Amendment); *Fulton v. City of Philadelphia*, 141 S.Ct. 1868 (2021) (First Amendment); *Lynch v. Donnelly*, 465 U.S. 668 (1984) (First Amendment); *Wyoming v. Houghton*, 526 U.S. 295 (1999) (Fourth Amendment); *Wilson v. Arkansas*, 514 U.S. 927 (1995) (Fourth Amendment): *Benton v. Maryland*, 395 U.S. 784 (1969) (Fifth Amendment); *Gamble v. United States*, 139 S.Ct. 1960 (2019) (Fifth Amendment); *Ramos v. Louisiana*, 140 S.Ct. 1390 (2020) (Sixth Amendment); *Powell v. Alabama*, 287 U.S. 45 (1932) (Sixth Amendment); *Klopfer v. North Carolina*, 386 U.S. 213 (1967) (Sixth Amendment); *In re Oliver*, 333 U.S. 257 (1948) (Sixth Amendment); *Duncan v. Louisiana*, 391 U.S. 145 (1968) (Sixth

---

[5] See, Declaration of Amy L. Bellantoni  at Exhibit 1, Smith, Mark W., "Not All History Is Created Equal," October 1, 2022, pp. 11-15.

Amendment); *Washington v. Texas*, 388 U.S. 14 (1967) (Sixth Amendment); and *Timbs v. Indiana*, 139 S.Ct. 682 (2019) (Eighth Amendment).[6]

"Incorporated Bill of Rights guarantees are enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment. Thus, if a Bill of Rights protection is incorporated, there is no daylight between the federal and state conduct it prohibits or requires." *Timbs*, at 687.

**The Challenged New York City Regulations**

Plaintiff moves for summary judgment against New York City regulations that gave rise to the denial of his Rifle/Shotgun License: New York City Administrative Code 10-303(2), (9); and 38 RCNY 3-03 (a), (f), (g), and (n).

Plaintiff also challenges New York City's "may issue" licensing scheme for rifles, shotguns, ammunition, and ammunition feeding devices. The *Bruen* decision, reiterating that the right to possess arms is a guaranteed individual right and requiring the government to identify a historical analogue for firearm regulations to survive constitutional scrutiny, places New York City's entire rifle/shotgun licensing scheme on the table.

Long guns have been part of this nation's history since the colonists arrived and are, indisputably, 'arms' covered by the plain text of the Second Amendment. The free and unabridged possession, purchase, trading, and use of long guns is part of this Nation's history and tradition. No permission from the government, licensing, registration, or any other action was required (or even imagined) to exercise the preexisting right that was later codified in the Second Amendment. Indeed, the purpose of codifying the right to keep and bear arms and declaring that it "shall not be infringed"[7] was to prevent any encroachment of that right by the government.

---

[6] *Id.* at pp. 17-30.
[7] Infringe: encroach, limit, offend. https://www.merriam-webster.com/thesaurus/infringe

Plaintiff, who has no state or federal prohibitors to firearm possession, objects to having to seek government permission by way of a discretionary may-issue licensing scheme to engage in protected conduct – the right to purchase and possess rifles, shotguns, ammunition, and ammunition feeding devices for self-defense.

And because Defendants cannot satisfy their burden of identifying a Founding Era (1791) historical analogue to its regulations, which does not exist, Plaintiff is entitled to judgment on his claims as a matter of law.

## ARGUMENT

The standard for summary judgment is well-settled. A court may grant a motion for summary judgment only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Anilao v Spota*, 340 F Supp 3d 224, 245-246 (EDNY 2018) citing, Fed. R. Civ. P. 56(a), *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (internal quotations omitted). The moving party bears the burden of showing that he is entitled to summary judgment. *Id.* citing, *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).

The court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments. *Anilao v Spota*, 340 F Supp 3d at 245-246, citing, *Amnesty Am. V. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); see also, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Anilao v Spota*, 340 F Supp 3d at 245-246 (internal citations omitted).

## I.  PLAINTIFF HAS SATISFIED HIS BURDEN UNDER THE *BRUEN* TEST: PLAINTIFF'S CONDUCT IS 'PRESUMPTIVELY PROTECTED' BY THE PLAIN TEXT OF THE SECOND AMENDMENT

Under the test annunciated in *Bruen*, "When the Second Amendment's plain text covers an individual's conduct, the Constitution **presumptively protects** that conduct." *Bruen*, at 2129–30 (emphasis added). And "to the extent later history contradicts what the text says, the text controls." *Bruen*, at 2137.

