

January 19, 2023

**VIA ECF**

Hon. Katherine Polk Failla
United States District Judge
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

      Re:    Taveras v. New York City, et al.
                 20 Civ. 01200 (KPF)

Your Honor,

      I represent the plaintiff, Alan Taveras, in the above-referenced matter. I write in response to the Court's denial of Plaintiff's Cross-Motion for Summary Judgment for not first filing a pre-motion letter.

      Plaintiff notes that the Court's Individual Rules do not require a pre-motion letter for cross-motions. Considering the absence of any such requirement, the City's failure to file a pre-motion letter before filing its Motion to Dismiss (in which Plaintiff would have addressed its intention to cross-move for summary judgment), and the judicial economy of encompassing both motions into one, Plaintiff proceeded with his Cross-Motion for Summary Judgment in opposing Defendants' Motion to Dismiss.

      As the Court is aware, Plaintiff's Complaint challenges New York City's discretionary licensing scheme for rifles and shotguns, as well as the individual regulations that led to the denial of Plaintiff's application for a Rifle/Shotgun License.[1]

      Plaintiff is entitled to summary judgment for violations of his Second and Fourteenth Amendment rights arising from (i) the regulations giving rise to the denial of his application for a Rifle/Shotgun License[2]; and (ii) New York City's discretionary "may issue" licensing scheme, which precludes the sale, purchase, transfer, and receipt of rifles, shotguns, ammunition, and ammunition feeding devices to anyone without a Rifle/Shotgun License, the violation of which constitutes a crime punishable by incarceration and other criminal sanctions.

---

[1] Defendants move to dismiss only some, but not all, of Plaintiff's claims. Specifically, Defendants do not seek to dismiss Plaintiff's challenges to NYC Administrative Code 10-303(2), (9); and 38 RCNY 3-03(f), (g).

[2] The New York City regulations that gave rise to the denial of Plaintiff's Rifle/Shotgun License are NYC Administrative Code 10-303(2), (9); and 38 RCNY 3-03 (a), (f), (g), and (n).

2 Overhill Road, Suite 400            *info@bellantoni-law.com*            (914) 367-0090 (t)
Scarsdale, New York 10583            www.bellantoni-law.com            (888) 763-9761 (f)

There are no genuine issues of material fact to be decided: Plaintiff applied for and as denied a Rifle/Shotgun License and Plaintiff remains subject to New York's discretionary licensing scheme; without a license he cannot purchase, possess, receive, or transfer rifles, shotguns, ammunition, or ammunition feeding devices.

Under the test annunciated in *NYSRPA v. Bruen*[3], "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, at 2129–30 (emphasis added). And "to the extent later history contradicts what the text says, the text controls." *Bruen*, at 2137.

The conduct regulated by the City - Plaintiff's possession of rifles and shotguns - is 'presumptively protected' by the plain text of the Second Amendment, which declares that the right to "keep and bear Arms shall not be infringed."

"As we explained in *Heller*, the textual elements of the Second Amendment's operative clause – 'the right of the people to keep and bear Arms, shall not be infringed' - guarantee the individual right to possess and carry weapons in case of confrontation." *Bruen*, at 2134 (internal citations and quotation marks omitted).

"The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, at 2129-2130.

Because Plaintiff's conduct is "presumptively protected" by the plain text of the Second Amendment, under the Bruen test Defendants must "justify" the challenged regulations "by demonstrating that [they are] consistent with the Nation's historical tradition of firearm regulation." *Bruen*, at 2129-2130.

Consistent with Supreme Court jurisprudence on its interpretation of all other provisions of the Bill of Rights, and continued in Bruen, this Court is constrained to historical traditions in and around the ratification of the Bill of Rights in 1791 as the "principal period for determining the scope or meaning of a provision of the Bill of Rights" because the scope of the protection applicable to the Federal Government and States is pegged to the "public understanding" of the Second Amendment right when the Bill of Rights was adopted in 1791. the public understanding of [the Second Amendment] after its ... ratification. *Bruen*, at 2136.

Permission from New York City under a 'may issue', discretionary licensing scheme before exercising the right to lawfully possess, purchase, transfer, and receive rifles, shotguns, ammunition, and ammunition feeding devices violates the Second and Fourteenth Amendments.

"It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official - as by requiring a permit or license which may be granted or withheld in the discretion of such official - is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151 (1969) quoting, *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958).

---

[3] 142 S. Ct. 2111 (2022).

"The vast majority of States - 43 by our count - are "shall issue" jurisdictions, where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Bruen*, at 2123. Only 6 states, including New York, are "may issue" licensing regimes under which authorities have discretion to deny licenses even when the applicant satisfies the statutory criteria. *Bruen*, at 2124 (emphasis added).

"Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so. Likewise, the 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements like those used by the 43 shall-issue States." *Bruen*, at 2162 (emphasis added).

Despite *Bruen*'s directive, New York City continues to enforce a discretionary "may issue" licensing scheme. Moreover, there is no Founding Era requirement or historical analogue requiring people to seek and obtain permission from the government as a condition to exercising the rights to possess or carry rifles, shotguns, and/or their ammunition.

While under *Bruen* this burden of proof remains with Defendants, no historical analogue can or will be produced because regulations like those enforced by New York City are inconsistent with the plain text of the Amendment, which declares the "right to keep and bear Arms shall not be infringed." see also, *Heller*, at 634 (A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all). And "to the extent later history contradicts what the text says, the text controls." *Bruen*, at 2137.

The *Bruen* decision, reiterating that the right to possess arms is a guaranteed individual right and requiring the government to identify a historical analogue for firearm regulations to survive constitutional scrutiny, places New York City's entire rifle/shotgun licensing scheme on the table.

Very truly yours,

*Amy L. Bellantoni*
Amy L. Bellantoni

cc: Kerri Devine (VIA ECF)