UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALAN TAVERAS,

Plaintiff,

-v.-

NEW YORK CITY, NEW YORK, and KEECHANT
SEWELL, *in her official capacity as NYPD police
commissioner and all successors*,

Defendants.[1]

20 Civ. 1200 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Construed most expansively, this case is about whether the

constitutional right to keep and bear arms tolerates New York City's gun

control regime.  But today the Court's task is more limited:  It considers only

whether Plaintiff Alan Taveras — who now possesses the rifle/shotgun license

he was previously denied under that regime — is properly situated to ask that

question.  Because Plaintiff lacks standing to challenge certain provisions, and

lacks the ability to seek declaratory or injunctive relief as to other provisions,

the Court grants Defendants' motion to dismiss, and dismisses all of Plaintiff's

claims other than a subset of his claims for monetary damages.

---

[1]     The Clerk of Court is directed to amend the case caption to conform to the caption set
forth above.

## BACKGROUND[2]

### A.    Factual Background

The Court assumes familiarity with the facts, allegations, and procedural history of this case, which are recounted at length in its prior Opinion granting Defendants' first motion to dismiss.  *Taveras* v. *New York City*, No. 20 Civ. 1200 (KPF), 2021 WL 185212 (S.D.N.Y. Jan. 17, 2021) ("*Taveras I*").  Only the allegations relevant to the instant motion are summarized here, with particular attention paid to the new allegations in the Second Amended Complaint (the "SAC").

Plaintiff is a resident of Bronx County, New York.  (SAC ¶ 10).  On or about December 1, 2017, he applied to the New York City Police Department ("NYPD") License Division (the "License Division") for a license to possess a rifle and/or shotgun.  (*Id.* ¶ 15).  On April 18, 2018, the License Division denied Plaintiff's application because of his "arrest history, summons history and violent domestic violence history and Order of Protection history."  (*Id.* ¶ 18; *see also* Taveras Decl., Ex. B).

---

[2]     This Opinion draws its facts from the Second Amended Complaint (the "SAC" (Dkt. #34)), the well-pleaded allegations of which are taken as true for the purposes of this Opinion.  The Court sources additional facts from the Declaration of Alan Taveras and the exhibits thereto ("Taveras Decl." (Dkt. #45)), the Declaration of Nicole Berkovich and the exhibits thereto ("Berkovich Decl." (Dkt. #53)), and the Declarations of Kerri A. Devine and the exhibits thereto ("Devine Decl." (Dkt. #39) and "Devine Reply Decl." (Dkt. #54)).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #40); to Plaintiff's memorandum of law in opposition to Defendants' motion as "Pl. Opp." (Dkt. #48); and to Defendants' reply in further support of their motion as "Def. Reply" (Dkt. #52).

Plaintiff appealed the denial of his application for a rifle/shotgun license to the Appeals Unit of the License Division. (SAC ¶ 24). On November 28, 2018, the Appeals Unit denied Plaintiff's appeal by written notice. (*Id.* ¶ 25; *see also* Devine Decl., Ex. A). The notice affirmed that "good cause" exists for the denial because Plaintiff was involved in two domestic violence incidents in 2011 and was subject to an order of protection as a result. (Devine Decl., Ex. A). The notice acknowledged that the order of protection had since expired and that the charges against Plaintiff had ultimately been dropped, but concluded that "the serious nature" of the domestic violence incidents "raise safety concerns for [himself] and others." (*Id.*).

Plaintiff alleges that he has a "present intention and plan to purchase shotguns and rifles for all lawful purposes, including self-defense and ammunition for the same" (SAC ¶ 30), but cannot do so because of his lack of a rifle/shotgun license (*id.* ¶ 31; *see also* Taveras Decl. ¶ 16). Plaintiff further alleges that if he "exercises his right to purchase, possess, and carry rifles, shotguns, and their ammunition, he will be arrested and subject to incarceration, fines, and other criminal and civil penalties[,]" in contravention of his Second Amendment rights. (SAC ¶ 32).

On October 25, 2022, after Plaintiff filed the SAC, the NYPD issued Plaintiff a rifle/shotgun license. (Berkovich Decl. ¶ 2 & Ex. A). Due to a "technical error," the NYPD did not print and mail Plaintiff's license to him at that time. (*Id.* ¶ 2). On January 26, 2023, upon learning of the error, the

Director of the License Division mailed Plaintiff's license to him at the address listed on his application.  (*Id.* ¶ 4).

