UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

ALAN TAVERAS,

                Plaintiff,

     -against-

NEW YORK CITY, New York,

                Defendant.

------------------------------------------------------x

Case No. 20 Civ. 1200 (KPF)

**THIRD AMENDED
COMPLAINT**

Plaintiff, ALAN TAVERAS, by and through his attorneys, states for his Third Amended

Complaint as follows:

## NATURE OF THE ACTION

1.    This is an action for compensatory and nominal damages, reasonable statutory

attorney's fees, and *inter alia,* arising from New York City's violations of Plaintiff's constitutional

rights as protected by the Second and Fourteenth Amendments. 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

2.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1331, §1343, §2202; and 42 U.S.C. §1983, §1988. Venue lies in this Court pursuant to 28 U.S.C.

§1391.

## PARTIES

3.    Plaintiff, Alan Taveras, is over the age of 21, a natural person, and a citizen of the

United States.

4.    Defendant New York City, New York is a municipal corporate subdivision of the

State of New York duly existing by reason of and pursuant to the laws of the State.

## CONSTITUTIONAL FRAMEWORK

5.     The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

6.     The Second Amendment codifies a "preexisting right."

> "[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right.
>
> The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."
>
> As we said in *United States v. Cruikshank* …[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ...."[1]

7.     The Second Amendment right of "the people…unambiguously refers to all members of the political community, not an unspecified subset." *D.C. v. Heller*, 554 U.S. 570, 580 (2008).

> " '[T]he people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

*Heller*, at 580 quoting *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990).

---

[1] *Heller*, at 592 (emphasis supplied) quoting, *United States v. Cruikshank*, 92 U.S. 542, 553 (1876) (quotation marks omitted).

8.      The Fourteenth Amendment provides, in pertinent part: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.

9.      The Second Amendment *presumptively* protects the right to possess and carry all weapons in common use for self-defense. *NYSRPA v. Bruen*, 142 S.Ct 2111, 2132 ("even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense") citing, *Caetano v. Massachusetts*, 577 U.S. 411, 411–412 (2016) (per curiam) (stun guns).

10.     Handguns are weapons in common use for self-defense and are protected within the scope of the Second Amendment.  *Heller,* at 628 (recognizing handguns to be "an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose [self-defense].").

11.     In *Bruen*, the Supreme Court reiterated the text, history, and tradition standard of reviewing Second Amendment challenges, consistent with *Heller*, *McDonald*[2], and *Caetano*.[3]

12.     Flatly rejecting the 'interest balancing' 'intermediate scrutiny' test created by the Second Circuit (and others), the *Bruen* Court laid out a clear path to determine the constitutionality of government regulations affecting the Second Amendment: "We reiterate that the standard for applying the Second Amendment is as follows:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.

---

[2] *McDonald v. Chicago*, 561 U.S. 742 (2010).
[3] "But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, at 2127. See also, *Caetano*,

The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, at 2126. ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny.") (emphasis added) (citation omitted).

13.    Where later history contradicts what the text says, the text controls. *Bruen*, at 2137.

### *Pre-Bruen Supreme Court Precedent Rejecting 'Discretion' in Second Amendment Challenges*

14.    Relying on text, history, and tradition, the Supreme Court decisions in *Heller* and *McDonald* rejected the use of discretion in the context of Second Amendment rights.[4,5]

15.    Consistent with Second Amendment jurisprudence, the *Bruen* Court rebuked the use of discretionary and subjective factors in firearms regulation, affirmatively rejecting licensing regimes "like New York's" that "require[e] the appraisal of facts, the exercise of judgment, and the formation of an opinion…" *Bruen*, 2138 n. 9.

---

[4] 19 "The very enumeration of the [Second Amendment] right takes out of the hands of government - even the Third Branch of Government - the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *D.C. v. Heller*, 554 U.S. 570, 634-35 (2008).

[5] *McDonald*, at 790-91 (2010) (rejecting Justice Breyer's idea that incorporation of the 14th Amendment "will require judges to assess the costs and benefits of firearms restrictions and thus to make difficult empirical judgments in an area in which they lack expertise. As we have noted, while his opinion in Heller recommended an interest-balancing test, the Court specifically rejected that suggestion.").

