

September 18, 2023

**VIA ECF**

Honorable Arun Subramanian
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

      Re: *Taveras v. New York City*, 20 CV 01200 (AS)

Dear Judge Subramanian,

      I represent the plaintiff, Alan Taveras, in the above-referenced matter. I write in opposition to the defendants' request for a stay of the proceedings in this matter.

      Defendants' request is based solely on the belief that the Supreme Court's determination in *United States of America v. Rahimi* (No. 22-915) is necessary for a determination of whether the City's denial of Plaintiff's application for a license to possess rifles and shotguns violated his Second Amendment rights. It is not.

      The ***sole*** consideration for this Court is the application of the test for Second Amendment challenges, as reiterated by the Supreme Court in *NYSRPA v. Bruen*, 142. S.Ct. 2111 (2022): (i) does the plain text of the Second Amendment cover Plaintiff's conduct ('keeping' arms) – if so, the Second Amendment 'presumptively protects that conduct'; (ii) to justify its regulation, the City must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. *Bruen*, at 2126, 2129-30.

      The *Bruen* test is neither 'new' nor 'challenging.' *Bruen* simply reiterated the text, history, and tradition analysis used by the Supreme Court in in *D.C. v. Heller*[1] and *McDonald v. City of Chicago*[2] disregarded by various circuits in favor of an "interest balancing" test. *Bruen*, at 2129 ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny"); *McDonald*, at 785-86 ("In *Heller,* however, we expressly rejected the argument that the scope of the Second Amendment right should be determined by judicial interest balancing and this Court decades ago abandoned "the notion that the Fourteenth Amendment applies to the States only a watered-down, subjective version of the individual guarantees of the Bill of Rights") (cleaned up).

---

[1] 554 U.S. 570 (2008).
[2] 561 U.S. 742, 780 (2010) (plurality opinion).

2 Overhill Road, Suite 400     info@bellantoni-law.com     (914) 367-0090 (t)
Scarsdale, New York 10583     www.bellantoni-law.com     (888) 763-9761 (f)

The query for this Court is straightforward: has the City produced proof of a National tradition of enforcing regulations and policies that are "distinctly similar"[3] to New York City's regulation of rifles and shotguns in "how" and "why" they curtailed Plaintiff's right to possess long guns. *Bruen*, at 2132–33.

And while the term "law abiding" is referenced by the Supreme Court, the *Bruen* test does not include a "law abiding" assessment. To the contrary, Supreme Court jurisprudence forecloses any ability of the government to subjectively determine – as the License Division does (and did here) – whether they feel someone is "law abiding."[4,5]

If the City fails to produce proof of a National historical tradition, the Court must find that the challenged New York City regulations and policies violate the Second Amendment. *Bruen*, at 2126, 2129-30 (only where the government proves that the regulation is consistent with the Nation's historical tradition of firearm regulation may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command').

Because there was no governmental regulation of rifles and shotguns – and certainly no National tradition - when the Bill of Rights was ratified[6], staying progress in this case while waiting for a decision in the *Rahimi* case, which has not yet been argued and will likely not yield a decision for several months thereafter, is an unnecessary delay of the proceedings.

*Rahimi* is also factually inapposite. Mr. Rahimi was convicted under 18 U.S.C. 922(g)(8) for possessing firearms while he was *actively subject* to an order of protection. The issue in *Rahimi* is whether making it a crime to possess firearms while being subject to an order of protection fits within our Nation's historical tradition of firearm regulation.

But Plaintiff was not *actively subject* to an order of protection at the time he applied for a Rifle/Shotgun license – or anytime thereafter. Plaintiff was never convicted of a crime – the City denied his application based on allegations adjudicated in the criminal courts, terminated in his favor, and sealed.

