UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ALAN TAVERAS,                                          Case No. 20 Civ. 1200 (AS)

                    Plaintiff,

                                                                             **DECLARATION OF**
       -against-                                  **AMY L. BELLANTONI**

NEW YORK CITY, New York,

                    Defendant.
-------------------------------------------------------x

AMY L. BELLANTONI, declares pursuant to 28 U.S.C. § 1746 that:

1. I am the Principal of The Bellantoni Law Firm, PLLC attorneys for the plaintiff in the above-captioned matter. I submit this Declaration in support of the plaintiff's motion for reasonable statutory attorney's fees and costs pursuant to 42 U.S.C. § 1988. I have personal knowledge of the facts set forth herein based upon a review of the file maintained by my office in this matter. If called as a witness, I could and would testify competently to the truth of the matters set forth herein.

*Bar Admissions*

2. I am admitted to practice law in the States of New York and Connecticut, the United States District Courts for the Southern, Eastern, Northern, and Western Districts of New York, the United States District Court for the District of Columbia, the Second Circuit Court of Appeals, the Ninth Circuit Court of Appeals, and the United States Supreme Court.

*Education*

3. I graduated from the University of Connecticut in 1992 with a B.A. in Political Science; and received a J.D. from Western New England College School of Law in 1998.

*Legal Experience*

4. From 1998 to 2004, I served as an Assistant District Attorney, and then Senior Assistant District Attorney, in the Rockland County District Attorney's Office. I prosecuted criminal matters from investigation through trial and, in some cases, on appeal. My experience includes bail applications, calendar appearances, drafting search warrant affidavits, witness preparation, Grand Jury presentations, motion practice, felony hearings, suppression hearings. I handled dozens of trials to verdict, both jury and non-jury, from violations to serious violent felonies. I was also assigned to the White-Collar Crime Unit.

5. For approximately 2.5 years while employed with the Rockland County D.A.'s Office, I was assigned to the New York State Attorney General's Office Organized Crime Task Force (OCTF) and cross-designated as a Special Deputy Assistant Attorney General. I also received cross-designation as a Special Assistant United States Attorney for the Southern District of New York in connection with the same investigation. In that position, I was part of a team of attorneys and investigators pursuing a multi-county organized crime syndicate, which resulted in the execution of multiple search warrants in multiple counties in New York State, the seizure of substantial amounts of evidence, and the successful prosecution of the targets of the investigation. In that connection, I was tasked with drafting pen register and wiretap affidavits and proposed warrants, reviewing audio recordings obtained through search warrants, team meetings, and, among other responsibilities, and categorizing and reviewing evidence.

6. From 2009 to 2011, I was Of Counsel to Lovett & Bellantoni, LLP, a boutique law firm that handled plaintiffs' civil rights litigation, discrimination claims, Education and Civil Service Law disciplinary claims, wrongful termination, Americans With Disabilities Act violations and § 1983 violations, family law, municipal law, and criminal defense matters. I

attended court conferences, drafted and responded to discovery requests, prosecuted and defended party and non-party depositions, opposed dispositive motions, oral argument, participated in mediations, and trials.

7. In 2011, I founded The Bellantoni Law Firm with my husband, Hon. Rory J. Bellantoni, which continued as a partnership until 2013 when Judge Bellantoni transitioned back to medical malpractice defense litigation. I continued as a solo practitioner, handling predominantly civil rights litigation and § 1983 cases (First, Second, Fourth and Fourteenth Amendment), with some family law, matrimonial, criminal defense, Civil Service Law, Article 78 proceedings, and firearms licensing-related appeals and hearings.

8. I am also a member of the Judicial Merit Selection Panel for the Southern District of New York.

9. I have tried the following federal cases before a jury to verdict, except where indicated as settled: *Torcivia v. Suffolk et al* 15 Civ. 1790 (GRB) (E.D.N.Y.) (Fourth Amendment); *Brink v. Muscente et al*, 11 Civ. 04306 (ER) (S.D.N.Y.) (First Amendment); *Mulleady v. The Seed Day Care Center*, 09 Civ. 01360 (CS) (S.D.N.Y.) (successfully defended Title VII, Pregnancy Discrimination); *Gianguzzi v. Moroni et al*, 09 Civ. 03039 (LMS) (S.D.N.Y.); *Serrantes v. Fogarty et al*, 12 Civ. 08079 (LMS) (S.D.N.Y.) (settled after cross-examination of defendant); *Kosack v. Entergy Nuclear Operations, Inc.*, 14 Civ. 09605 (VB) (S.D.N.Y.).