The conduct regulated by the City - Plaintiff's possession of rifles and shotguns - is 'presumptively protected' by the plain text of the Second Amendment, which declares that the right to "keep and bear Arms shall not be infringed."

"As we explained in *Heller*, the textual elements of the Second Amendment's operative clause – 'the right of the people to keep and bear Arms, shall not be infringed' - guarantee the individual right to possess and carry weapons in case of confrontation." *Bruen*, at 2134 (internal citations and quotation marks omitted).

## II.  THE BURDEN TO JUSTIFY THE CHALLENGED REGULATIONS RESTS SQUARELY ON DEFENDANTS' SHOULDERS

"The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. **Only then** may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, at 2129-2130.

Because Plaintiff's conduct is "presumptively protected" by the plain text of the Second Amendment, under the *Bruen* test Defendants must "justify" the challenged regulations "by

demonstrating that [they are] consistent with the Nation's historical tradition of firearm regulation." *Bruen*, at 2129-2130.

Consistent with Supreme Court jurisprudence on its interpretation of all other provisions of the Bill of Rights, and continued in *Bruen*, this Court is constrained to historical traditions in and around the ratification of the Bill of Rights in 1791 as the "principal period for determining the scope or meaning of a provision of the Bill of Rights" because the scope of the protection applicable to the Federal Government and States is pegged to the "*public understanding*" of the Second Amendment right when the Bill of Rights was adopted in 1791. the public understanding of [the Second Amendment] after its ... ratification. *Bruen*, at 2136; Bellantoni Dec. Ex. 1 at pp. 4, 11-15, 26-27.

## III.  *BRUEN* REJECTED 'MAY ISSUE' DISCRETIONARY LICENSING SCHEMES

Permission from New York City under a 'may issue', discretionary licensing scheme before exercising the right to lawfully possess, purchase, transfer, and receive rifles, shotguns, ammunition, and ammunition feeding devices violates the Second and Fourteenth Amendments.

> "It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official - as by requiring a permit or license which may be granted or withheld in the discretion of such official - is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms."

*Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151 (1969) quoting, *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958).

"The vast majority of States - 43 by our count - are "shall issue" jurisdictions, where authorities **must issue** concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived

lack of need or suitability." *Bruen*, at 2123.[8] Only 6 states, including New York, are "may issue" licensing regimes under which authorities have ***discretion*** to deny licenses even when the applicant satisfies the statutory criteria. *Bruen*, at 2124 (emphasis added).

"Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so. Likewise, the 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense ***so long as those States employ objective licensing requirements like those used by the 43 shall-issue States***." *Bruen*, at 2162 (emphasis added).

Despite *Bruen*'s directive, New York City continues to enforce a discretionary "may issue" licensing scheme.

Moreover, there is no Founding Era requirement or historical analogue requiring people to seek and obtain permission from the government as a condition to exercising the rights to possess or carry rifles, shotguns, and/or their ammunition.

While under *Bruen* this burden of proof remains with Defendants, no historical analogue can or will be produced because regulations like those enforced by New York City are inconsistent with the plain text of the Amendment, which declares the "right to keep and bear Arms ***shall not be infringed***." see also, *Heller*, at 634 (A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all). And "to the extent later history contradicts what the text says, the text controls." *Bruen*, at 2137.

**A.  New York City's Discretionary Licensing Scheme is Unconstitutional**

Through the enforcement of 38 RCNY 1-05(a), (k); 38 RCNY 3 and NYC Admin. Code Title 10, the City implements a "may issue" discretionary and subjective licensing scheme for rifles, shotguns, and ammunition to deny licenses based on events and conditions that conflict with this Nation's historical tradition of firearm regulation.

---

[8] Even so, the Court cautioned 'shall issue' jurisdictions: "[t]hat said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Bruen*, at 2138, n. 9.

Under *Bruen*, New York City's entire licensing scheme for rifles, shotguns, ammunition, and ammunition feeding devices is unconstitutional, and should be declared unconstitutional and stricken.

What's more, "licensing" under the threat of criminal sanctions for both purchasers and gun stores in New York City is just that – a "scheme" – because state and federal laws already preclude the sale of firearms to prohibited individuals, as discussed immediately below. New York City's discretionary regulations prevent non-disqualified people, like Plaintiff, from exercising the right to keep and bear arms for self-defense.