## B.    Procedural Background

On January 17, 2021, the Court granted Defendants' first motion to dismiss this action in full.  *See generally Taveras I*, 2021 WL 185212.  In so doing, the Court applied the then-prevailing two-step legal analysis to the statutes and regulations that were implicated by the denial of Plaintiff's application for a rifle/shotgun license, first finding that the challenged laws burdened Plaintiff's Second Amendment rights, and then determining that they withstood intermediate scrutiny because they were substantially related to the City's important interests in public safety and crime prevention.  *Id.* at *6-10.

Plaintiff timely appealed.  (Dkt. #26).  While the matter was pending before the Second Circuit, the Supreme Court decided *New York State Rifle & Pistol Association, Inc.* v. *Bruen*, 142 S. Ct. 2111 (2022), which abrogated the two-step approach for assessing the constitutionality of gun regulations, *id.* at 2127-28.  In the wake of *Bruen*, courts must now decide whether "the Second Amendment's plain text covers an individual's conduct."  *Id.* at 2129-30.  If it does, "the Constitution presumptively protects that conduct [and] [t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *Id.* at 2130.  "Because neither the district court nor the parties' briefs anticipated and addressed this new legal standard," the Second Circuit vacated the judgment and remanded the case "for the district court to reconsider Taveras's

4

claim, applying in the first instance the standard articulated by the Supreme

Court in *Bruen*." *Taveras* v. *New York City*, No. 21-398, 2022 WL 2678719, at

*1 (2d Cir. July 12, 2022) (summary order).  The Second Circuit's mandate

issued on August 2, 2022.  (Dkt. #28).

    The day after the case returned to this Court on remand, the Court

ordered the parties to submit a joint letter proposing next steps in the case.

(Dkt. #29).  On September 1, 2022, the Court adopted the parties' proposed

deadlines for Plaintiff to file an amended complaint and for Defendants to

answer or file a pre-motion letter.  (Dkt. #33).  Plaintiff filed the SAC on

September 25, 2022.  (Dkt. #34).  The Court subsequently granted Defendants'

request for an extension of time to respond to the SAC.  (Dkt. #36-37).

    On November 15, 2022, Defendants filed the papers for their motion to

dismiss the SAC.  (Dkt. #38-40).  The Court issued an order noting that the

motion filings violated both the Court's September 1, 2022 Order instructing

Defendants to file either an answer or a pre-motion letter and Rule 4(A) of the

Court's Individual Rules of Practice in Civil Cases, which requires pre-motion

submissions.  (Dkt. #41).  The Court cautioned the parties to "take care to

comply with [the Court's Individual Rules] going forward," but accepted the

submissions and set a schedule for the outstanding briefing.  (*Id.*).  On

December 20, 2022, the Court granted Plaintiff's request for additional time to

respond to the motion.  (Dkt. #42-43).

    On January 13, 2023, Plaintiff filed his opposition to the pending motion

to dismiss as well as a cross-motion for summary judgment and supporting

papers. (Dkt. #44-48). The Court denied Plaintiff's cross-motion for summary judgment without prejudice as to its renewal following the resolution of the motion to dismiss, both because Plaintiff's failure to file a pre-motion letter violated the Court's Individual Rules, and because it would only be necessary to address the merits issues presented in Plaintiff's summary judgment motion if the action proceeded beyond the motion to dismiss. (Dkt. #49). Plaintiff subsequently asked the Court to reconsider that denial (Dkt. #50), which request the Court denied (Dkt. #51). Defendants filed a reply memorandum and accompanying papers in further support of their motion on January 26, 2023. (Dkt. #52-54). The Court now resolves the motion to dismiss.

## DISCUSSION

### A.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova* v. *United States,* 201 F.3d 110, 113 (2d Cir. 2000). A defendant may move to dismiss a case for lack of subject matter jurisdiction based on a plaintiff's lack of Article III standing. *See Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016).