## MATERIAL FACTS

16.     Alan Taveras has no disqualifiers to the possession, carriage, receipt or transfer of handguns, rifles, and/or shotguns.

17.     At all times relevant to this action herein Mr. Taveras was, and continues to be, eligible to possess, purchase, receive, and transfer firearms under state and federal law.

18.     Mr. Taveras is licensed to carry a handgun in public in the following states: AL, AK, AZ, AR, CO, DE, FL, GA, ID, IN, IA, KS, KY, LA, ME, MI, MS, MO, MT, NE, NV, NH, NM, NC, ND, OH, OK, PA, SC, SD, TN, TX, UT, VY, VA, WV, AND WY.

19.     Mr. Taveras lawfully owns and possesses handguns and long guns, one or more of which were purchased after he underwent and passed a federal background check through NICS (National Instant Criminal Background Check System).

20.     Mr. Taveras has never been convicted of a crime.

21.     Mr. Taveras is one of "the People" that in all seven provisions of the Constitution "unambiguously refers to all members of the political community, not an unspecified subset….

> 'The people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

*Heller*, at 580 citing *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990).

22.     On December 1, 2017, Mr. Taveras applied to the NYPD License Division for (i) a Rifle/Shotgun License ("R/S License"), as it is a violation of New York City laws to possess a rifle or shotgun without having first applied for and obtained a license from the NYPD License

Division; and no rifle or shotgun can be purchased without such a license and corresponding certificate.

23.     When he applied for a R/S License, Mr. Taveras was and continues to be eligible to possess handguns and long guns.

24.     Mr. Taveras paid the filing fees associated with applying for the license, and he was fingerprinted by NYPD; the NYPD obtained his fingerprint-based criminal history and learned that Mr. Taveras had never been convicted of a crime, was not subject to an existing order of protection, and otherwise had no disqualifying events of conditions preventing his lawful possession of firearms under state or federal law.

### *Denial by R/S Section – April 18, 2018*

25.     On April 18, 2018, Mr. Taveras' R/S application was denied by the R/S Section.

26.     The R/S Section exercises "broad discretion" when deciding who should and should not be issued a R/S License.

27.     The R/S Section exercised its "broad discretion" to decide that Mr. Taveras should not be issued a R/S License.

28.     The R/S Section denied Mr. Taveras' R/S application because:

> "It has been determined that your application for a permit has been denied for the following reason(s).
>
> The circumstances surrounding your actions exhibited in your past question your ability to abide by the rules and regulations to possess a rifle/shotgun permit.
>
> **Based upon your arrest history, summons history and violent domestic violence history and Order of Protection history. You have shown poor moral judgment and an unwillingness to abide by the law. The above circumstances reflect negatively upon your moral character and cast grave doubt upon your fitness to possess a firearm.**"

See, Ex. 1 (emphasis supplied).

29.     An 'approval' of Mr. Taveras' R/S application by the R/S Division would have been a final determination of his application, resulting in the issuance of his license.

30.     Mr. Taveras was denied on the grounds of an "arrest history" and "summons history." Ex. 1.

31.     Mr. Taveras has no history of any criminal convictions.

32.     Mr. Taveras was denied on the grounds of a "violent domestic violence history." Ex. 1.

33.     Mr. Taveras has not committed any act of "domestic violence."

34.     Mr. Taveras was denied on the grounds of an "Order of Protection history." Ex. 1.

35.     Mr. Taveras was not the subject of any "Order of Protection" when he applied for a R/S License.

36.     Mr. Taveras was denied based on an opinion that he has **"**shown poor moral judgment." Ex. 1.

37.     Nothing in Mr. Taveras' application supports the conclusion that he has "poor moral judgment."

38.     Mr. Taveras was denied based on an opinion that he has **"**an unwillingness to abide by the law." Ex. 1.

39.     Mr. Taveras has no history of failing to abide by the law.

40.     Mr. Taveras filed an internal appeal of the R/S License denial with the Appeals Unit of the NYPD License Division.