Rahimi had an objective disqualifier to firearms possession under 18 U.S.C. 922(g)(8) – possessing firearms while being subject to an existing protection order. But Plaintiff has **no disqualifiers** under state or federal law to the possession of firearms – he has no disqualifying convictions and was not 'subject to an order of protection' - yet he was nevertheless prohibited from possessing rifles and shotguns.[7]

---

[3] *Bruen,* at 2131.

[4] *Bruen*, at 2138, n. 9 (noting that shall-issue licensing regimes "appear to contain only narrow, objective, and definite standards" guiding licensing officials…rather than requiring the appraisal of facts, the exercise of judgment, and the formation of an opinion - features that typify proper-cause standards like New York's"). From the platform of a shall-issue licensing scheme with objective factors, individuals may challenge the constitutionality of each respective factor – similar to the 18 U.S.C. 922(g) challenges in *Rahimi* and cases in other circuits.

[5] *Bruen*, at 2162 ( "unlike New York's may-issue regime, those shall-issue regimes do not grant open-ended discretion to licensing officials").

[6] *Bruen*, at 2137–38 ("the scope of the protection applicable to the Federal Government and States is **pegged** to the public understanding of the right when the Bill of Rights was adopted in 1791") (emphasis added) citing, *Crawford v. Washington*, 541 U.S. 36, 42–50 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008) (Fourth Amendment); *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (First Amendment).

[7] Had he lived any other county outside of New York City, Mr. Taveras would have been able to freely purchase and possess rifles and shotguns. Exercising a constitutionally protected right should not depend on one's zip code.

What's more, barring Plaintiff's possession of long guns based on the License Division's opinion that the arrest and allegations of domestic violence "raise safety concerns for [Plaintiff] and others" is also directly contrary to the Supreme Court's rejection of public safety 'interest balancing' in *Heller, McDonald*, and *Bruen*.

*Bruen*'s discussion of licensing regimes is also not material to the adjudication of Plaintiff's claims. **First**, *Bruen* was not a challenge to licensing requirements generally, nor is the case at bar. The Supreme Court simply allowed "shall issue" licensing schemes to continue, cautioning "outlier" states "like New York" that implement a "may issue" licensing scheme that its continued existence was contingent on implementing "objective" factors, like the shall-issue jurisdictions. *Bruen*, at 2138, n. 9. But New York has failed to make any such transition. **Second,** even shall-issue regimes are not beyond constitutional challenge. *Bruen*, at 2138, n. 9 ("because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry").

Plaintiff will suffer unnecessary and undue prejudice from a stay of this litigation. This case was filed in 2020, proceeded to the Second Circuit on appeal of the district court's dismissal of the complaint upon the City's motion, remanded by the Circuit Court, proceeded through another motion to dismiss, and is now finally on its way to being adjudicated on the merits. Although oral argument in *Rahimi* is scheduled for November 7, 2023, it will not likely yield a written decision for several months thereafter causing Plaintiff additional delay.

For the foregoing reasons, the City's request to stay this matter pending a decision in *United States of America v. Rahimi* should, most respectfully, be denied.

If the Court nevertheless grants the City's motion for a stay, Plaintiff requests that the stay commence after the parties' respective motions for summary judgment have been fully submitted[8], with the opportunity (if necessary) to submit a brief FRAP 28(j)-type letter to the Court within seven (7) days of a decision in *Rahimi* regarding the effect, if any, the Supreme Court's decision has on this Court's determination of the issues herein.

Thank you for the Court's consideration.

Respectfully,

/s/
Amy L. Bellantoni

cc: Kerri A. Devine, Esq. (via ECF)

**Defendants' motion for a stay is DENIED without prejudice. Defendants may renew their motion when the parties' summary judgment motions have been fully submitted.**

**The Clerk of Court is directed to terminate the motion at ECF No. 69.**

**SO ORDERED.**

**Arun Subramanian, U.S.D.J.**
**Date: September 21, 2023**

---

[8] The parties' motions/cross-motions for summary judgment are scheduled to be fully submitted on November 9, 2023.