10. As mentioned, I am a solo practitioner. I have no staff, no employees, and no attorneys are "Of Counsel" to my firm. As time progressed and my expertise in the area of firearms licensing and related constitutional violations became more acute, at or around 2014, I developed a niche expertise in the area of firearms-related litigation, including challenges brought under the Second Amendment, Fourth Amendment, Fifth Amendment (Takings Clause), and Fourteenth

Amendment, Article 78 proceedings, firearms licensing and appeals, NICS appeals, SAFE Act Appeals, restoration of civil rights, presidential pardons, Red Flag Hearings (Extreme Risk Protection Orders), state court appeals, appeals and motions before the Second Circuit and the Ninth Circuit Courts of Appeals, and I have submitted three petitions for certiorari to the United States Supreme Court.

11. For the past several years, 98% of my practice has been firearms-related representation. I have represented clients in S.D.N.Y., E.D.N.Y., N.D.N.Y., and the D.C. District Court; I was recently sworn in before the Western District of New York in connection with a Second Amendment challenge to be filed shortly.

12. Since 2019, I have been admitted *pro hoc vice* in United States District Court for the Eastern District of California, in the prosecution of a Second Amendment challenge in *Baird v. Bonta,* 19 Civ. 617 (KJM) before Chief Judge Kimberly J. Mueller. During the *Baird* case, three motions for a preliminary injunction were made (and denied). I successfully appealed the district court's most recent denial to the Ninth Circuit [see, *Baird v. Bonta,* 81 F.4th 1036 (9th Cir. 2023), a nationally recognized decision] and successfully avoided a *sua sponte* hearing by the *en banc* panel of the Ninth Circuit.

13. Most recently, I successfully challenged New York City regulations affecting the licensing of handguns and rifles, which led to a judicial declaration that NYC Admin. Code §10-303(a)(2) and (a)(9) violate the Second Amendment and a permanent injunction thereof. See, *Srour v. New York City, New York*, No. 22 CIV. 3 (JPC), 2023 WL 7005172, at *1 (S.D.N.Y. Oct. 24, 2023) ("*Srour I*"). Though *Srour I* is currently on appeal, the United States Supreme Court has flatly rejected the application of discretion when regulating conduct protected by the Second Amendment.

14. I am also challenging the reporting of individuals by New York State's Office of NICS Appeals and SAFE Act to the federal NICS (National Instant Criminal Background Check) system)as "firearms disqualified" on mental health grounds. See, *D.B. v. Sullivan, MD et al* 22 Civ. 00282 (MAD) (CFH) and *Richey v. Sullivan et al*, 23 Civ. 344. I recently prevailed in a New York State Article 78 challenge to the denial of a client's application to be removed from the New York SAFE Act reporting database in the matter of *A.G. v. New York State Office of Mental Health, et ano.*, Index No. 904918-21 (Nichols, J.) (N.Y. Sup. Ct.).

15. In *Macor v. Campbell*, 23 Civ. 537 (DNH)(TWD) (N.D.N.Y.), New York State settled a challenge to the denial of a pistol license to the plaintiff who owned undeveloped land in rural New York where he spends time camping; my client was issued a pistol permit and his attorney's fees and costs are to be paid.