### B.  New York City's Licensing Scheme is an Unconstitutional Pretext

Throughout New York State, ***every*** sale, purchase, or transfer of a firearm requires a federal background check through the NICS (National Instant Criminal Background Check System) system to be performed for every purchaser and transferee by a federal firearms licensee ("FFL") (i.e., gun store), unless the transfer is between immediate family members.[9] Any person who knowingly violates the provisions of Gen Bus. Law § 898 "shall be guilty of a class A misdemeanor" and subject to, among other criminal and civil penalties, up to 1 year in jail and $1,000 fine.

New York is also a NICS "point-of-contact" state, meaning that every FFL/gun store in New York State is required by federal law to contact NICS at the point of sale to perform a background check with every firearm purchase and/or transfer.[10]

State law prohibits both commercial and private transfers, sales, and receipts without a NICS check through an FFL; federal law prohibits FFLs from transferring a firearm to individuals who do not pass a NICS check[11]; and as of October 1, 2022, the FBI is required by law to report to state, local, or tribal law enforcement any transaction denied by NICS within 24 hours.[12]

---

[9] See, N.Y. Gen. Bus. Law § 898.
[10] https://www.fbi.gov/file-repository/nics-participation-map.pdf/view
[11] https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/nics
[12] https://le.fbi.gov/informational-tools/nics-denial-notifications-for-law-enforcement

Because prohibited individuals cannot lawfully acquire firearms in New York, Defendants' enforcement of a licensing scheme (NYC Admin. Code Title 10, Chapter 3; 38 RCNY 1-05; and 38 RCNY 3) only prevents ordinary people from exercising "guaranteed individual rights"[13] "presumptively protected"[14] by the Second and Fourteenth Amendments.

### New York Administrative Code Title 10, Chapter 3

NYC Code Title 10, Chapter 3, which regulates the purchase and possession of rifles, shotguns, and ammunition, is inconsistent with this Nation's historical tradition of firearm regulation.

Under NYC Code § 10-303, which prevents any firearms dealer from selling and/or transferring a rifle or shotgun to an individual who does not hold a Rifle/Shotgun License, precludes Plaintiff from purchasing and receiving a rifle or shotgun in New York City because he does not have a Rifle/Shotgun License.

NYC Code § 10-302.1 (a) prohibits the transfer and/or sale of more than one rifle or shotgun to any individual as part of the same sales transaction; and prohibits the transfer and/or sale of a rifle or shotgun to any individual if the dealer knows or should know that such individual has purchased a rifle or shotgun within the prior ninety days. Subsection (b) precludes Plaintiff from acquiring a rifle or shotgun within ninety days of previously purchasing the same.

NYC Code § 10-304(a) prohibits ordinary people from possessing any rifle or shotgun if they do not possess a R/S license **and** "a certificate of registration for such rifle or shotgun"; under subsection (b), the transfer or sale of a rifle or shotgun to an ordinary person who does not have a "certificate of registration" is prohibited. NYC Code § 10-304(a) is an absolute bar to Plaintiff's right to purchase, possess, transfer, and receive rifles, shotguns, and ammunition in New York City.

---

[13] *Heller*, at 592 (the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation.").

[14] *Bruen*, at 2126 ("In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution ***presumptively protects*** that conduct.") (emphasis added).

NYC Code § 10-306 prohibits ordinary people from purchasing and/or possessing ammunition, ammunition feeding devices, magazines, and clips if they do not hold both a R/S license and a certificate of registration **and** this section prevents FFLs/firearm dealers from selling and transferring ammunition, ammunition feeding devices, magazines, and clips to ordinary people if they do not hold both a R/S license and a certificate of registration. NYC Code § 10-306 is an absolute bar to Plaintiff's right to purchase, possess, transfer, and receive rifles, shotguns, and ammunition, ammunition feeding devices, magazines, and clips.