Challenges to subject matter jurisdiction under Rule 12(b)(1) can be either facial or fact-based. *Carter*, 822 F.3d at 56-57; *see also Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). A facial Rule 12(b)(1)

motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56.  A plaintiff opposing such a motion bears "no evidentiary burden," *id.*, and the court's task is to determine whether the complaint and its exhibits allege facts that "affirmatively and plausibly suggest" that the plaintiff has standing to sue, *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam).  In making that determination, the court must accept the complaint's allegations as true "and draw[] all reasonable inferences in favor of the plaintiff." *Carter*, 822 F.3d at 57 (internal quotation marks and citation omitted).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Carter*, 822 F.3d at 57; *see also MMA Consultants 1, Inc.* v. *Rep. of Peru*, 719 F. App'x 47, 49 (2d Cir. 2017) (summary order) (defining fact-based Rule 12(b)(1) motion as one where "the defendant puts forward evidence to challenge the factual contentions underlying the plaintiff's assertion of subject-matter jurisdiction").  "In opposition to such a motion, [the plaintiff] must come forward with evidence of [its] own to controvert that presented by the defendant, or may instead rely on the allegations in the [p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz*, 872 F.3d at 119 (internal citations and quotation marks omitted).  If a defendant supports its fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to

make findings of fact in aid of its decision as to subject matter jurisdiction."
*Carter*, 822 F.3d at 57.

### B. Plaintiff Lacks Standing to Challenge Those Provisions That Did Not Contribute to the Denial of His Application for a Rifle/Shotgun License

The Court previously determined that the NYPD's denial of Plaintiff's

application for a rife/shotgun license was based only on subsections (a)(2) and

(a)(9) of the New York City Administrative Code (the "NYCAC") Section 10-303

and subsections (f) and (g) of Title 38, Section 3-03 of the Rules of the City of

New York (the "RCNY").   *Taveras I*, 2021 WL 185212, at *4-5.  It proceeded to

consider Plaintiff's challenges to those provisions on the merits, but dismissed

Plaintiff's challenges to other laws and code provisions for lack of standing.

*Id.*[3]  Undeterred, Plaintiff again challenges numerous provisions of New York

City's gun regulation scheme, including the entirety of NYCAC Sections 10-

302.1, 10-303, and 10-306, as well as 38 RCNY Chapter 3.  (SAC, Prayer for

Relief).  In response, Defendants move to dismiss, on standing grounds,

Plaintiff's challenges to various local laws and rules that were not implicated by

the denial of Plaintiff's license application.

---

[3]     Although the Second Circuit vacated *Taveras I*, its Opinion focused only on the substantive change in Second Amendment law occasioned by the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc.* v. *Bruen*, 142 S. Ct. 2111 (2022).  It cast no doubt on the Court's original standing analysis.  *See generally Taveras* v. *New York City*, No. 21-398, 2022 WL 2678719 (2d Cir. July 12, 2022) (summary order).

### 1.      Applicable Law

Article III of the United States Constitution restricts federal courts to deciding "Cases" and "Controversies," and thereby limits federal jurisdiction to only those disputes that meet the "irreducible constitutional minimum" of standing.  *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To establish standing, a federal plaintiff must prove three elements:

> First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is [i] concrete and particularized; and [ii] actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of .... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id,* at 560-61 (citations and internal quotation marks omitted).  These core requirements are designed to ensure that the exercise of federal jurisdiction is consistent with separation of powers, limiting federal jurisdiction to those suits "traditionally thought to be capable of resolution through the judicial process."  *Valley Forge Christian Coll.* v. *Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (quoting *Flast* v. *Cohen,* 392 U.S. 83, 97 (1968)).

Standing is thus "the threshold question in every federal case."  *Ross* v. *Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008) (quoting *Denney* v. *Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)).  As the party invoking federal jurisdiction, the plaintiff bears the burden of proof on each element of standing.  *Spokeo, Inc.* v. *Robins,* 578 U.S. 330, 338 (2016).  "[E]ach element must be supported in the same way as any other matter on which the plaintiff

bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

Defendants challenge only the injury-in-fact component of standing. (*See* Def. Br. 2-5).  To establish an injury in fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).  Moreover, "[t]o establish standing to obtain prospective relief, a plaintiff 'must show a likelihood that he will be injured in the future.'" *Carver* v. *City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (quoting *Shain* v. *Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)).  To base standing on future injury, a plaintiff must show that he faces a "substantial risk" of injury, or that the threat of injury is "certainly impending." *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 158 (2014). "[A]llegations of *possible* future injury are not sufficient" to establish an injury in fact.  *Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal citation omitted).