***Denial by Appeals Unit – November 28, 2018***

41.     On November 28, 2018, Mr. Taveras' R/S appeal was denied by the License Division Appeals Unit. Ex. 2.

42.     The Appeals Unit exercises "broad discretion" when deciding who should and should not be issued a R/S License.

43.     The Appeals Unit exercised "broad discretion" when deciding that Mr. Taveras should not be issued a R/S License.

44.     The Appeals Unit opined that Mr. Taveras was "not of good moral character" and that "good cause exists" to deny the license. Ex. 2.

45.     Mr. Taveras was denied by the Appeals Unit because, in the past, he had been the subject of an Order of Protection. Ex. 2.

46.     Mr. Taveras was denied by the Appeals Unit because there is a "history of one or more incidents of domestic violence." Ex. 2.

47.     Mr. Taveras was denied by the Appeals Unit because 2 allegations were made against him by an ex-girlfriend: the first claim was dismissed, and the police refused to file charges against Mr. Taveras the second time. Ex 2.

48.     The Appeals Unit conceded "the charges against Mr. Taveras were dropped against him." Ex. 2.

49.     The charges against Mr. Taveras were dismissed pursuant to New York Criminal Procedure Law 160.50 and "in favor of the accused."

50.     When denying Mr. Taveras' R/S application, the Appeals Unit opined that the "serious nature" of incidents (that never happened) raised speculative "safety concerns" (that never

materialized, yet were used by the City to strip Mr. Taveras of a guaranteed, preexisting individual right).

## APPLICATION OF THE CITY'S REGULATIONS TO MR. TAVERAS

51.     Mr. Taveras' conduct – the possession of long guns – is protected by the plain text of the Second Amendment. See, *Heller,* at 592 (holding that the plain text of the Second Amendment guarantees the right to possess and carry weapons in case of confrontation); *Bruen*, at 2119, 2126 (when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct; finding "little difficulty concluding" that the plain text of the Second Amendment also protects "carrying handguns publicly for self-defense.").

52.     There is no historical analogue for the criteria used by the City as grounds to deprive Mr. Taveras of the right to possess rifles and shotguns for self-defense.

53.     The "text, history, and tradition analysis" for Second Amendment challenges has existed since, and was applied in, *Heller* and *McDonald* and long predates the *Bruen* opinion.[6]

54.     The City cannot justify the criteria enforced by the R/S Section on April 18, 2018 to deny Mr. Taveras' application, as there is no historical analogue and the regulations are *inconsistent* with the plain text of the Second Amendment.

55.     The City cannot justify the criteria enforced by the Appeals Unit on November 28, 2018 to deny Mr. Taveras' application, as there is no historical analogue and the regulations are *inconsistent* with the plain text of the Second Amendment.

---

[6] "In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny. We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen,* at 2129–30.

56.     In the first instance, requiring an individual to apply for and obtain a license/government permission before being able to exercise the right to possess long guns was never part of this Nation's historical traditions and conflicts with the plain text of the Second Amendment.

57.     That said, the Supreme Court has made clear that "discretion" in the context of firearms licensing violates the plain text of the Second Amendment.  see, *Bruen*, at 2138 n. 9; *Heller*, at 634 ("The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.") (emphasis supplied).

58.     The City must now identify a Founding Era (1791) historical tradition to justify the reasons it relied upon for denying Mr. Taveras' right to possess long guns, as is its burden.

59.     "But to the extent later history contradicts what the text says, the text controls." *Bruen*, at 2137.