16. Other pending cases include challenges to the New York State Concealed Carry Improvement Act ("CCIA"), include *Mintz et al v. Nigrelli et al*, 23 Civ. 795 (MAD)(CFH) (N.D.N.Y.) (summer camp, places of worship ban; plaintiffs operate a Jewish summer camp); *Frey v. Bruen*, 21 Civ. 5334 (NSR) (S.D.N.Y.) (open carry ban, geographical restrictions of § 400.00(6), Times Square ban, MTA ban), on appeal 23-265; *Giambalvo v. Suffolk County,* 22 Civ. 4778 (GRB) (E.D.N.Y.) (lengthy licensing delays and CCIA provisions), on appeal 23-208; *McGregor v. Suffolk County*, 23 Civ. 1130 (GRB) (E.D.N.Y.) (Senate Bill 9458, semiautomatic rifle licensing); *Milau v. Suffolk County*, 17 Civ. 6061 (JS) (E.D.N.Y.) (banned if reside with a prohibited person); *Garofalo v. New York City*, 22 Civ. 7620 (NRM) (S.D.N.Y.) (NYC regulations); *Oliviera v. Cacace*, 23 Civ. 7427 (PMH) (S.D.N.Y.) ("good moral character"/discretion); and *Grier v. Kim*, 23 Civ. 3912 (KMK) (S.D.N.Y.) ("good moral character"/discretion).

17. Attached hereto as Exhibit 1 is a true and accurate copy of the case assignment sheet from the Southern District of New York.

18. Attached hereto as Exhibit 2 is a true and accurate copy of the case assignment sheet from the Eastern District of New York.

19. Attached hereto as Exhibit 3 is a true and accurate copy of the case assignment sheet from the Northern District of New York.

20. Attached hereto as Exhibit 4 is a true and accurate copy of the case assignment sheet from the Second Circuit Court of Appeals.

21. Attached hereto as Exhibit 5 is a true and accurate copy of the case assignment sheet from the Eastern District of California and the Ninth Circuit Court of Appeals.

22. Shortly before commencing the instant action, I represented the plaintiff in a similar *Abekassis v. New York City,* 477 F. Supp. 3d 139 (S.D.N.Y. 2020), judgment vacated, appeal dismissed, No. 20-3038, 2021 WL 852081 (2d Cir. Mar. 4, 2021). There, I challenged New York City's enforcement of similar New York City handgun regulations to deny the plaintiff's application for a firearms license. The complaint was dismissed by the trial court, which justified banning Mr. Abekassis' protected conduct because there was a "reasonable fit between the goals of public safety and reduction of crime, on the one hand, and the regulatory scheme, on the other" – a test rejected in *Heller*, *McDonald*, and *Bruen.* After Appellant's brief was filed, the City *sua sponte* issued a license to Mr. Abekassis and moved to dismiss the appeal as moot, which was granted by the Second Circuit. The City *sua sponte* issued a handgun license to a person they said was unfit to possess firearms with the purpose of mooting the challenge to its unconstitutional firearm regulations.

23. I have represented the Plaintiff, Alan Taveras, through the appeal of the denial of his applications for Handgun and Rifle/Shotgun Licenses to the NYPD License Division Appeal's Unit through the settlement of this federal action in Mr. Taveras' favor.

24. Like Mr. Abekassis' case, the License Division denied Plaintiff's application for a firearm license for home protection because it felt he was 'dangerous' and unfit to possess firearms. Neither Plaintiff nor Mr. Abekassis have any prohibitors to firearm possession under state or federal law. Like the *Abekassis* case, this case was dismissed on the grounds that 'public interest' outweighed Mr. Taveras' constitutional rights.

25. After the complaint was filed in this matter, the City filed a 12(b)(6) motion to dismiss. In opposition to the City's first Motion to Dismiss in 2020, I relied in substantial part on language from Justice Thomas' dissent, joined by Justice Kavanaugh, from denial of certiorari, in the matter of *Rogers v. Grewal*, 140 S. Ct. 1865, 1868, 207 L. Ed. 2d 1059, 1062, 2020 U.S. LEXIS 3248, *7, 28 Fla. L. Weekly Fed. S 340 (U.S. June 15, 2020) (Thomas, J., dissenting) [ECF 22 at pp. 8-12].

26. The substance of Justice Thomas' dissent in *Rogers* mirrors his opinion in *Bruen*. Consistent with Justice Thomas' plain text, history, and tradition analysis, and three years before the *Bruen* opinion that abrogated the intermediate scrutiny analysis applied in the Second and Ninth Circuits (and others)*,* I argued that "public interest balancing" and "sliding scale" test asserted by the City undermines the Supreme Court's holding in *Heller* and is an affront to the preexisting rights protected by the Second Amendment, which "shall not be infringed." [ECF 22 at p. 12].