Under NYC Code § 10-310, ordinary people and FFLs (gun stores) who violate any of the provisions of sections 10-301 through 10-309 and the rules and regulations issued by the NYPD Police Commissioner pursuant thereto "shall be" guilty of a crime: $300 fine and 15 days in jail on the high end for the first violation and for each subsequent violation, a Class A Misdemeanor conviction with a fine up to $1,000 and/or up to 1 year in jail. But where the violator previously applied for and was denied a R/S License, like Plaintiff, the punishment shall be a conviction of a Class A Misdemeanor, fine up to $1,000, and up to 1 year in jail. See, NYC Code § 10-310. Under NYC Code § 10-310, Plaintiff is subjected to criminal penalties for engaging in conduct protected by the Second and Fourteenth Amendments. And the criminal penalties imposed against FFLs (gun stores) under this regulation also preclude Plaintiff from any such purchase.

### NYC Admin. Code 10-303(a)(2) and (9)

New York City Administrative Code 10-303(a)(2) and (9) are discretionary factors in New York City's "***shall not issue***" licensing scheme.

10-303 requires the denial of a Rifle/Shotgun permit if the License Division feels that the applicant "is not of good moral character" [10-303(a)(2)] and/or if "good cause exists for the denial of the permit" [10-303(a)(9)].

Subsections (a)(2) and (9) are subjective, discretionary factors used to prevent an individual with no state or federal prohibitors from possessing firearms for self-defense, are inconsistent with this Nation's historical traditions of firearm regulation and violate the Second Amendment. Through the enforcement of subsections (a)(2) and (9), Plaintiff's right to purchase, possess,

transfer, and receive rifles, shotguns, and ammunition, ammunition feeding devices, magazines, and clips was violated and continues to be violated.

## 38 RCNY 1-05

38 RCNY 1 regulates firearm dealers in rifles and shotguns. 38 RCNY 1-05(a) prevents any federal firearms licensee/FFL (gun store) from selling any rifle or shotgun unless the purchaser "is authorized by law to possess such rifle or shotgun." 38 RCNY 1-05(k) prohibits firearm dealers from selling, transferring, or otherwise disposing of rifle or shotgun ammunition to any person who has not been issued a rifle/shotgun permit and a certificate of registration who does not exhibit the same to the dealer at the time of purchase.

Plaintiff is authorized by state and federal law to purchase firearms, but no NYC FFL can or will sell Plaintiff a rifle, shotgun, or ammunition without a NYC rifle/shotgun permit – even though every FFL is required to perform a NICS background check[15], which Plaintiff would pass.

## 38 RCNY 3-03: Grounds for Denial of Rifle/Shotgun Permit

Under NYC Admin. Code 10-303(a)(2) and (9), the License Division has the discretion to decide whether or not an applicant has "good moral character" and if there is "good cause" to deny the application.

38 RCNY 3-03 identifies various factors to justify the denial of an application for lack of "good moral character" and/or "other good cause."

Plaintiff challenges subsections (a), (f), (g), and (n) of 38 RCNY 3-03, which require denial of a R/S license where the applicant (a) "has been arrested"; (f) "is the subject of an order of protection"; (g) "has a history of one or more incidents of domestic violence"; "(n) Other information demonstrates an unwillingness to abide by the law…a lack of concern for the safety of …other persons and/or for public safety, and/or other good cause for the denial of the permit."

---

[15] https://www.fbi.gov/how-we-can-help-you/need-an-fbi-service-or-more-information/nics/about-nics; https://www.fbi.gov/how-we-can-help-you/need-an-fbi-service-or-more-information/nics; https://www.fbi.gov/how-we-can-help-you/need-an-fbi-service-or-more-information/nics/national-instant-criminal-background-check-system-nics-appeals-vaf

Implementing NYC Admin. Code 10-303(a)(2) and (9), and 38 RCNY 3-03 (a), (f), (g), and (n), the City determined that Plaintiff lacked "good moral character" and otherwise found "good cause" to deny Plaintiff's application.

### Subsection (a)

A prior arrest "shall be" used by the City employee to determine whether the applicant has "good moral character" and whether "other good cause exists for denial" – even if the charges were dismissed, as they were in Plaintiff's case. In denying Plaintiff's application, the City considered allegations underlying a charge that was dismissed by the court and terminated "in favor of the accused" pursuant to New York State Criminal Procedure Law section 160.50[16] to decide whether Plaintiff has "good moral character" and/or whether there is "good cause" to deny his application. This factor calls for a subjective determination of an applicant's "moral character" and allows the government unfettered discretion to deny a presumptively protected constitutional right in violation of the Second and Fourteenth Amendments.