### 2.  Plaintiff Has Not Established Past or Present Injury Under Certain NYCAC and RCNY Provisions

Plaintiff does not argue that the NYPD's 2018 denials of his now-issued rifle/shotgun license were based on any provisions other than NYCAC Section 10-303(a)(2) and (9) and RCNY Chapter 38, Section 3-03(f) and (g).  This reticence is wise, inasmuch as (i) Plaintiff's initial denial notice alludes only to those provisions, each of which grants the NYPD authority to deny applications for good cause, with both a history of domestic violence and being subject to a

protective order as bases for ineligibility (Taveras Decl., Ex. B), and (ii) the notice denying Plaintiff's appeal cites to them explicitly (Devine Decl., Ex. A; *see also* SAC ¶¶ 25-26).  The denial documents do not list any other bases for the NYPD's decisions.  By failing to plead that any other provisions contributed to the NYPD's denial of his application, Plaintiff has failed to satisfy his (admittedly light) pleading burden as to those provisions.  *See McMorris* v. *Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 300 (2d Cir. 2021).  The Court nonetheless reviews those challenged provisions for any connection to Plaintiff's injury.

To begin, Plaintiff does not adequately allege that he was harmed by NYCAC Section 10-302.1.  Titled "Preventing the diversion of firearms, rifles and shotguns to criminals," Section 10-302.1 primarily regulates dealers of firearms.  Subsections (a), (c), (d), and (e) limit the number of guns a dealer may sell to an individual in a single transaction or within a 90-day period, require dealers to contact the police department and licensing authorities before disposing of guns, and require dealers to keep records of every gun they dispose of.  *See* NYCAC § 10-302.1(a), (c)-(e).  Subsection (b) is the corollary of subsection (a) — it bars individuals from purchasing more than one firearm, rifle, or shotgun in a 90-day period.  *Id.* § 10-302.1(b).  The remaining subsections — (f), (g), (h), and (i) — define exceptions, exemptions, and penalties for violations of the previous subsubsections.  *Id.* § 10-302.1(f)-(i).  Plaintiff does not claim that he is a dealer of firearms, rifles, or shotguns, or that he sought to acquire more than one firearm, rifle, or shotgun within a 90-

day period.  Accordingly, he has failed to plead an injury-in-fact attributable to Section 10-302.1 and his challenge to that provision is dismissed in full.

For similar reasons, Plaintiff fails to allege that he was harmed by NYCAC Section 10-306.  That provision governs the disposition, purchase, and possession of ammunition and ammunition-feeding devices, specifically devices "capable of holding more than five rounds of rifle or shotgun ammunition." NYCAC § 10-306.  Certain subsections of the provision apply only to dealers of such devices.  *Id.* § 10-306(e), (h).  Plaintiff makes no allegations about his intent to purchase, possess, or sell covered ammunition-feeding devices, and thus his challenge to Section 10-306 is not cognizable.

Plaintiff also fails to plead that he suffered a cognizable injury due to NYCAC Section 10-303, except for subsections (a)(2) and (a)(9).  Section 10-303 governs rifle/shotgun licenses, including eligibility criteria, NYCAC § 10-303(a), (h); the application process, *id.* § 10-303(b)-(d); and license issuance, revocation, and suspension, *id.* § 10-303(e)-(g).[4]  The Court previously determined that Plaintiff had standing to challenge subsections (a)(2) and (a)(9), which deem ineligible for rifle/shotgun licenses persons who are "not of good moral character," *id.* § 10-303(a)(2), or for whom "good cause exists for the denial of the permit," *id.* § 10-303(a)(9), because they were the basis for the NYPD's 2018 denial of his license application.  *Taveras I*, 2021 WL 185212, at *4-5.  The Court also held previously that Plaintiff lacked standing to challenge

---

[4]     The NYCAC uses the term "permit" in lieu of "license."

subsections (a)(6) and (a)(7) (which deem ineligible persons subject to certain court orders), and (g) (which governs the revocation and suspension of licenses), because Plaintiff did not establish that these subsections were relevant to the NYPD's 2018 decision to deny his license application. *Taveras I*, 2021 WL 185212, at *4-5. Plaintiff gives the Court no reason to revisit those conclusions now. And Plaintiff's broad challenge to the remainder of Section 10-303 is unavailing: He does not plead that Defendants deemed him ineligible for a license based on any reason other than his domestic violence history; he does not allege that Defendants failed to follow the issuance procedures defined by the statute; and he does not allege that Defendants revoked or suspended his license once issued. Only Plaintiff's challenges to NYCAC Section 10-303(a)(2) and (a)(9) are cognizable in this action.