60.     No historical analogue exists for the grounds upon which Mr. Taveras was denied a R/S License by the R/S Section on April 18, 2018, warranting a finding that denying an application for a license to possess long guns based on one or all of the following criteria violates the Second and Fourteenth Amendments:

- The exercise of any discretion in the licensing process [Ex. 1];

- The implementation of subjective criteria in the licensing process [Ex. 1];

- An assessment of whether an applicant has the "ability to abide by the rules and regulations to possess a rifle/shotgun permit" [Ex. 1];[7]

- An assessment of an applicant's "moral judgment" [Ex. 1];

- An assessment of an applicant's "moral character" [Ex. 1];

- An assessment of an applicant's "fitness to possess a firearm" [Ex. 1];

- An assessment of an applicant's "willingness to abide by the law" [Ex. 1];

- An applicant's "arrest history" absent a disqualifying conviction[8] [Ex. 1];

- An applicant's "summons history" absent a disqualifying conviction[9] [Ex. 1];

- An applicant's "domestic violence history" absent a disqualifying conviction[10] [Ex. 1];

- An applicant's history of "domestic incidents" absent a disqualifying conviction[11] [Ex. 1]; and

- An applicant's "Order of Protection history" where the applicant is not currently the subject of an order of protection [Ex. 1].


61.     No historical analogue exists for the grounds upon which Mr. Taveras was denied a R/S License by the License Division, Appeals Unit on November 28, 2018, warranting a finding that denying an application for a license to possess long guns based on one or all of the following criteria violates the Second and Fourteenth Amendments:

---

[7] See, *Bruen*, at 2138 n. 9 (rejecting the use of subjective and discretionary licensing criteria that require the "appraisal of facts, the exercise of judgment, and the formation of an opinion - features that typify proper-cause standards like New York's."
[8] See, e.g., Penal Law § 265.00(17) and 18 U.S.C. § 922(g) for enumerated disqualifying convictions.
[9] *Id.*
[10] *Id.*
[11] *Id.*

- The exercise of any discretion in the licensing process [Ex. 2];

- The implementation of subjective criteria in the licensing process [Ex. 2];

- An assessment of an applicant's "moral character" [Ex. 2];

- Discretion to deny a license for "good cause" [Ex. 2];

- Having been the subject of an Order of Protection in the past, where the applicant is not <u>currently</u> the subject of an order of protection [Ex. 2];

- An applicant's "domestic violence history" absent a disqualifying conviction[12] [Ex. 2];

- An applicant's history of "domestic incidents" absent a disqualifying conviction[13] [Ex. 2];

- Allegations of prior events absent a disqualifying conviction[14] [Ex. 2]; and

- Reliance on "safety concerns" [Ex. 2] – as public safety/interest balancing in Second Amendment challenges has been affirmatively rejected by the Supreme Court [Ex. 2][15].

62.     Mr. Taveras has never been adjudicated as "dangerous."

63.     None of the grounds for denying Mr. Taveras' license is consistent with the text, history, or tradition of firearm regulations in the Founding Era.

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] The *Bruen* Court reconfirmed that that the "Second Amendment is the very product of an interest balancing by the people" and it "surely elevates *above all other interests* the right of law-abiding, responsible citizens to use arms" for self-defense. *Bruen*, at 2131 quoting, *Heller*, at 635. "It is this balance - struck by the traditions of the American people - that demands our unqualified deference." *Bruen*, at 2131. Public safety justifications in Second Amendment challenges have been unequivocally rejected as "inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny." *Bruen*, at 2129.

64.     It is the custom, policy, and practice of the R/S Section to apply the following criteria when determining whether to approve/to deny an application for a R/S License:

- The exercise of "broad discretion" in the licensing process [Ex. 1] [16];

- The implementation of subjective criteria in the licensing process [Ex. 1];

- An assessment of whether an applicant has the "ability to abide by the rules and regulations to possess a rifle/shotgun permit" [Ex. 1];

- An assessment of an applicant's "moral judgment" [Ex. 1];

- An assessment of an applicant's "moral character" [Ex. 1];

- An assessment of an applicant's "fitness to possess a firearm" [Ex. 1];

- An assessment of an applicant's "willingness to abide by the law" [Ex. 1];

- An applicant's "arrest history" where no disqualifying conviction exists [Ex. 1];

- An applicant's "summons history" where no disqualifying conviction exists [Ex. 1];

- An applicant's "domestic violence history" where no disqualifying conviction exists [Ex. 1];

- An applicant's history of "domestic incidents" where no disqualifying conviction exists [Ex. 1]; and

- An applicant's "Order of Protection history" where the applicant is not currently the subject of an order of protection [Ex. 1];

---

[16] New York case law supports the "broad discretion" vested in the NYPD License Division to determine the "fitness of individuals to possess firearms." *Simmons v. New York City Police Dep't License Div.*, 35 A.D.3d 748, 749 (1st Dept. 2006) citing, *Matter of Dorsey v. Teresi*, 26 A.D.3d 635, 809; *Matter of Papaioannou v. Kelly*, 14 A.D.3d 459; *Sewell v. City of New York*, 182 A.D.2d 469.