27. Had the trial court adhered to the text, history, and tradition analysis in *Heller*, *McDonald*, and *Caetano*, the 12(b)(6) motion would have been denied and Plaintiff would have prevailed long ago.

28. Instead, the trial court dismissed the First Amended Complaint [ECF 24].

> In his FAC, Plaintiff argues for the application of strict scrutiny to the challenged provisions. In his opposition brief, he shifts position and argues that any interest balancing entailed by the application of different tiers of scrutiny is inappropriate. In support of this assertion, he relies almost entirely on a dissenting opinion written by Justice Thomas, joined by Justice Kavanaugh, in *Rogers v. Grewal*, 140 S. Ct. 1865 (2020). (See *id.* at 8-11). Defendants, in contrast, argue that intermediate scrutiny is the correct framework for analysis.

[ECF 24 at pp. 18-19] (internal citations omitted).

29. The trial court improperly reasoned that, because Mr. Taveras "was not law-abiding," the Second Amendment did not apply to him. [ECF 24 at p. 19]; accord, *Abekassis v. New York City*, supra.

> Here, although the challenged rifle/shotgun licensing provisions apply to rifle/shotgun ownership in the home, they do not implicate the general populace. Instead, they are explicitly aimed at identifying those applicants ***who, in the eyes of City lawmakers, are not law-abiding or responsible***.

[*Id.*] (emphasis added).

30. That issue was soundly addressed in *Srour:*

> Defendants seem to identify the conduct challenged in this case as the possession of firearms by someone lacking good moral character and reason that such conduct is not protected under the Second Amendment because such a person is not "responsible" and "law-abiding."
>
> The Court disagrees. The conduct at issue is the possession of a firearm. The question is whether such conduct in possessing firearms may be constitutionally regulated. Whether an applicant "lacks good moral character" is not part of the conduct being regulated. The requirement that an applicant submit to a determination of moral character instead is the regulation itself.

*Srour,* at *12.

31. On January 17, 2021, I appealed the dismissal of Plaintiff's First Amended Complaint to the Second Circuit. (2d Cir. Case No. 21-398). The appeal was fully briefed and oral argument was heard on October 4, 2021. Before a decision was rendered by the panel, the Supreme Court decided *NYSRPA v. Bruen*, 142 S.Ct. 2111 (2022). Accordingly, the Circuit Court vacated the trial court's decision and remanded the matter for application of the *Bruen* test.[1]

32. Upon remand, I drafted and filed a Second Amended Complaint on September 25, 2022 [ECF 34, 35]. On October 22, 2022, the License Division *sua sponte* issued a license to Plaintiff [ECF 53-1]. On November 15, 2022, the City moved to dismiss the Second Amended Complaint.

33. I opposed the motion, in part because Mr. Taveras never received any license from the License Division. Apparently, the License Division blindly sent out a firearms license in the mail to Plaintiff's last known address, but he no longer resided there [ECF 45]. Plaintiff also cross-moved for summary judgment, but the trial court disallowed his motion [ECF 49].

34. The trial court held, *inter alia*, that because Mr. Taveras was issued a license, his declaratory and injunctive claims were moot [ECF 55]. Unlike the *Abekassis* case, however, Mr. Taveras' complaint contained a prayer for money damages, so this case could not be mooted by the City's unilateral issuance of a firearms license. C.f., *Bruen*, at 2160 (discussing *New York State Rifle & Pistol Assn., Inc. v. New York*, 883 F.3d 45, 62–64 (2018) "But after we agreed to review that decision, the city repealed the law and admitted that it did not actually have any beneficial effect on public safety. See N. Y. Penal Law Ann. § 400.00(6) (West Cum. Supp. 2022);

---

[1] https://ecf.ca2.uscourts.gov/n/beam/servlet/TransportRoom

Suggestion of Mootness in *New York State Rifle & Pistol Assn., Inc. v. City of New York*, O. T. 2019, No. 18–280, pp. 5–7").