State and federal statutes already identify bright line, objective factors for disqualifying an individual from possessing and/or purchasing firearms, which include ***convictions*** of felony offenses and certain misdemeanors,[17,18] not merely an arrest.

Neither Congress nor the New York legislature included every criminal offense in the prohibited conviction category, meaning that those offenses that are not enumerated therein were specifically ***disregarded*** from the *sui generis* of offenses, in their opinions, that rise to the level of dangerousness warranting termination of a constitutionally protected right. Also excluded from the *per se* list are non-criminal violations and nuisance offenses. Generally speaking, the intent behind the prohibition statutes was to prevent people adjudicated as "dangerous" from possessing

---

[16] See Declaration of Alan Taveras at Ex. 1 and ¶ 10.
[17] See, 18 USC 922(g) [federal prohibitors].
[18] See, Penal Law sections 265.00(17) [listing serious offense misdemeanors]; 265.01(4) [barring possession of rifles and shotguns if convicted of a felony or serious offense misdemeanor]; and 400.00(1)(c) [barring issuance of a handgun license if convicted of felony or serious offense misdemeanor or under warrant of arrest for same].

firearms. Congress even excluded "white collar" felonies from the *per se* list.[19] Leaving aside the issue of whether state and federal prohibitions are consistent with this Nation's historical traditions of firearm regulation, even the *per se* list does not include an "arrest" alone.

### Subsection (f)

Subsection (f) requires the denial of an application if the applicant is the subject of an order of protection or a temporary order of protection. The City interprets and enforces subsection (f) to deny applications if the applicant ***has ever been*** the subject of an Order of Protection.

At the time of his application, Plaintiff was not the subject of an order of protection; there was no state or federal prohibition on Plaintiff's purchase or possession of firearms.  Taveras Dec. at ¶ 6.

### Subsection (g)

Under subsection (g), an application is denied if the applicant "has a history of one or more incidents of domestic violence." As with subsection (a), this is a discretionary and subjective factor, untethered to a prohibiting conviction, enforced to preclude Plaintiff's protected conduct.

### Subsection (n)

Under subsection (n), an application is denied if the License Division feels "other information demonstrates an unwillingness to abide by the law…a lack of concern for the safety of oneself and/or other persons  and/or for public safety, and/or other good cause for the denial of the permit." Plaintiff's application was denied under subsection (n) because the License Division felt – based on allegations unsupported by any conviction – that "the serious nature of these incidents raise safety concerns for [Plaintiff] and others."

By enforcing the challenged regulations, Defendants have precluded, and continue to preclude, Plaintiff's ability to engage in conduct presumptively protected by the Second and Fourteenth Amendments.

---

[19] See, 921(a)(20)(A) (a 'crime punishable by imprisonment for a term exceeding one year' does not include . . . any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices."); see also, 27 C.F.R. 478.11.

Under the *Bruen* test, Defendant alone has the burden of proving that the regulations enumerated herein are consistent with this Nation's historical traditions of firearm regulation by identifying a historical analogue from the Founding Era (1791).

Plaintiff submits that no such analogue exists because the challenged regulations are entirely inconsistent with this Nation's traditional history of firearm regulation.

## IV.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW

The material facts are undisputed. Plaintiff applied to the New York City Police Department License Division for a R/S License and was denied under 38 RCNY 3-03 (a), (f), (g), and (n) and NYC Admin. Code 10-303 (a)(2), (9).[20] The remaining challenged regulations are an absolute bar to the exercise of his right to possess, purchase, transfer, and/or receive rifles, shotguns, ammunition, ammunition feeding devices, magazines, and clips.

First, firearm licensing did not exist in the Founding Era. No one was required to take any action or seek/obtain permission from the government before possessing, purchasing, and/or carrying weapons, including long guns. The plain text of the Second Amendment guarantees[21] the free exercise of that right with its unconditional declaration that the right "shall not be infringed." The Amendment does not say "shall not be infringed after obtaining permission from the government." The Bill of Rights was created to **prevent** the government from interfering with preexisting human rights – not to **give** the government power. "As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L.Ed. 588 (1876), "[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ...." *Heller*, at 592.

---

[20] Taveras Dec., Ex. 3.
[21] *Heller*, at 592 ("Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation.").

Firearm regulations did not appear well after the ratification of the Bill of Rights in 1791. *Bliss v. Commonwealth*, 12 Ky. 90 (1822), involved restrictions on handguns, not long guns; even there, the regulation was limited *concealed* carry, not all carry.