Similarly, Plaintiff lacks standing to challenge RCNY Title 38, other than subsections (f) and (g) of Section 3-03. To review, Chapter 3 of Title 38 codifies the City's rules regarding rifle/shotgun licenses. Section 3-03 lists grounds for denying such licenses, including that the applicant "is the subject of an order of protection or a temporary order of protection," 38 RCNY § 3-03(f), or "has a history of one or more incidents of domestic violence," *id.* § 3-03(g). Both subsections contributed to the 2018 denial of Plaintiff's license application, and he has standing to challenge them. But the balance of Chapter 3 is broadly sweeping and unrelated to Plaintiff's injury. For example, Section 3-06 governs license renewal, Section 3-09 regulates lost or stolen documents and guns, and Section 3-13 applies to the transfer of rifles and shotguns from an estate —

13

situations clearly not implicated by the present facts.  Plaintiff's "[m]ere objection or antipathy" to this broad array of gun regulations does not translate to an injury cognizable under Article III.  *See Libertarian Party of Erie Cnty.* v. *Cuomo,* 970 F.3d 106, 116 (2d Cir. 2020).

Finally, although Defendants do not move to dismiss Plaintiff's claims under NYCAC Sections 10-304(a)-(d) and 10-310 or RCNY Title 38 Section 1-05(a) and (k), the Court dismisses those claims for lack of standing as well. *See Cent. States Se. & Sw. Areas Health & Welfare Fund* v. *Merck-Medco Managed Care, L.L.C.,* 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte.*").  Plaintiff was not injured by NYCAC Sections 10-304(a)-(d) and 10-310 because they played no role in the denial of his license:  Section 10-304 requires possessors of rifles or shotguns to obtain a certificate of registration for such weapons, NYCAC § 10-304, and Section 10-310 makes it a misdemeanor to violate certain provisions of Sections 10-301 through 10-309, *id.* § 10-310.  Plaintiff does not allege that he was penalized for lack of registration or subjected to any criminal sanctions.  And Plaintiff was not injured by RCNY Title 38 Section 1-05(a) and (k), because those provisions regulate the conduct of dealers in firearms.  *See* 38 RCNY § 1-05(a) (barring the sale of rifles and shotguns to individuals not authorized to possess such weapons); *id.* § 1-05(k) (same for ammunition).  Plaintiff lacks standing to challenge these provisions.

Instead of arguing that he was actually harmed by each challenged provision of the NYCAC and RCNY, Plaintiff asserts that "*Bruen*'s rejection of 'may issue' licensing schemes [like New York City's] as violative of the Second and Fourteenth Amendments entitles Plaintiff to challenges the enforcement of such scheme." (Pl. Opp. 20).  In other words, Plaintiff claims that because he lives under a legal regime that he believes to be unconstitutional under recent Supreme Court precedent, he has standing to contest that regime *in toto*.  Unsurprisingly, Plaintiff does not cite a single case for this strikingly broad articulation of standing.

Plaintiff's theory turns standing doctrine on its head.  Taken to its logical conclusion, it would allow people to challenge any state or local law that they perceived to be unconstitutional, whether that law affected them or not.  In other words, it would transform our judiciary from an adversarial system to a "publicly funded forum[] for the ventilation of public grievances[.]"  *Valley Forge Christian Coll.*, 454 U.S. at 473.  *Bruen* altered substantive Second Amendment law, but it did not abrogate the fundamental principle that plaintiffs may only seek redress in federal court for their actual, concrete injuries.  *See Lujan*, 504 U.S. at 560-61.  Plaintiff has pleaded a cognizable past or present injury only as to the provisions of law that enabled the NYPD to deny his license application.