65.     It is the custom, policy, and practice of the Appeals Unit to apply the following criteria when determining whether to approve/to deny an application for a R/S License:

- The exercise of "broad discretion" in the licensing process [Ex. 2][17];

- The implementation of subjective criteria in the licensing process [Ex. 2];

- An assessment of an applicant's "moral character" [Ex. 2];

- The exercise of discretion to deny a license for "good cause" [Ex. 2];

- where the applicant was previously, but not currently, the subject of an order of protection [Ex. 2];

- An applicant's "domestic violence history" where no disqualifying conviction exists [Ex. 2];

- An applicant's history of "domestic incidents" where no disqualifying conviction exists [Ex. 2];

- Allegations of prior events where no disqualifying conviction exists [Ex. 2];

- Reliance on "safety concerns" [Ex. 2] – as public safety/interest balancing in Second Amendment challenges has been affirmatively rejected by the Supreme Court [Ex. 2].

66.     The grounds upon which Mr. Taveras' application for a R/S License was denied by the R/S Section [Ex. 1] and the Appeals Unit [Ex. 2] of the NYPD License Division - as detailed in the respective denial letters in April 2018 and November 2018 - arose from the License

---

[17] *Ibid.*

Division's implementation of New York City gun regulations, customs, policies, and practices. See, e.g., 38 RCNY 3-03(f) and (g) *et seq.* and NYC Admin. Code 10-303(a)(2), (9).

67.     As a direct result of the City's regulations, policies, customs, and procedures, Mr. Taveras has suffered a violation and loss of his Second Amendment rights, as enforced against the States by the Fourteenth Amendment, presumed nominal damages, compensatory damages, costs and expenses, and *inter alia*, attorney's fees.

## COUNT I
## U.S. CONST., AMEND. II, XIV - 42 U.S.C. § 1983
## (SECOND AMENDMENT, FOURTEENTH AMENDMENT)

68.     Plaintiff repeats and realleges paragraphs "1" through and including "67" as if fully repeated herein.

69.     Under the theory that Defendant is liable to Plaintiff for violations of his rights as protected by the Second and Fourteenth Amendments to the United States Constitution. 42 U.S.C. § 1983.

## COUNT II
## (*Monell* Liability)

70.     Plaintiff repeats and realleges paragraphs "1" through and including "66" as if fully repeated herein.

71.     Under the theory that New York City is liable for the violation of Plaintiff's constitutional rights, which were caused by and resulted from the enforcement of New York City's customs, practices, policies, and regulations as set forth herein. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

.

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against the defendant as follows:

- Declaring Plaintiff a prevailing party pursuant to 42 U.S.C. § 1983, 1988;

- Awarding to Plaintiff presumed compensatory damages;

- Awarding to Plaintiff presumed nominal damages for the defendant's constitutional violations;

- Awarding to Plaintiff reasonable statutory attorney's fees, costs, and disbursements, under 42 U.S.C. § 1988 and any other applicable law; and

- Granting such further and alternative relief as the Court deems just and proper.


Respectfully submitted,


Dated: June 14, 2023
     Scarsdale, New York                THE BELLANTONI LAW FIRM, PLLC
                                     *Attorneys for Plaintiff*

                              _____/s/_____
                              Amy L. Bellantoni (AB3061)
                              2 Overhill Road, Suite 400
                              Scarsdale, New York 10583
                              abell@bellantoni-law.com
                              (914) 367-0090 (t)
                              (888) 763-9761 (f)

16