35. As the Second Amendment claims could not be rendered moot, I amended the complaint again, removing the claims for declaratory and injunctive relief, leaving the substantive Second Amendment claims untouched, and filed the Third Amended Complaint on June 15, 2023 [ECF 58], which gave rise to the plaintiff's motion for summary judgment on August 18, 2023 [ECF 63].

36. On August 14, 2023, this action was transferred to Your Honor [ECF 62].

37. The City then moved for a stay of the proceedings to await a determination by the Supreme Court in *United States v. Rahimi*, which Mr. Taveras opposed; the request was denied without prejudice pending the full briefing of the parties respective motions for summary judgment. [ECF 69-72]. On September 26, 2023, the City then moved for an extension of time to oppose the plaintiff's motion for summary judgment/file a cross-motion to October 20, 2023, which was granted [ECF 73, 74].

38. Before the City filed its opposition and cross-motion, the City served the undersigned with an Offer of Judgment, which would expire on October 18, 2023 – two days before its motion was due [ECF 75].

39. As an Offer of Judgement places a plaintiff raising a constitutional challenge in a precarious position, particularly in a Second Amendment case in New York/the Second Circuit and notwithstanding the substantial likelihood of success on the merits of Plaintiff's claims, including the absence of any historical analogue for the challenged regulations, Plaintiff accepted the $10,001.00 Offer of Judgment. In so accepting, Mr. Taveras is deemed a prevailing party for purposes of 42 U.S.C. § 1988.

40. It should also be noted that two of the regulations challenged by Mr. Taveras, NYC Admin. Code 10-303(a)(2), (9), are the same regulations declared unconstitutional and enjoined by Judge Cronan in *Srour*, supra.

41. The contemporaneous billing records reflect a reasonable number of hours expended for the work performed, which included, among other tasks, communications with Mr. Taveras and advice prior to commencing this litigation, including the manner in which the appeal to the License Division was drafted (in preparation for a federal lawsuit); research leading up to and including the drafting of the complaint including extensive research into other Second Amendment related cases (within and outside of New York State) in determining how best to craft his complaint and causes of action; responding to the City's premotion letter and opposing its motion to dismiss; preparing the appeal to the Second Circuit, which also involved extensive research of Second Amendment caselaw, compiling the record and drafting the initiating and reply briefs, review of the City's responsive brief, FRAP 28(j) submissions, and oral argument. After the matter was remanded post-*Bruen*, counsel drafted a Second Amended Complaint; opposed a second motion to dismiss; drafted a Third Amended Complaint; and drafted and submitted Mr. Taveras' motion for summary judgment as to his Second Amendment claims after the district court dismissed his declaratory and injunctive relief claims (following the City's *sua sponte* mailing of a firearms license to Mr. Taveras' last known address).

42. I am seeking an award of attorney's fees in this case and an hourly rate of $650.

43. Based on my experience as set forth above, in a niche area of law in two States and Circuits that have traditionally been hostile and adverse to the Second Amendment and resistant to Supreme Court precedent in Second Amendment cases, I have become an expert in this field. An hourly rate of $650 for the work performed in this case is reasonable and appropriate.

44. My compensation for having represented Mr. Taveras is based on an application of reasonable attorney's fees and is neither an hourly nor a contingency based legal representation.

45. Attached hereto as Exhibit 6 is a true and accurate copy of the billing sheets and costs maintained by my office in this litigation, which includes a copy of the invoices for appellate printing.

46. The total number of hours for work performed in this litigation, exclusive of this motion, is 142.40 hours. See, Ex. 6.

47. The total amount of costs is $2,759.59. See, Ex. 6.

48. The total amount of attorneys' fees at an hourly rate of $650, exclusive of this motion, plus and costs is $95,319.59.

49. The total number of hours expended making this motion for attorney's fees is 15.5.

I declare the foregoing to be true and accurate under the penalty of perjury.

Dated: November 20, 2023

                                                THE BELLANTONI LAW FIRM, PLLC
                                                *Attorneys for Plaintiff*

By:   *Amy L. Bellantoni*
       Amy L. Bellantoni (AB3061)
       2 Overhill Road, Suite 400
       Scarsdale, New York 10583
       abell@bellantoni-law.com