Licensing requirements are even further removed from 1791, and thus "do not provide as much insight into [the Amendment's] original meaning as earlier sources. *Bruen*, at 2137 citing, *Heller*, at 614 (referring to post-Civil War discussions of the right to keep and bear arms, which took place 75 years after the ratification).

Second, notwithstanding the absence of any licensing requirements in the Founding Era, *Bruen* was not a blanket approval of licensing schemes. The Court simply allowed "the 43 states that employ objective shall-issue licensing regimes" to continue to exist solely because they "contain only narrow, objective, and definite standards…rather than requiring the appraisal of facts, the exercise of judgment, and the formation of an opinion" like New York City's "may-issue" licensing regimes. *Bruen*, at 2138, 2162. That said, the *Bruen* Court warned that even "shall-issue" regimes may be found unconstitutional because "any permitting scheme can be put toward abusive ends…" *Bruen*, at 2138.

The *Bruen* Court specifically conditioned the survival of "may-issue" licensing schemes on the implementation of "objective licensing requirements like those used by the 43 shall-issue States." *Bruen*, at 2162.

But New York City's regulations employ discretionary and subjective factors, in violation of the Second and Fourteenth Amendment and, therefore, they are unconstitutional.

Third, *Bruen* simply reiterated the scope of the Second Amendment that was previously declared in *Heller*: "As we explained in *Heller*, the "textual elements" of the Second Amendment's operative clause - "the right of the people to keep and bear Arms, shall not be infringed" -

"guarantee the individual right to possess and carry weapons in case of confrontation." *Bruen*, at 2134 quoting, *Heller*, at 592.  In spite of the plain text of the Second Amendment, and the historical analysis and holdings in *Heller, McDonald* and *Caetano*, New York City continues to deprive people with no state or federal disqualifiers to firearm possession, like Plaintiff, from exercising the basic right to possess and purchase firearms for self-defense.

The challenged regulations are contemporary control measures that contradict the plain text of the Second Amendment. And "where later history contradicts what the text says, the text controls." *Bruen*, 142 S. Ct. at 2137.

Last, regulations that impose criminal sanctions against ordinary people who engage in protected conduct - the purchase, possession, transfer, and receipt, of rifles, shotguns, ammunition, and ammunition feeding devices – like NYC Admin. Code 10-310, have no historical analogue in the Founding Era.

## V. DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED

### A.  Plaintiff Has Standing to Challenge Each Regulation

To establish standing under Article III, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief. *Plutzer on behalf of Tharanco Grp., Inc. v. Bankers Tr. Co. of S. Dakota*, No. 22-561-CV, 2022 WL 17086483, at *1 (2d Cir. Nov. 21, 2022) quoting, *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020).

Defendants press the flawed theory that Plaintiff lacks standing to challenge any regulation that did not factor into the denial of his R/S License application.[22] [Defendants' Memorandum of Law at pp. 2-3].

First, Plaintiff challenges the very type of scheme that the Supreme Court in *Bruen* declared to be unconstitutional[23] - New York City's permission-based, "may issue", discretionary licensing requirement for rifles, shotguns, ammunition, and ammunition feeding devices.

*Bruen*'s rejection of "may issue" licensing schemes as violative of the Second and Fourteenth Amendments entitles Plaintiff to challenge the enforcement of such scheme. Plaintiff subjected himself to the licensing process and continues to be harmed by Defendants' enforcement of a "may issue" licensing scheme and criminal sanctions for violators.

Second, rifles, shotguns, ammunition, and ammunition feeding devices were not "licensed" in the Founding Era; Defendants cannot survive the *Bruen* test because no historical analogue exists to justify its licensing scheme.

Plaintiff is being forced to choose between engaging in protected conduct – purchasing and possessing rifles, shotguns, ammunition, and ammunition feeding devices - and facing criminal and civil penalties; he cannot freely exercise his presumptively protected rights because of Defendants' discretionary licensing scheme and corresponding criminal sanctions.

Plaintiff has Article III standing because he is suffering (i) an injury in fact that is concrete, particularized, actual; (ii) caused by New York City; and (iii) his injury would be redressed by judicial relief in the form of striking New York City's unconstitutional regulations.