### 3. Plaintiff Has Not Plausibly Alleged Standing to Mount a Preenforcement Challenge

Plaintiff also seems to advance a future injury theory, noting the unfairness of "being forced to choose between engaging in protected conduct …

15

and facing criminal and civil penalties[.]"  (Pl. Opp. 20).  Standing doctrine reflects this concern, recognizing that in certain circumstances, a risk of enforcement can be a sufficiently concrete harm to support standing.  *See Cayuga Nation* v. *Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) ("Preenforcement challenges to criminal statutes … are cognizable under Article III.").  To establish standing under such a theory, the plaintiff must plausibly allege (i) an intention to engage in conduct made criminal by statute and (ii) a credible threat of being prosecuted thereunder.  *Susan B. Anthony List,* 573 U.S. at 159-60 (citing *Babbitt* v. *United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

On the first point, it is not enough for a plaintiff to allege his or her intention to engage in indeterminate unlawful conduct at an unspecified time. *Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions — without any description of concrete plans, or indeed even any specification of *when* the some day will be — do not support a finding of the 'actual or imminent' injury that our cases require.").  Instead, the plaintiff must describe his intended lawbreaking with specificity.  *See Knife Rights, Inc.* v. *Vance*, 802 F.3d 377, 385 (2d Cir. 2015) (explaining that preenforcement standing "cannot rest on fears that are 'imaginary or speculative'" (quoting *Babbitt*, 442 U.S. at 298)).

Plaintiff has not alleged his intention to engage in unlawful conduct with sufficient concreteness to survive a motion to dismiss.  He claims that he "has a present intention and plan to purchase and possess shotguns and rifles for all lawful purposes," and that if he does so, "he will be arrested and subject to

incarceration, fines, and other criminal and civil penalties." (SAC ¶¶ 30, 32). These allegations are lacking in several regards. For one, they are conclusory and totally devoid of factual detail; Plaintiff does not explain when, where, or how he intends to violate New York City's gun control rules and regulations. *Cf. Brooklyn Branch of the NAACP* v. *Kosinski*, — F. Supp. 3d —, No. 21 Civ. 7667 (KPF), 2023 WL 2185901, at *6-8 (S.D.N.Y. Feb. 23, 2023) (finding standing for preenforcement challenge because plaintiff "provide[d] details about the nature of [its] intended conduct" and "ma[de] clear when and where [it] plans to engage in th[at] prohibited conduct"). Without those details, the Court cannot ascertain the type of injuries Plaintiff expects to suffer, much less which provisions of the NYCAC and/or RCNY he intends to violate, and whether those provisions carry criminal penalties. Moreover, the vague allegations Plaintiff does provide do not touch upon all of the challenged provisions; he does not, for instance, allege an intent to sell rifles or shotguns. *See* NYCAC § 10-302.1. And finally, because Plaintiff currently possesses a rifle/shotgun license (Berkovich Decl. ¶ 2 & Ex. A), and intends to purchase guns and ammunition for "lawful purposes," it is not obvious to the Court that his intended conduct is unlawful (*see* SAC ¶ 30).

Plaintiff's musings about his plans are "wholly speculative" and insufficient to establish his standing to challenge laws that played no part in the initial denial of his rifle/shotgun license application. See *Hedges* v. *Obama*, 724 F.3d 170, 196 (2d Cir. 2013) (quoting *Babbitt*, 442 U.S. at 302). Indeed, courts routinely reject similar arguments. *See, e.g.*, *Frey* v.

17

*Bruen*, No. 21 Civ. 5334 (NSR), 2022 WL 522478, at *4-5 (S.D.N.Y. Feb. 22, 2022) (finding allegation that plaintiffs "intend to" carry handguns in public in contravention of New York licensing rules insufficient to establish standing); *see also San Diego Cnty. Gun Rights Comm.* v. *Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) (finding allegation that plaintiffs "wish and intend to engage in activities prohibited" by the Crime Control Act, which prohibited the manufacture, transfer, or possession of semiautomatic assault weapons, insufficient to establish standing (internal quotation marks omitted)).

Because Plaintiff does not plead either past injury or sufficiently definite future injury attributable to NYCAC Sections 10-302.1, 10-303 (except for subsections (a)(2) and (a)(9)), 10-304(a)-(d), 10-306, or 10-310, or to RCNY Title 38 Chapters 1-05 or 3 (except for subsections 3-03(f) and (g)), his claims under those provisions are dismissed for lack of standing.  The Court proceeds to consider whether intervening events have mooted any claims as to which Plaintiff does have standing.