---

[22] Defendants seek to dismiss Plaintiff's challenges to the following regulations: NYC Admin. Code § 10-302.1, 10-303(a)(1), (3) through (8), and (b) through (h), 10-306 (a), (b) and (e) through (h), 38 RCNY§ 3-03 subsections (a) through (e) and (h) through (n), as well as the entirety of 38 RCNY 3 (except 3-03, which was relied upon to deny Plaintiff's application). [Defendants' Memorandum of Law at pp. 2-3].

[23] See, Section III, supra.

Defendants cannot rely on this Court's prior ruling in this case, *Taveras v. New York City, New York*, No. 20 CIV. 1200 (KPF), 2021 WL 185212 (S.D.N.Y. Jan. 17, 2021)[24], vacated by Summary Order of the Second Circuit on July 12, 2022; the Circuit's remand directs this Court to "reconsider Taveras's claim, applying in the first instance the standard articulated by the Supreme Court in *Bruen*." *Taveras*, at *1.

### B. Plaintiff's Claims Are Not Moot

Defendants present no evidence in admissible form to support their claim that Plaintiff possesses a New York City R/S License, which he does not. And without a R/S License, Plaintiff cannot purchase, possess, receive, or transfer rifles, shotguns, ammunition, and ammunition feeding devices in New York City.

Counsel's Declaration does not aver that it is based on personal knowledge, or that she has personal knowledge that a R/S License was issued to Plaintiff or that he ever received it, and no other affidavits or declarations were submitted to support Defendants' claims.

But the Declaration of Alan Taveras avers that he read counsel's Declaration, and he has never received any R/S License, nor has he been contacted by the License Division since his application was denied in 2018. Taveras Dec. at ¶¶ 15-17.

What's more, Plaintiff never reapplied for a R/S License after he was denied, so there was no application pending with the License Division and no application for Defendants to approve.[25] This action also does not seek injunctive relief to compel Defendants to issue Plaintiff a R/S License.[26]

---

[24] *Taveras v. New York City, New York*, No. 20 CIV. 1200 (KPF), 2021 WL 185212 (S.D.N.Y. Jan. 17, 2021), vacated and remanded, No. 21-398, 2022 WL 2678719 (2d Cir. July 12, 2022).
[25] Taveras Dec. at ¶ 19.
[26] Taveras Dec. at ¶ 20; ECF No. 34.

Plaintiff would have rejected Defendants' unilateral issuance of a Rifle/Shotgun License until the adjudication of the claims in his Complaint because, among other reasons, Defendants should not be able to moot his challenges to New York City's unconstitutional regulations by the arbitrary issuance of a license, as they have done in other cases challenging their firearm regulations. See, *Abekassis v. New York City, New York*, No. 20-3038, 2021 WL 852081 (2d Cir. Mar. 4, 2021), cert. denied sub nom. *Abekassis v. City of New York, New York*, 211 L. Ed. 2d 183, 142 S. Ct. 344 (2021). The License Division spontaneously and unilaterally issued a handgun license to Mr. Abekassis, who they deemed 'ineligible' to possess firearms and denied, shortly before the City's responsive brief was due in the Second Circuit. See also, *E.H. v. New York City*, 21 Civ. 5454 (KPF), which was resolved by issuance of a license to the plaintiff whom the License Division previously denied as ineligible to possess firearms.

Plaintiff also objects to being "licensed" in the first instance, which places him under the discretionary and subjective control of the License Division, subject to discretionary suspension and revocation – a burden that no one in this country bore in the Founding Era.

Even if Plaintiff did hold a R/S License from the City, which he does not, Defendants' pattern of unilaterally issuing licenses to applicants previously denied under the challenged regulations cannot continue to be sanctioned.

While it is "well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" [*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)] the City has not ceased to enforce its discretionary licensing scheme and should not evade constitutional review through the unilateral issuance of a license after a lawsuit has been filed.

**CONCLUSION**

Based on the foregoing, Plaintiff's motion for summary judgment should be granted in its entirety; Defendants' Motion to Dismiss should be denied in its entirety; and this Court should grant such other, further, and different relief as the Court may deem just and proper.

Dated: January 13, 2023
      Scarsdale, New York

                                THE BELLANTONI LAW FIRM, PLLC
                                *Attorneys for Plaintiff, Alan Taveras*

                                _____/s/_____
                                Amy L. Bellantoni (AB3061)
                                2 Overhill Road, Suite 400
                                Scarsdale, New York 10583
                                abell@bellantoni-law.com