## C.     Plaintiff's Claims for Declaratory and Injunctive Relief Are Moot

Defendants assert that Plaintiff's claims for declaratory and injunctive relief with respect to the remaining NYCAC and RCNY provisions became moot when the License Division issued him a rifle/shotgun license.  (Def. Br. 5-8; Def. Reply 3-5).  Plaintiff denies receiving such a license and argues that in any event, Defendants should not be able to avoid review of the City's gun control regime by mooting individual cases.  (Pl. Opp. 21-22).

18

The doctrine of mootness is "based upon the case or controversy requirement of Article III of the Constitution," *Fox* v. *Bd. of Trs. of the State Univ. of New York*, 42 F.3d 135, 140 n.2 (2d Cir. 1994), which requires that "at all times," disputes in federal court be "real and live, not feigned, academic, or conjectural," *Russman* v. *Bd. of Educ.*, 260 F.3d 114, 118 (2d Cir. 2001).  It ensures that the plaintiff's standing "persists throughout the life of a lawsuit[.]" *Amador* v. *Andrews*, 655 F.3d 89, 99 (2d Cir. 2011).  A case becomes moot if a change in circumstances renders it "impossible for a court to grant any effectual relief" to the prevailing party.  *Knox* v. *Serv. Emps. Int'l Union*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted); *see also Janakievski* v. *Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020) ("If, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction[.]").  Thus, there is generally no live controversy when, for instance, a noncitizen challenging their detention is removed from the country, *Hassoun* v. *Searls*, 976 F.3d 121, 128 (2d Cir. 2020); a student suing to remedy the conditions of their education graduates, *Russman*, 260 F.3d at 119; or a challenged law is repealed, *N.Y. State Rifle & Pistol Ass'n, Inc.* v. *City of New York*, 140 S. Ct. 1525, 1526 (2020) (per curiam).  When a case becomes moot, the court loses jurisdiction and must dismiss the action in its entirety.  *Janakievski*, 955 F.3d at 319.

Plaintiff's remaining claims for injunctive and declaratory relief are moot because after he filed this suit, he received the prospective relief he sought: the

ability to lawfully possess a rifle or shotgun in New York City.  (*See* SAC ¶ 94).

The NYPD issued Plaintiff a rifle/shotgun license on October 25, 2022

(Berkovich Decl. ¶ 2 & Ex. A), and mailed that license to Plaintiff on

January 26, 2023 (*id.* ¶ 4; *see also* Devine Reply Decl. ¶ 3).  Although this case

may have presented a live claim for prospective relief during the several-month

delay between the issuance and mailing of Plaintiff's license, any such

controversy became moot by the time Plaintiff received that license.  *See*

*Libertarian Party of Erie Cnty.*, 970 F.3d at 122 (concluding that the issuance of

a gun license mooted challenge to gun laws); *accord Abekassis* v. *New York*

*City*, No. 20-3038, 2021 WL 852081, at *1 (2d Cir. Mar. 4, 2021) (summary

order).

     In an effort to escape this obvious jurisdictional defect, Plaintiff argues

that Defendants should not be able to evade judicial review of the City's gun

laws by mooting individual cases.  (Pl. Opp. 22).  And it is true that the

voluntary cessation exception to the mootness doctrine recognizes that "a

defendant cannot automatically moot a case simply by ending its unlawful

conduct once sued."  *Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 91 (2013).

"Otherwise, a defendant could engage in unlawful conduct, stop when sued to

have the case declared moot, then pick up where he left off, repeating this cycle

until he achieves all his unlawful ends."  *Id.*; *see also Conn. Citizens Def.*

*League, Inc.* v. *Lamont*, 6 F.4th 439, 445 (2d Cir. 2021) ("[T]he 'voluntary

cessation' of a defendant's conduct might not moot a controversy if there is a

finding that the defendant could do it again.").  But the exception is not

absolute.  A case is moot despite the defendant's voluntary cessation of their challenged conduct if "[i] there is no reasonable expectation that the alleged violation will recur and [ii] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Granite State Outdoor Advert., Inc.* v. *Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002) (internal quotation marks omitted).

The voluntary cessation doctrine affords no relief to Plaintiff in this case. The Court has no reason to suspect that Plaintiff will be injured again by the denial of a rifle/shotgun license.  More specifically, there is no indication that the NYPD will arbitrarily revoke, suspend, or refuse to renew his license in the future.  *See Libertarian Party of Erie Cnty.*, 970 F.3d at 122 (deeming plaintiffs' apprehensions that their firearm licenses would be revoked too speculative to support standing).  This is not a case, for example, in which the defendant has expressed an intent to resume the challenged conduct following the termination of litigation.  *Cf. City of Mesquite* v. *Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  Moreover, there is no indication that the NYPD has revoked any similar licenses after, or on account of, an agreement to settle related litigation.

Additionally, the issuance of Plaintiff's license eradicated any "ongoing harm" or "lingering effect" of his initial deprivation that could be remedied by prospective relief.  *See Am. Freedom Def. Initiative* v. *Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2016).  By issuing Plaintiff a rifle/shotgun license, Defendants have not thwarted his ability to obtain relief; rather, they have

provided him the very relief he seeks.  *See Almakalani* v. *McAleenan*, 527 F. Supp. 3d 205, 224 (E.D.N.Y. Mar. 16, 2021) (rejecting voluntary cessation argument because plaintiffs had received the visas they sued to obtain).  What is more, to the extent that Plaintiff claims he is still injured because he refuses to accept the now-issued license (*see* Taveras Decl. ¶ 21), that injury is caused by his own actions, not Defendants', and is not redressable by an order from this Court.  In short, Plaintiff's argument for an exception to the usual mootness principles is unavailing.

The mootness doctrine may be frustrating to litigants who are determined to seek forward-looking remedies.  But that frustration is by design, as federal courts are not in the business of issuing opinions that are hypothetical or advisory.  *Princeton Univ.* v. *Schmid*, 455 U.S. 100, 102 (1982) (per curiam).  Because a ruling in Plaintiff's favor would not alter his right to possess a rifle or shotgun within New York City, the Court lacks jurisdiction to issue Plaintiff declaratory or injunctive relief.

Defendants have not moved to dismiss Plaintiff's claim for monetary damages against New York City.  (*See* SAC, Prayer for Relief).[5]  Insofar as Plaintiff seeks monetary damages for retrospective harms he suffered as a result of the allegedly-unconstitutional deprivation of his rifle/shotgun license from 2018 to 2023, that claim is not moot.  *Fox*, 42 F.3d at 142 ("[A] claim for nominal damages can suffice to avoid mootness when claims for injunctive and

---

[5]     Plaintiff does not seek monetary damages against Commissioner Sewell.

declaratory relief have become moot."); 13C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3533.3 (3d ed. 2023) ("The availability of damages or other monetary relief almost always avoids mootness[.]"); *see also N.Y. State Rifle & Pistol Ass'n, Inc.*, 140 S. Ct. at 1526-27 (finding claims for injunctive and declaratory relief in Second Amendment case moot, but remanding for lower courts to "consider whether petitioners may still add a claim for damages"). Plaintiff will have an opportunity to prove any such damages.

## CONCLUSION

Accordingly, Defendants' motion to dismiss is GRANTED. Plaintiff's claims under NYCAC Sections 10-302.1, 10-303 (except for subsections (a)(2) and (a)(9)), 10-304(a)-(d), 10-306 and 10-310, and his claims under RCNY Title 38 Chapter 1-05 and Chapter 3 (except for subsections 3-03(f) and (g)) are DISMISSED, as are his claims for declaratory and injunctive relief. Only Plaintiff's claims for compensatory damages under subsections (a)(2) and (a)(9) of NYCAC Section 10-303 and subsections (f) and (g) of Title 38, Section 3-03 of the RCNY remain, and only as to defendant New York City. Because no viable claims remain against Commissioner Sewell, the Clerk of Court is directed to terminate her from the docket. The Clerk of Court is additionally directed to terminate the motion at docket entry 15.

23

The parties are hereby ORDERED to appear for a conference to discuss next steps in this matter on **May 17, 2023**, at 12:00 p.m. in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York.

SO ORDERED.

Dated:     April 20, 2023
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge